# UNITED STATES COURT OF APPEALS

# FIFTH JUDICIAL CIRCUIT

---

### CIVIL ACTION NO: 13-30332

*KANE MARCEAUX; GREG CORMIER; SCOTT POIENCOT; GABRIEL THOMPSON; NORBERT MYERS; NOVEY STELLY; ULETOM P. HEWITT; REGINA BRISCOE; ALEETA M. HARDING; GUS SANCHEZ; ROBERT POLANCO; KENCIL D. JOSEPH; DONALD CEASAR; PAUL TAYLOR, JR.; RACHEL ROBERTS*
*Plaintiffs/Appellants*

### *VERSUS*

*LAFAYETTE CITY-PARISHCONSOLIDATED GOVERNMENT; CITY POLICE OF LAFAYETTE; LESTER JOSEPH DUREL, JR., in his capacity as President of the Lafayette City-Parish Consolidated Government; DEE EDWARD STANLEY; JAMES P. CRAFT; GEORGE JACKIE ALFRED*
*Defendants/Appellees*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA, LAFAYETTE/OPELOUSAS DIVISION
HONORABLE JUDGE RICHARD T. HAIK, SR.
MAGISTRATE PATRICK J. HANNA
DOCKET NO. 6:12-CV-1532

---

## ORIGINAL APPELLEE BRIEF
## ON BEHALF OF DEFENDANTS/APPELLEES

---

**BRINEY FORET CORRY**

By:   s/Michael P. Corry
        **MICHAEL P. CORRY – 20764**
        **PATRICK J. BRINEY – 03467**
        **HALLIE P. COREIL – 33784**
        413 Travis Street, Suite 200
        Post Office Drawer 51367
        Lafayette, Louisiana 70505-1367
        Telephone:  (337) 237-4070
        Facsimile:  (337) 233-8719
ATTORNEYS FOR DEFENDANTS/APPELLEES

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

PLAINTIFFS/APPELLANTS

1. Kane Marceaux;
2. Scott Poiencot;
3. Greg Cormier;
4. Gabe Thompson;
5. Nolvey Stelly;
6. Uletom P. Hewitt;
7. Norbert Myers;
8. Aleeta M. Harding;
9. Gus Sanchez;
10. Robert Polanco;
11. Regina Briscoe;
12. Raquel Roberts;
13. Kencil Joseph;
14. Donald Ceaser; and
15. Paul Taylor, Jr.

DEFENDANTS/APPELLEES

1. Lafayette City-Parish Consolidated Government ("LCG");
2. Lafayette Police Department, through Lafayette City-Parish Consolidated Government ("LPD");
3. Joseph Durel, President of LCG;
4. Edward Dee Stanley, Chief Administrative Officer of LCG;
5. James "Jim" Craft, Chief of LPD;
6. George "Jackie" Alfred;
7. Levy Firmin;
8. Ted Vincent;
9. Randy Vincent,;
10. Ray Domingue;
11. Dewayne Prejean;
12. U. J. Prevost; and
13. Keith Gremillion.

_____
s/ Michael P. Corry
MICHAEL P. CORRY- 20764
ATTORNEY OF RECORD FOR DEFENDANTS/APPELLEES

i

# TABLE OF CONTENTS

i.   TABLE OF AUTHORITIES ........................................................iii

ii.  ISSUES FOR REVIEW .............................................................1

iii. STATEMENT OF CASE AND FACTS .....................................2

iv. SUMMARY OF ARGUMENT ..................................................9

v.  ARGUMENT..............................................................................11

   I.   **The District Court's Order is Not a Prior Restraint**.............11

      A. The Order punished Plaintiffs' violation of the Rules of Professional Conduct rather than forbidding future speech. ...........................11

      B. Application of normal First Amendment standards does not invalidate the Order. ................................................................13

  II.  **Any Purported Prior Restraint was Permissible**....................15

      A. The Standard and the Analysis....................................................15

      B. The District Court's narrowly tailored Order harmonizes perfectly with *Brown*. ................................................................18

      C. The Record amply supports the District Court's finding that *realcopsvcraft.com* violated the Rules of Professional Conduct. ...............19

 III. **Brief Responses to Other Key Points**.......................................21

      A. Importance of Defendants' fair trial rights and burden on tax-payers greatly diminish value of venue transfer. ...................................21

      B. Plaintiffs' arguments vis-à-vis timeliness of Defendants' Supplemental Motion fail. ................................................................22

      C. Secret Recordings arguably legal under the "one-party consent" rule nonetheless violate the Rules of Professional Conduct..............................24

      D. Plaintiffs' allegation of "Defendants' own prior media abuses" is insupportable. ................................................................25

 IV. **Conclusion—Plaintiffs Crossed the Line**................................25

vi. CONCLUSION AND REQUEST FOR RELIEF ...........................27

vii. CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ..............28

viii. CERTIFICATE OF SERVICE..................................................29

ii

# TABLE OF AUTHORITIES

## *Statutes*

La. Rules of Professional Conduct, Rule 3.6 ................................................................. 13

La. Rules of Professional Conduct, Rule 4.4 ................................................................. 13

## *Supreme Court and Fifth Circuit Jurisprudence*

*Alexander v. U.S.,* 509 U.S. 544 (1993). ................................................................. 11, 13

*American Communications Ass'n C.I.O. v. Douds*, 339 U.S. 382 (1950) ...................... 14

*Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564 (1985) .................................... 19

*Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999) .......... 14

*Chapman & Cole v. Itel Container Intern B.V.,* 865 F.2d 676 (5th Cir. 1989) ............... 24

*Estes v. State of Tex,* 381 U.S. 532 (1965) .................................................................. 16

*Davis v. East Baton Rouge Parish School Bd.*, 78 F.3d 920 (5th Cir. 1996) ............. 16, 17

*Dennis v. U.S.*, 341 U.S. 494 (1951) ........................................................................... 14

*Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991) ..................................... 13, 17, 21

*Krippendorf v. Hyde*, 110 U.S. 276 (1884) .................................................................. 15

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) .................................................... 16

*The News-Journal Corp. v. Foxman*, 939 F.2d 1499 (11th Cir. 1991) ...................... 16, 18

*U.S. v. Brown*, 218 F.3d 415 (5th Cir. 2000) ........................................................ 16, 17, 20

## *Other Jurisprudence*

*Joseph v. Entergy,* 08-0688 (La.App. 4 Cir. 12/5/07); 972 So.2d 123 ........................... 14

*Karhani v. Meijer*, 270 F.Supp.2d 926 (E.D. Mich. 2003) ........................................... 12

*U.S. v. Davis,* 904 F.Supp. 564 (E.D. La. 1995). ....................................................... 18

*U.S. ex rel Stewart v. Louisiana Clinic*, 02 WL 32850 (E.D. La. 2002) ........................ 17

## **ISSUES FOR REVIEW**

1. Does removal of a website which violates the Rules of Professional Conduct (rather than an injunction against future websites) constitute past punishment for violation of the Rules or a prior restraint on the publisher's free speech?

2. If removal of a website constitutes a prior restraint, is the restraint permissible where the district court's findings of fact prove the plaintiff/publisher's conduct has substantially compromised the defendant's constitutional right to fair trial by impartial jurors and unethically violated the rights of third-parties?

1

## STATEMENT OF THE CASE AND FACTS

The issue on appeal is narrow, but a detailed rendition of the factual and procedural background is necessary for a thorough understanding of the Order under review.

### The State Court Litigation

Plaintiffs/Appellants are former and current disgruntled employees of the Lafayette City-Parish Consolidated Government/Lafayette Police Department ("LCG/LPD") with a propensity for legal action and media endeavors targeted against their employer, supervisors, and fellow employees (Defendants/Appellees, referred to collectively as "the City"). In May 2012, following the unauthorized release of a confidential LPD Internal Affairs document, Plaintiffs, Marceaux, Poiencot, Cormier, Thompson, and Myers, filed a Petition for Injunction and obtained a temporary restraining order ("TRO") in the Fifteenth Judicial District for the State of Louisiana ("15th JDC") against Defendants, LCG/LPD, CAO Stanley, Chief Craft, and Major Alfred, prohibiting further investigation into the unauthorized release of the confidential document.[1] Despite specific TRO notice requirements proscribed by the Louisiana Code of Civil Procedure, these Defendants did not learn that the 15th JDC had issued the requested TRO until at

---

[1]      USCA5 359.

2

least a day later, after receiving copies of the Petition and Order (which had already been signed) the following day.[2] After a hearing, the 15th JDC dissolved the TRO and dismissed the Petition.[3] Following a second hearing, the 15th JDC further found that the TRO had been wrongfully issued and awarded Defendants costs and attorneys' fees.[4] Throughout the 15th JDC litigation, Plaintiffs instigated widespread media coverage.

### *Realcopsvcraft.com*

At some point after Plaintiffs commenced litigation, Plaintiffs and/or their counsel created the website, *realcopsvcraft.com*.[5] Published to the website were an unauthorized photograph of Chief Craft, a depiction of the Lafayette Police Department shield, links to various pleadings, citations to Plaintiffs' Complaint in this litigation (describing the LPD as "rotten"), and links to six recordings surreptitiously obtained by Plaintiffs in private conversations with third-parties regarding confidential matters and other third-parties to this litigation. Plaintiffs

---

[2]    USCA5 791-792.
[3]    USCA5 785.
[4]    Plaintiffs argue that the TRO was never actually issued, even against their own prior admissions. (See USCA5 368: Plaintiffs' First Supp. Petition for TRO ¶7 "On the very day that this Honorable Court [the 15th JDC] ordered Defendants restrained...") Moreover, the 15th JDC's definitive dissolution of the TRO (USCA5 785) and subsequent ruling awarding the City costs and attorneys' fees for wrongful issuance of the TRO (USCA5 787) topple Plaintiffs' argument and warrant no further discussion.
[5]    Printouts of each page from the website are in the record as exhibits introduced at the hearing on September 14, 2012. They are contained in the record as Defendant Exhibit 14, "Print Out dated 9/13/12."

testified that they secretly recorded these conversations and then turned the recordings over to their attorneys.[6] Although some Plaintiffs did not participate in creating the website, they did not object to its creation or publication of the recordings.[7] Between September 14, 2012 and September 17, 2012 (the two-day hearing on the City's Motion for Protective at issue), Plaintiffs or their counsel transferred ownership of *realcopsvcraft.com* to Plaintiff Regina Briscoe.[8]

## This Lawsuit

Undeterred by the dismissed 15th JDC lawsuit, the State Court Plaintiffs, together with additional current and former LCG/LPD employees,[9] filed this lawsuit in the United States District Court, Western District of Louisiana, alleging various constitutional violations and 42 U.S.C. §1983 claims (most of which were eventually dismissed by the District Court).[10] Similar to their actions in the 15th JDC litigation, Plaintiffs publicized their allegations against the City at every

---

[6]     USCA5 1051-1062; 1066 (Plaintiff Poiencot's testimony detailing how he secretly recorded private conversations and how these recordings were provided to his attorneys, posted on the website, and eventually turned over to the media. Plaintiff Cormier testified similarly at USCA5 1077-1086.)

[7]     USCA5 1070-1071; 1093.

[8]     USCA 1146.

[9]     Plaintiffs Marceaux, Cormier, Poiencot, Myers, and Thompson were joined in the Federal litigation by Plaintiffs Thompson, Stelly, Hewitt, Briscoe, and Harding. By First Supplemental Complaint, Plaintiffs Sanchez, Polanco, Roberts, Joseph, Ceaser, and Taylor joined. The Supplemental Complaint also named additional Defendants; however, Plaintiffs did not serve or request waiver of service of the Supplemental Complaint.

[10]    USCA5 1469 (Memorandum Ruling); USCA5 1712 (Order adopting Memorandum Ruling). Plaintiffs attempted to appeal the dismissal; however, this Court granted Defendants' Motion to Dismiss Appeal for lack of jurisdiction. (Docket No. 13-30225).

opportunity, through newspaper, television, and internet outlets, and intentionally

targeted and threatened unrelated third-parties, as detailed by the District Court's

following *Findings of Fact*:

1. The ongoing dispute between the plaintiffs and defendants has been the subject of extensive media coverage with multiple extra-judicial comments being made in the print and television media. The extensive media coverage began in the spring of 2012 even before the initial judicial proceeding…

2. Counsel for the plaintiffs created a website entitled realcopsvcraft.com which contains an image of [Chief Craft] on its home page along with quotes from newspaper articles and the complaint that described the [LPD] as "rotten." The website is styled in a manner comparable to a movie trailer, and included in its content are hyperlinks to multiple recordings of conversations within the department that were obtained surreptitiously by some of the plaintiffs. Some of the recordings include confidential personnel matters that do not involve any of these plaintiffs. The recordings were given by the plaintiffs or their counsel who had the postings made to the website without the consent or permission of the other parties to the conversations. [Footnote omitted.] These recordings were also disclosed to other media sources. Between the time of the recess of the first hearing [and the second hearing on Defendants' Motion for Protective Order], ownership of the website was transferred from plaintiffs' counsel to Regina Briscoe, one of the plaintiffs.

3. Upon learning of the surreptitious recordings, Chief Craft instituted a General Order that is utilized by other law enforcement agencies, prohibiting surreptitious recordings within the department. This Court finds that action to be a reasonable exercise of the authority granted to the Chief of Police.

4. Plaintiffs' counsel, shortly after this suit was filed, sent a "Cease and Desist" letter to the members of the Lafayette City-Parish Counsel, threatening to join the individual council members as defendants in this lawsuit if they did not immediately terminate Chief Craft's investigation of the plaintiff officers and declare the General Order "absolutely void and of no effect." In that letter, plaintiffs' counsel acknowledge the "significant media coverage," which was largely of their or their clients [sic], own making. Many of the extra-judicial

5

comments accuse various defendants and third parties who have nothing to do with this lawsuit of illegal and/or criminal activity. For his part, Chief Craft publicly indicated that the plaintiffs are "disgruntled employees" whose "unsubstantiated allegations" are "baseless" and a "purposeful attempt to dishonor LPD." Beyond this statement made in June after this lawsuit was filed, the defendants have largely refrained from any extra-judicial comments to the media.

5. Plaintiffs' counsel, on behalf of plaintiff Kane Marceaux, has made multiple public records requests…seeking information that ranges from incidents involving third parties and the subsequent investigation of those individuals by the department, to the contracts of and payments made to the individual lawyers and law firm representing the defendants in this matter. All of these were made after this suit was filed, but while service of process on the defendants was being withheld.

6. Plaintiffs Kane Marceaux and Ulteon [sic] Hewitt instituted multiple complaints with the Lafayette Fire and Police Civil Service Board also pertaining to investigations of incidents by third parties who are not involved in this lawsuit, but making allegations similar if not identical to those made in this lawsuit. All of these complaints were filed after this suit was filed, but while service of process on the defendants was being withheld.

7. Confidential information has been leaked to multiple aspects of the media by plaintiffs or their counsel, and since the institution of the action in the 15th Judicial Court, some of the plaintiffs and their counsel have demonstrated a desire to manipulate media coverage to gain favorable attention.

8. There is a substantial likelihood that the extra-judicial comments made in the media and on the website by the plaintiffs and/or their counsel, if allowed to continue unfettered, will undermine a fair trial and taint the jury venire.[11]

    Based on the above-described conduct, the City filed a Motion for Protective

Order and for Sanctions, seeking a court order reining in Plaintiffs' extrajudicial

---

[11]     Magistrate Judge Hanna's Memorandum Ruling. (USCA5 886-889). District Court Judge Haik denied Plaintiffs' appeal, thereby upholding the Memorandum Ruling. (USCA5 1910).

behavior. At a September 5, 2012 status conference, the District Court advised it was unclear as to the exact relief Defendants sought, to which the City's counsel specifically requested, *inter alia*, that nothing be posted on the website.[12] Thereafter, the City filed a Supplemental Memorandum in Support of their Motion, memorializing five requested areas of relief, particularly removal of the offensive website.[13] Following the two-day hearing on Defendants' Motion (September 14 and 17, 2012), the District Court generally denied Defendants' Motion, except to order that the website, *realcopsvcraft.com*, be removed. Despite its general denial, the District Court acknowledged Plaintiffs' conduct, setting forth the above-cited *Findings of Fact*, and left open the possibility of re-visiting Defendants' Motion should Plaintiffs' extrajudicial conduct further warrant.[14] Despite the absence of a final judgment relative to the District Court's Order removing the website, Plaintiffs appealed to this Court, which denied Defendants' Motion to Dismiss the appeal for lack of jurisdiction.

Given Plaintiffs' willful manipulation of media coverage and purposeful efforts to skew the public's opinion in their favor, the City maintains that the District Court correctly ordered removal of Plaintiffs' unprofessional and unethical

---

[12]     The September 5, 2012 status conference heard by Judge Hanna in open court is a sealed document. Please refer to pages 10, 17, and 19-20 of the sealed transcript.
[13]     USCA5 646-655.
[14]     USCA5 893-894.

website without impermissibly compromising Plaintiffs' First Amendment rights. The District Court's Order did not act as a prior restraint, but instead constituted a necessary enforcement of the City's right to a fair trial by impartial jurors.

## SUMMARY OF ARGUMENT

I.     <u>The District Court's Order is Not a Prior Restraint.</u>

Removing *realcopsvcraft.com* was not a prior restraint. After a two-day evidentiary hearing, the District Court found, as a matter of fact, that Plaintiffs' and their attorneys' ongoing extrajudicial conduct, including purposeful manipulation of media coverage against the City and egregious offenses against third-parties, warranted punishment. Although the City, through Motion for Protective Order, sought broad relief from Plaintiffs' prejudicial conduct, the District Court granted only one aspect of the City's Motion, removing Plaintiffs' patently offensive website, *realcopsvcraft.com*. Specifically, the District Court found the website violated the Rules of Professional Conduct, Rule 3.6 (prohibiting extrajudicial conduct with a substantial likelihood of materially prejudicing the proceedings) and Rule 4.4 (prohibiting conduct with no substantial purpose other than to embarrass, delay, or burden third-persons).

Because the District Court did not otherwise forbid Plaintiffs from posting any website in compliance with the Rules of Professional Conduct, but rather punished Plaintiffs' past conduct by removing the website, the District Court did not impose a prior restraint on Plaintiffs' free speech. Even under normal First Amendment standards, the District Court's Order removing the website prevails,

9

because it is specifically tailored to Rules 3.6 and 4.4, which easily withstand any First Amendment challenge, per the ruling and framework established by the Supreme Court in *Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991).

II.    Any Purported Prior Restraint was Permissible.

Assuming *arguendo* the District Court's removal of *realcopsvcraft.com* constituted a prior restraint, the purported restraint was permissible under this Court's analysis in *U.S. v. Brown*, 218 F.3d 415 (5th Cir. 2000). The *Brown* standard endorses a court order directed at trial participants (the attorneys and their clients), which might otherwise pose prior restraints, as long as the court determines there is a "substantial likelihood" that the litigants' extrajudicial commentary will undermine a fair trial and the order is narrowly tailored to that end. The District Court's Order satisfied these requirements, because, after a two-day evidentiary hearing, the Court found, as a matter of fact, that Plaintiffs' extrajudicial conduct not only substantially undermined the City's fair trial rights, but also accused and offended third-parties who had nothing to do with the litigation. In light of those findings, the District Court narrowly tailored its Order to fit within the confines of Rules 3.6 and 4.4. Finding *realcopsvcraft.com* in violation of these Rules, he appropriately removed it. Thus, the District Court's Order must stand.

10

## ARGUMENT

### I.    THE DISTRICT COURT'S ORDER IS NOT A PRIOR RESTRAINT.

#### A. The Order punished Plaintiffs' and their attorneys' violation of the Rules of Professional Conduct rather than forbidding future speech.

Key to Plaintiffs' position is the classification of the District Court's Order removing Plaintiffs' patently offensive and unprofessional website as a prior restraint on Plaintiffs' First Amendment rights. The Supreme Court has definitively sanctioned the "time-honored distinction between barring speech in the future and penalizing past speech,"[15] defining prior restraints as "administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur."[16] In *Alexander v. U.S.*, the Court refused to recognize RICO-imposed forfeitures of illicitly-acquired property as prior restraints, even though the forfeitures effectively stopped the plaintiff from engaging in expressive activities (sale of obscene materials) in those locations.[17] Rather, the forfeitures were punishment for past speech and did not inhibit the plaintiff from engaging in so-called expressive activities in other places.[18]

---

[15]    *Alexander v. U.S.*, 509 U.S. 544, 550 (1993).
[16]    *Id*. at 553. (Emphasis in original.)
[17]    *Id*. at 554.
[18]    *Id*.

11

The District Court's Order removing *realcopsvcraft.com* did not constitute a prior restraint because of what the Order lacked: instruction to refrain from creating any website. In fact, at the conclusion of the hearing on the City's Motion, Magistrate Judge Hanna explicitly declined to foreclose Plaintiffs' ability to create another website, instead finding that the website, as posted, violated the Rules of Professional Conduct:

> The website realcopsvcraft.com shall be closed and removed immediately ceasing all operation and publication. *If the parties wish to create a website* that does not demean or criticize any of the other parties in this lawsuit but simply wishes to post matters that I'm going to tell you in a minute, *I will have no objection to that, but there's not going to be private personal information of third parties put on that because that would be violative of Rule 4.4 of the Rules of Professional Conduct*…[19]

Plaintiffs cite as factually relevant *Karhani v. Meijer*, a Michigan Eastern District case.[20] Beyond being unpersuasive authority, the *Karhani* case is also readily distinguishable, because the Michigan District Court enjoined the plaintiffs from distributing leaflets around the defendant's business. Contrarily, the District Court in this case removed the website as a violation of the Rules of Professional Conduct. Conscious of the possibility of a prior restraint, the District Court did not

---

[19]  USCA5 1221, line 17-25. (Emphasis added.) Judge Hanna went on to limit the parties and their counsels' extrajudicial statements to standards imposed by Rule of Professional Conduct, Rule 3.6. See USCA5 896 and 1222.

[20]  *Karhani v. Meijer*, 270 F.Supp.2d 926 (E.D. Mich. 2003).

preclude Plaintiffs from publishing any website relative to the litigation. Accordingly, the Order removing the website is not a prior restraint.

## B. **Application of normal First Amendment standards does not invalidate the Order.**

In the absence of a prior restraint, the Court is obliged to apply "normal First Amendment standards."[21] To hold that the Order violates Plaintiffs' First Amendment rights, the Court must find that the Rules of Professional Conduct, Rules 3.6 and 4.4 (to which the Order is specifically tailored) violate the First Amendment. When a state regulation implicates First Amendment rights, the Court must balance those interests against the State's legitimate interest in regulating the activity in question.[22] The rules are as follows:

Rule 3.6 (a)

A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

Rule 4.4 (a)

In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

---

[21]    *Alexander*, 509 U.S. at 554.

[22]    *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1075 (1991).

13

With regard to the former, the Supreme Court has recognized that Rule 3.6 passes First Amendment muster, because the restraint on speech is narrowly tailored to achieve objectives of fundamental right to fair trial by impartial jurors unaffected by extrajudicial statements. [23]

Although the Court has not addressed Rule 4.4 under a First Amendment analysis, application of the rule to the *Gentile* framework supports the conclusion that it is likewise constitutional. Initially, the fact that Rule 4.4 does not directly target speech, but prohibits all conduct which unfairly impacts third-parties, justifies lesser scrutiny than that of Rule 3.6 (which directly affects speech).[24]

Second, the standard imposed by Rule 4.4 ("no substantial purpose other than to embarrass, delay, or burden a third-person") is unambiguous and designed to protect third-persons who are not involved in the litigation, a substantial state

[23]     *Id*. *Gentile* found that Model Rule 3.6 (upon which Louisiana's Rule 3.6 is based) does not violate free speech rights (although the Nevada rule at issue was unconstitutional as applied by the Nevada Supreme Court. The vague provision of the Nevada rule, which rendered it unconstitutional, is not included in the Louisiana rule.). See also *Joseph v. Entergy*, 07-0688, p.9 (La.App. 4 Cir. 12/5/07); 972 So.2d 123, 1237, rejecting the argument that a protective order violated the plaintiff's free speech rights where the court merely ordered compliance with the Rules of Professional Conduct.

[24]     *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 222 (1999) ("As a regulation of the electoral process with an indirect and insignificant effect on speech, the disclosure provision should be upheld so long as it advances a legitimate government interest.") *American Communications Ass'n C.I.O. v. Douds*, 339 U.S. 382, 399 (1950). ("When particular conduct is regulated in the interest of public order, and the regulation results in an indirect, conditional, partial abridgment of speech, the duty of the courts is to determine which of these two conflicting interests demands the greater protection under the particular circumstances presented.") See also *Dennis v. U.S.*, 341 U.S. 494, 507 (1951), recognizing that the *Douds* standard is less burdensome where conduct, rather than speech, is regulated.

14

interest.[25] Balancing Rule 4.4's indirect and inconsequential effect on speech with the important state interest of protecting innocent third-parties from being dragged through the muck of other parties' fights, Rule 4.4 certainly withstands any First Amendment challenge. Therefore, the District Court's Order, finding *realcopsvcraft.com* in violation of Rules 3.6 and 4.4, does not violate Plaintiffs' First Amendment rights.

## II.    <u>ANY PURPORTED PRIOR RESTRAINT WAS PERMISSIBLE.</u>

The District Court's Order removing the website did not constitute a prior restraint and did not violate Plaintiffs' First Amendment rights. Nevertheless, should the Court entertain Plaintiffs' argument otherwise, the City maintains that any purported prior restraint was appropriate in light of the "substantial likelihood" that Defendants' Sixth Amendment right to fair trial would be undermined by Plaintiffs' extrajudicial conduct, including operation of the "patently offensive" website.[26]

### A. <u>The Standard and the Analysis</u>

The Supreme Court holds that "[a]lthough litigants do not 'surrender their First Amendment rights at the courthouse door,' those rights may be subordinated

---

[25]    See e.g. *Krippendorf v. Hyde*, 110 U.S. 276, 283 (1884). (It is "the duty of the court to prevent its process from being abused to the injury of third persons.")

[26]    The District Court referred to Plaintiffs' website as "patently offensive." See USCA5 1219, line 16.

to other interests that arise."[27] Particularly, where one's right to free speech clashes with another's right to fair trial, free speech rights yield to fair trial rights, "the most fundamental of all freedoms."[28]

In determining whether to issue an order which might otherwise be a prior restraint, the District Court appropriately relied on this Court's analysis in *U.S. v. Brown*;[29] however, Plaintiffs contend *Davis v. East Baton Rouge Parish School Bd.*[30] is more applicable. The two cases are not significantly incompatible, as Plaintiffs would urge. Rather, *Davis* establishes the general principle that a prior restraint must be justified by threats imposed on a countervailing interest,[31] such as the right to fair trial. *Brown*, a decision rendered four years <u>after</u> *Davis*, sets forth the standard by which this Court now determines whether the prior restraint is appropriate in a situation, such as this, where the purported prior restraint is imposed on *trial participants*, as opposed to third-parties, such as members of the press. The *Brown* Court explicitly adopted the less stringent "substantial likelihood" standard in these cases, rather than the more onerous "clear and present danger, or a serious or imminent threat" standard utilized in its earlier decision in

[27]     *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, Footnote 18 (1984).
[28]     *Estes v. State of Tex,* 381 U.S. 532, 540 (1965), as cited by *The News-Journal Corp. v. Foxman*, 939 F.2d 1499, 1512 (11th Cir. 1991).
[29]     *U.S. v. Brown*, 218 F.3d 415 (5th Cir. 2000).
[30]     *Davis v. East Baton Rouge Parish School Bd.*, 78 F.3d 920 (5th Cir. 1996).
[31]     *Id.* at 927.

16

*Davis* and in other circuits.[32] Moreover, contrary to Plaintiffs' argument, the *Brown* standard applies regardless of whether the litigation is civil or criminal in nature.[33] Thus, the *Brown* analysis is the appropriate framework for this case. It is as follows:

> If the district court determines that there is a "substantial likelihood"...that extrajudicial commentary by trial participants will undermine a fair trial, then it may impose a gag order on the participants, as long as the order is also narrowly tailored and the least restrictive means available. **This standard applies to both lawyers and parties**...[34]

In reaching the above conclusion, this Court relied on the Supreme Court's decision in *Gentile v. State Bar of Nevada*,[35] observing that an attorney's ethical obligations to refrain from making prejudicial comments regarding pending litigation extends to parties to the litigation.[36] One's right to a fair trial by impartial jurors cannot be compromised because of the speaker's identity as client rather than attorney. Accordingly, the Court can permissibly limit extrajudicial comment

---

[32]    Another significant difference between *Brown* and *Davis* is that in *Brown*, as here, the gag order was challenged by a party subject to the order; whereas, in *Davis*, intervening news-media parties challenged the order.

[33]    This Court noted, significantly, in *Brown* that one's First Amendment rights may be subordinated to other interests "**in the context of both civil and criminal trials**." *Brown*, 218 F.3d at 424. (Emphasis added.) Moreover, the *Brown* analysis has been applied in the civil context. See e.g. *U.S. ex rel Stewart v. Louisiana Clinic*, 02 WL 32850 (E.D. La. 2002).

[34]    *Brown*, 218 F.3d at 425. (Emphasis added.)

[35]    *Gentile, supra.*

[36]    *Brown*, 218 F.3d at 427-28.

17

of trial participants, including the attorneys and their clients, despite the reality of a

prior restraint.[37]

## B. **The District Court's narrowly tailored Order harmonizes perfectly with _Brown_.**

Plaintiffs characterize the Order removing the website as "the most severe

and draconian remedy possible–a wholesale takedown of the Plaintiffs' website."[38]

The City contends that the Order is merely a single, narrow component in the

ruling which generally limited the parties' extrajudicial conduct to the same extent

as proscribed by Rules 3.6 and 4.4. In summarizing his Order at the conclusion of

the two-day hearing on the City's Motion for Protective Order, Judge Hanna

stated, "If, members of the press, you couldn't get it all written down, I took it

right out of the book,"[39] emphasizing that the contents of his Order were intended

to mirror the Rules of Professional Conduct. Hence, not only did the Order comply

perfectly with the analysis and conclusion in _Brown_, but it was also narrowly

tailored to fit within the confines of the Rules of Professional Conduct. Plaintiffs

cannot convincingly argue that the conduct regulated by these Rules is too broad.

After all, an attorney's obligation to refrain from prejudicial comments about the

---

[37]    Indeed, the Supreme Court has suggested that an order limiting extrajudicial commentary by trial participants is an appropriate alternative to restraint on the media. _U.S. v. Davis_, 904 F.Supp. 564 (E.D. La. 1995), citing _The News-Journal Corp. v. Foxman_, 939 F.2d 1499 (11th Cir. 1991).

[38]    Plaintiffs' Appellant Brief, page 30.

[39]    USCA5 1223.

pending litigation exists whether such an order is in place or not.[40] As such, the District Court's ruling must stand.

### C. **The Record amply supports the District Court's finding that _realcopsvcraft.com_ violated the Rules of Professional Conduct.**

A district court's findings of fact cannot be disturbed absent **clear error**.[41] The District Court's _Findings of Fact_[42] detailing Plaintiffs and their counsels' conduct after initiating litigation (such as posting secretly recorded conversations with third-parties, who had not consented to the recordings or postings and Plaintiffs' ongoing efforts to "try this case in the press"[43]) support the Order, which found the website contrary to Rules 3.6 and 4.4 and thus removed the offending website.

Plaintiffs rely on _Karhani v. Meijer_ (the Michigan Eastern District case) for the proposition "that extensive present-day news coverage will not impair a later jury pool."[44] Despite the District Court's detailed reasons following the two-day evidentiary hearing, Plaintiffs contend there was an absence of proof that Plaintiffs' media antics would have a substantial likelihood of materially prejudicing the proceedings or that they violated the rights of third parties. The

---

[40]   _Brown_, 218 F.3d at 428.
[41]   _Anderson v. City of Bessemer City, N.C.,_ 470 U.S. 564, 573 (1985).
[42]   USCA5 886-889. The _Findings of Fact_ are also set forth in the Statement of the Case section of this brief.
[43]   USCA5 898.
[44]   Appellant Brief, page 20.

City urges the Court to review the plethora of evidence submitted by the City and considered by the District Court. (See e.g. Plaintiffs and their counsels' numerous documented interviews, statements to the press, and other extrajudicial conduct made public record or otherwise distributed to non-participants in this case.[45]) Furthermore, review of the transcript from the two-day evidentiary hearing reveals testimony from at least three third-parties who Plaintiffs defamed and accused (without naming them as parties to the lawsuit).[46] In fact, Plaintiffs and their counsels' conduct with regard to one of these individuals was so egregious that the relative proceedings were kept under seal by the District Court and is the basis, together with Plaintiffs' other conduct, for two pending Motions for Sanctions.[47] All things considered, the District Court's ruling was well-founded based on all evidence presented by both sides and certainly does not meet the threshold for clear error.

---

[45]   USCA5 561-614; 642; 657-687; 721-751; 1879-1884.

[46]   Testimony of Jeremy Dupuis (beginning at USCA5 1096); Testimony of Allyson Prejean (beginning at USCA5 1101). For details regarding Plaintiffs and their counsels' conduct relative to the third individual, please refer to sealed documents and transcripts from September 5, 14, and 17, 2012.

[47]   USCA5 242 and 547. See also USCA 1007, line 19-22 referencing the matter under seal. Please also refer to sealed transcripts from September 5, 14, and 17, 2012 hearings

## III.   BRIEF RESPONSES TO OTHER KEY POINTS.

### A. Importance of Defendants' fair trial rights and burden on tax-payers greatly diminish value of venue transfer.

Plaintiffs contend that the effect of their extrajudicial conduct on the City's fair trial rights can be mitigated by transfer of venue; however, as the Supreme Court noted, "Even if a fair trial can ultimately be ensured through *voir dire*, change of venue, or some other device, these measures entail serious costs to the system…The State has a substantial interest in preventing officers of the court, such as lawyers, from imposing such costs on the judicial system and on the litigants."[48] The Court's opinion is particularly applicable to this case given Defendants' identity as the City of Lafayette and its police department. Extra costs for these litigants are extra costs for the Lafayette tax-payers. Moreover, as the District Court astutely observed, this case involves the entity upon which the City of Lafayette relies for its safety and protection.[49] As such, Defendants' jury venire would be more susceptible to poisoning by Plaintiffs' extrajudicial conduct (including the website) than would other, non-public, defendants. Thus, Defendants' identity compounds their potential prejudice due to relentless media attention and renders the District Court's decision even more appropriate.

---

[48]     *Gentile*, 501 U.S. at 1075.
[49]     USCA5 898.

B. **Plaintiffs' arguments vis-à-vis timeliness of Defendants' Supplemental Motion fail.**

Plaintiffs objected to the City's Supplemental Memorandum in Support of Protective Order as an expansion of the City's original Motion and contend that it was the City's first request that the website be removed. Contrarily, the City's Supplemental Memorandum actually *narrowed* and clarified the relief sought in the original Motion which broadly requested an order "enjoining Plaintiffs from attempting to prosecute their claims before any other tribunal and from vexatiously filing future actions, abusing the court system, and harassing Defendants." At the Rule 16 conference on September 5, 2012, the Court indicated that it was not clear on specifically what relief the City sought. At that time, counsel for the City set forth precisely what relief they requested, including that nothing be posted on the website.[50] Thereafter, by Supplemental Memorandum, Defendants merely memorialized their requests in the five enumerated items. Hence, Plaintiffs had at least nine days (September 5 through September 14, 2012) to prepare a response to Defendants' position relative to the website.

Plaintiffs' argument that they "were simply not afforded an opportunity to present a memorandum in opposition to the Defendants' late-filed claims" likewise lacks merit. In fact, Plaintiffs' Opposition included a direct response to

---

[50]   The September 5, 2012 status conference heard by Judge Hanna in open court is a sealed document. Please refer to pages 10, 17, and 19-20 of the sealed transcript.

Defendants' Supplemental Memorandum (which specifically requested removal of the website). Moreover, Plaintiffs' counsel were fully prepared to address Defendants' arguments vis-à-vis the website at the first day of the hearing, even equipped with a quote on free speech from Hugo Black.[51] Thus, Plaintiffs' argument that they were not afforded an opportunity to oppose the City's Motion fails.

Second, Plaintiffs claim the City's Supplemental Memorandum was filed "at the eleventh hour," on September 12, 2012;[52] however, Plaintiffs' own Opposition to the original Motion was not filed until September 13, 2012 at 5:07 p.m., just hours before the September 14, 2012, 9:00 a.m. hearing, rendering Plaintiffs' untimeliness argument untenable. Nevertheless the District Court read and considered both the City's Supplemental Memorandum as well as Plaintiffs' Opposition (which, again, included a direct response to the City's Supplemental Motion).[53] Accordingly, because Plaintiffs had sufficient time to respond to the City's challenge to the website and because the District Court acknowledged that it had considered all briefs (including Plaintiffs' Opposition), this Court should not be persuaded by Plaintiffs' technical objections.

---

[51]    USCA5 1018.

[52]    The City moved for leave to file the Supplemental Memorandum on September 12, 2012. The District Court granted leave and formally filed the Supplemental Memorandum the following day. See USCA5 646 and 712.

[53]    USCA5 1005.

23

**C. <u>Secret recordings arguably legal under the "one-party consent" rule nonetheless violate the Rules of Professional Conduct.</u>**

Throughout the proceedings in this matter, Plaintiffs have hung their proverbial hat on the fact that the surreptitiously recorded conversations amongst themselves, various Defendants, and unrelated third-parties, which were posted on *realcopsvcraft.com,* were arguably legal under Louisiana's "one-party consent" rule. Pretermitting an irrelevant discussion on the merits of the "one-party consent" rule, the City posits that simply because an action may be legal does not make it ethical. Indeed, "clandestine taping of a telephone conversation…violates the American Bar Association's Model Rules of Professional Conduct."[54] *A fortiori,* publication of surreptitious recordings without consent violates ethical and professional principles and further opens the door to invasion of privacy issues. Having extended the attorney's obligations of ethical behavior to his clients in ongoing litigation, as sanctioned by this Court in *Brown,* the District Court implicitly rejected Plaintiffs' "one-party consent" argument. This Court should likewise avoid the red herring.

---

[54]     *Chapman & Cole v. Itel Container Intern B.V.,* 865 F.2d 676, 686 (5th Cir. 1989).

### D. **Plaintiffs' allegation of "Defendants' own prior media abuses" is insupportable**

Plaintiffs' brief alludes to "Defendants' own prior media abuses," citing as support their own Motion for Contempt,[55] *which the District Court denied.*[56] The City maintains that this is yet another example of Plaintiffs' contortion of the City's actions, necessitating a response. After considering all the evidence presented by both sides at a two-day hearing, the District Court found, as a matter of fact, "Chief Craft publically indicated that the plaintiffs are 'disgruntled employees' whose 'unsubstantiated allegations' are 'baseless' and a 'purposeful attempt to dishonor LPD.' Beyond this statement made in June after this lawsuit was filed, *the defendants have largely refrained from any extra-judicial comments to the media.*"[57] Plaintiffs' statement alleging Defendants' "prior media abuses" is directly contrary to the evidence and the District Court's factual findings and is not only offensive, but also further manifestation of the conduct recognized and punished by the District Court in removing the unethical website.

### IV.   **CONCLUSION—PLAINTIFFS CROSSED THE LINE.**

There is a difference between purposeful poisoning of prospective jurors and passive publication. The standards imposed by the Rules of Professional Conduct

---

[55]   Appellant Brief, page 14-15.
[56]   USCA5 1576-1579.
[57]   USCA5 888.

establish an unequivocal line between the former and the latter. In removing Plaintiffs' patently offensive website, the District Court properly applied the law of this Circuit and acknowledged that Plaintiffs and their counsels' conduct in creating the website crossed the line between unethical behavior (relying on violations of Rules 3.6 and 4.4) and permissible advocacy.

Plaintiffs claim the District Court foreclosed their only platform by ordering removal of *realcopsvcraft.com*; however, Plaintiffs thereby ignore the existence of the ultimate platform which they erected—this lawsuit. Having initiated these proceedings, Plaintiffs are obliged to play by the rules and cannot be allowed to pervert the judicial process under the guise of free speech.

## CONCLUSION & REQUEST FOR RELIEF

For the foregoing reasons, Defendants/Appellees respectfully request this Court to uphold the District Court's Order removing *realcopsvcraft.com,* thereby protecting Defendant/Appellees' constitutional right to fair trial by impartial jurors, the rights of third-parties, and the sanctity of ethical rules governing litigants.

**RESPECTFULLY SUBMITTED:**

**BRINEY FORET CORRY**

By:   s/Michael P. Corry

       **MICHAEL P. CORRY – 20764**
       **PATRICK J. BRINEY – 03467**
       **HALLIE P. COREIL – 33784**
       413 Travis Street, Suite 200
       Post Office Drawer 51367
       Lafayette, Louisiana 70505-1367
       Telephone:  (337) 237-4070
       Facsimile:  (337) 233-8719
       ATTORNEYS FOR
       DEFENDANTS/APPELLEES

27

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains <u>5,897</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

<u>     s/ Michael P. Corry     </u>

MICHAEL P. CORRY – 20764

ATTORNEY FOR DEFENDANTS/APPELLEES

## **CERTIFICATE OF SERVICE**

This is to certify that on June 18, 2013, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following:

springlaw@gmail.com

jca@jcalaw.us

hanna_orders@lawd.uscourts.gov

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participant or pro se defendant:

**Royal Alexander, Esq.**

<u>                    s/Michael P. Corry                    </u>

MICHAEL P. CORRY- 20764