No. 15-60205

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

GOOGLE INC.,

*Plaintiff-Appellee*,

*v.*

JAMES M. HOOD, III,

Attorney General of the State of Mississippi, in his official capacity,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Southern District of Mississippi No. 3:14-CV-981
Before the Honorable Henry T. Wingate

## PETITION FOR PANEL REHEARING

FRED KRUTZ
DANIEL J. MULHOLLAND
FORMAN WATKINS
    & KRUTZ LLP
200 South Lamar Street, Suite 100
City Centre
Jackson, MS  39201
(601) 960-8600

CHRISTOPHER W. JOHNSTONE
WILMER CUTLER PICKERING
    HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
(650) 858-6000

PETER G. NEIMAN
CHRISTOPHER J. BOUCHOUX
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

JAMIE S. GORELICK
PATRICK J. CAROME
BLAKE C. ROBERTS
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000

April 22, 2016

# CERTIFICATE OF INTERESTED PERSONS

No. 15-60205

GOOGLE INC.,
*Plaintiff-Appellee*,

*v.*

JAMES M. HOOD, III,
Attorney General of the State of Mississippi, in his official capacity,
*Defendant-Appellant*.

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

1.  The Hon. Henry T. Wingate, United States District Court for the Southern District of Mississippi

2.  Google Inc., Plaintiff-Appellee

    Google Inc. is a wholly owned subsidiary of Alphabet Inc., a publicly held corporation. Accordingly, Alphabet Inc. has more than 10% ownership of Google Inc.

3.  Alphabet Inc.

    Google Inc. is a wholly owned subsidiary of Alphabet Inc., a publicly held corporation. Accordingly, Alphabet Inc. has more than 10% ownership of Google Inc.

4.  Fred H. Krutz and Daniel J. Mulholland, with the firm Forman Watkins & Krutz LLP, Counsel for Plaintiff-Appellee

5.      Jamie S. Gorelick, Patrick J. Carome, Blake C. Roberts, Peter G. Neiman, Christopher Bouchoux, and Christopher W. Johnstone, with the firm Wilmer Cutler Pickering Hale & Dorr LLP, Counsel for Plaintiff-Appellee

6.      James M. Hood, III, Attorney General of the State of Mississippi, Defendant-Appellant

7.      Douglas T. Miracle, Bridgette Williams Wiggins, Alison O'Neal McMinn, and Krissy Casey Nobile, with the Office of the Mississippi Attorney General, Counsel for Defendant-Appellant

8.      F. Jerome Tapley and Hirlye Ryan Lutz, with the firm Cory Watson, PC, Counsel for Defendant-Appellant

9.      James Clark Wyly and Sean F. Rommel, with the firm Wyly-Rommell, PLLC, Counsel for Defendant-Appellant

10.     John Wimberly Kitchens, with the firm Kitchens Law Firm, PA, Counsel for Defendant-Appellant

11.     Carolyn Glass Anderson and Patricia A. Bloodgood, with the firm Zimmerman Reed, PLLP, Counsel for Defendant-Appellant

/s/  Peter Neiman
PETER NEIMAN

*Attorney of record for
Plaintiff-Appellee Google Inc.*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS.........................................................i

TABLE OF AUTHORITIES.......................................................................iv

THE PANEL ERRED IN ORDERING DISMISSAL OF GOOGLE'S CLAIMS FOR
DECLARATORY RELIEF REGARDING HOOD'S THREATENED
ENFORCEMENT ACTION.............................................................................1

    A.    Google Brought Declaratory And Injunctive Claims, But
The Panel's Decision Addressed Only Google's
Injunctive Claims ...................................................................1

    B.    The Panel's Ruling That Google's Declaratory Claims
Regarding Threatened Enforcement Action Are Unripe
For Lack Of An "Imminent Threat Of Irreparable Injury"
Contravenes Supreme Court And Fifth Circuit Precedent...................3

    C.    A Declaratory Claim Is Ripe When There Is A Genuine
Threat Of Prosecution ...........................................................7

    D.    Hood Has Threatened Enforcement Action .......................................10

CONCLUSION ......................................................................................15

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*520 Michigan Avenue Associates v. Devine*,
    433 F.3d 961 (7th Cir. 2006) ...........................................................5, 6, 9, 13

*Babbitt v. United Farm Workers National Union*,
    442 U.S. 289 (1979)..............................................................................8, 14

*Brister v. Faulkner*,
    214 F.3d 675 (5th Cir. 2000) ..............................................................4, 5, 8

*Center for Individual Freedom v. Carmouche*,
    449 F.3d 655 (5th Cir. 2006) ..................................................................8, 13

*Cooksey v. Futrell*,
    721 F.3d 226 (4th Cir. 2013) ..................................................................9, 13

*Culinary Workers Union, Local 226 v. Del Papa*,
    200 F.3d 614 (9th Cir. 1999) ...........................................................................9

*Familias Unidas v. Briscoe*,
    544 F.2d 182 (5th Cir. 1976) ...........................................................................5

*Familias Unidas v. Briscoe*,
    619 F.2d 391 (5th Cir. 1980) ...........................................................................5

*First Gibraltar Bank, FSB v. Morales*,
    19 F.3d 1032 (5th Cir. 1994) .........................................................................13

*Florida Right to Life, Inc. v. Lamar*,
    273 F.3d 1318 (11th Cir. 2001) .......................................................................9

*Harrell v. The Florida Bar*,
    608 F.3d 1241 (11th Cir. 2010) .......................................................................9

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010)..............................................................................................8

*International Society for Krishna Consciousness of Atlanta v. Eaves*,
    601 F.2d 809 (5th Cir. 1979) ..................................................................1, 8, 9

iv

*International Tape Manufacturers Ass'n v. Gerstein*,
  494 F.2d 25 (5th Cir. 1974) ............................................................................14

*Kiser v. Reitz*,
  765 F.3d 601 (6th Cir. 2014) ....................................................................9, 13

*KVUE, Inc. v. Moore*,
  709 F.2d 922 (5th Cir. 1983) ........................................................................13

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)........................................................................4, 7, 8, 14

*Morial v. Judiciary Commission of State of Louisiana*,
  565 F.2d 295 (5th Cir. 1977) ..........................................................................9

*National Organization for Marriage, Inc. v. Walsh*,
  714 F.3d 682 (2d Cir. 2013) ............................................................................9

*New Mexicans for Bill Richardson v. Gonzales*,
  64 F.3d 1495 (10th Cir. 1995) ........................................................................9

*Ohio Civil Rights Commission v. Dayton Christian School*,
  477 U.S. 619 (1986)..........................................................................................8

*Peachlum v. City of York*,
  333 F.3d 429 (3d Cir. 2003) ............................................................................9

*Pustell v. Lynn Public Schools*,
  18 F.3d 50 (1st Cir. 1994)................................................................................6

*Septum, Inc. v. Keller*,
  614 F.2d 456 (5th Cir. 1980) ........................................................................14

*St. Paul Area Chamber of Commerce v. Gaertner*,
  439 F.3d 481 (8th Cir. 2006) ..........................................................................9

*Steffel v. Thompson*,
  415 U.S. 452 (1974)..........................................................................3, 4, 7, 9

*Sullivan v. City of Augusta*,
  511 F.3d 16 (1st Cir. 2007)..............................................................................9

*Susan B. Anthony List v. Driehaus*,
    134 S. Ct. 2334 (2014).............................................................................7, 12

*United States v. Doherty*,
    786 F.2d 491 (2d Cir. 1986) ...........................................................6

*Virginia v. American Booksellers Ass'n*,
    484 U.S. 383 (1988)....................................................................8, 10

*Wolfson v. Brammer*,
    616 F.3d 1045 (9th Cir. 2010) .......................................................9

*Younger v. Harris*,
    401 U.S. 37 (1971)........................................................................8

## OTHER AUTHORITIES

Bray, Samuel L., *The Myth of the Mild Declaratory Judgment*,
    63 Duke L.J. 1091(2014)..................................................................6

Rendleman, Doug, *Prospective Remedies in Constitutional Adjudication*,
    78 W. Va. L. Rev. 155 (1976) .........................................................7

Ritchie de Larena, Lorelei, *Re-evaluating Declaratory Judgment
    Jurisdiction in Intellectual Property Disputes*,
    83 Ind. L.J. 957 (2008) ...................................................................6

Wright, Charles, *The Law of Federal Courts* § 100 (4th ed. 1983)..........................6

13B Wright, Charles et al., *Fed. Prac. & Proc. Juris.*
    § 3532.3 .........................................................................................9
    § 3532.5 .........................................................................................7

Google respectfully petitions the Court for rehearing on a narrow issue related to the scope of the panel's ruling.

The panel directed the district court to dismiss the entire case as unripe because Google had not shown an "imminent threat of irreparable injury." Op.22. But that standard does not apply to Google's claims for declaratory relief regarding threatened enforcement action. Under settled law, such claims "need cross only a low threshold; the Supreme Court requires no more than a 'credible threat of prosecution,' one that is not 'chimerical,' or 'imaginary or speculative.'" *International Soc'y for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 821 (5th Cir. 1979) (citations omitted). Google met that standard. Accordingly, Google requests that the panel amend its decision to permit Google's claims for declaratory relief regarding threatened enforcement action to proceed.

### THE PANEL ERRED IN ORDERING DISMISSAL OF GOOGLE'S CLAIMS FOR DECLARATORY RELIEF REGARDING HOOD'S THREATENED ENFORCEMENT ACTION

#### A. Google Brought Declaratory And Injunctive Claims, But The Panel's Decision Addressed Only Google's Injunctive Claims

The Complaint seeks both declaratory and injunctive relief.[1] The district court preliminarily enjoined Attorney General Jim Hood from enforcing the

---

[1] Paragraph five of the Complaint seeks a "declar[ation]" of "Google's rights under federal statutory and constitutional law." ROA.31. Count Five of the Complaint (paragraphs 106-107), captioned "Declaration of the Parties' Respective

subpoena he had issued and from "bringing a civil or criminal charge against

Google under Mississippi law for making accessible third-party content to Internet

users (as [he had] threatened)."  ROA.2025.[2]  It also denied Hood's motion to

dismiss Google's claims for declaratory relief, ROA.2091-2095, 2107, but has not

yet ruled on the merits of those claims, ROA.2107.

Hood filed an interlocutory appeal of "the district court's grant of a

preliminary injunction."  AOB.1.  Hood did not seek leave to appeal the district

court's denial of the motion to dismiss, and he did not reference the declaratory

judgment claims in his statement of issues on appeal.  AOB.1.  Neither party

briefed the separate ripeness standards applicable to declaratory judgment actions.

In accordance with that framing of the issues, the panel's decision

addressing threatened enforcement action focused on Google's requests for

injunctive relief—not Google's claims for declaratory relief.  Op.19-22.  The panel

---

Rights Under [the Declaratory Judgment Act]," incorporates that request, and adds
specific requests for declarations that (1) "Section 230 of the [Communications
Decency Act (CDA)] and the First and Fourteenth Amendment[s]" preclude
threatened charges under the Mississippi Consumer Protection Act (MCPA); (2)
that a charge under the MCPA for "copyright infringement or importation of
prescription drugs is preempted by the Copyright Act, including the [Digital
Millennium Copyright Act], and/or the [Food, Drug, and Cosmetic Act]; and (3)
that "enforcement of the Subpoena, as presently drafted … is impermissible" under
the CDA, the Constitution, and certain federal statutes.  ROA.61.

[2] By letter of April 22, 2016, Hood withdrew the subpoena that Google had
challenged.

explained:  "Mindful that an injunction is an 'extraordinary remedy' that should

not issue absent a substantial threat that the movant will suffer irreparable injury

without one, we are persuaded that the district court should not have granted *this*

*relief* at this juncture."  Op.19 (citation omitted; emphasis added).  The panel stated

that an "imminent, non-speculative irreparable injury" was required.  Op.22.  And

the panel "conclude[d] that the district court erred *in granting injunctive relief*

because neither the issuance of the non-self-executing administrative subpoena nor

the possibility of some future enforcement action created an *imminent threat of*

*irreparable injury* ripe for adjudication."  Op.22 (emphasis added).

Based on the absence of an imminent threat of irreparable injury, the panel

ordered dismissal of Google's entire case on ripeness grounds—a ruling

encompassing both Google's claims for injunctive relief and Google's claims for

declaratory relief.  Op.22-23.  Dismissal of the declaratory claims regarding

Hood's threats of enforcement action went beyond what was necessary to resolve

the appeal.  And it was erroneous to apply the "imminent threat of irreparable

injury" standard to those claims.

> **B.**  **The Panel's Ruling That Google's Declaratory Claims Regarding Threatened Enforcement Action Are Unripe For Lack Of An "Imminent Threat Of Irreparable Injury" Contravenes Supreme Court And Fifth Circuit Precedent**

As the Supreme Court explained in *Steffel v. Thompson*, 415 U.S. 452

(1974), "requir[ing] that all of the traditional equitable prerequisites to the issuance

of an injunction be satisfied before the issuance of a declaratory judgment is considered would defy Congress' intent to make declaratory relief available in cases where an injunction would be inappropriate." *Id.* at 471. For that reason, the Supreme Court in *Steffel* held that "*the Court of Appeals was in error when it ruled that a failure to demonstrate irreparable injury—a traditional prerequisite to injunctive relief, having no equivalent in the law of declaratory judgments— precluded the granting of declaratory relief.*" *Id.* at 471-472 (citations omitted; emphasis added).

In *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), the Supreme Court reiterated that an "imminent threat of prosecution" is not a prerequisite to ripeness and Article III jurisdiction over declaratory claims. *Id.* at 128-129. In that case, the Supreme Court expressly rejected the Court of Appeals' "'reasonable apprehension of *imminent* suit' test," which would have precluded plaintiffs from seeking declaratory relief before an injunction would be available. *Id.* at 132 n.11.

Similarly, the Fifth Circuit has held that declaratory claims are ripe independent of whether an imminent irreparable injury exists. In *Brister v. Faulkner*, 214 F.3d 675 (5th Cir. 2000), this Court recognized that in *Steffel* the Supreme "Court held … that the plaintiff's failure to demonstrate irreparable injury and to obtain injunctive relief does not preclude declaratory relief." *Id.* at 679-680. Accordingly, this Court held that although plaintiffs "failed to prove any actual,

compensatory injuries sufficient for injunctive relief, those facts did not deprive the district court of jurisdiction to award declaratory relief." *Id.* at 679.

Likewise, in *Familias Unidas v. Briscoe*, 544 F.2d 182 (5th Cir. 1976), this Court held that although there was not "any basis for injunctive relief," there was "an adequate basis from which a federal court might enter a judgment declaratory of the constitutionality" of the challenged state action. *Familias Unidas v. Briscoe*, 619 F.2d 391, 397-398 (5th Cir. 1980). In that case, a state official had issued a request for information from the plaintiff; rather than furnish the information, the plaintiff challenged the constitutionality of the state statute authorizing the request in federal court, seeking injunctive and declaratory relief; and the state official then withdrew his request for the information. *Familias Unidas*, 544 F.2d at 184-185. This Court explained that "the withdrawal of the … request totally dissipated any 'immediacy' for injunctive relief from state action," *id.* at 187, but left "unaffected the actual underlying case or controversy for a declaratory judgment," *id.* at 188. The Court thus "h[e]ld a declaratory judgment appropriate." *Id.* at 191.

Other Circuits have also held that an imminent threat of irreparable injury is not necessary to make declaratory claims ripe. In *520 Michigan Avenue Associates v. Devine*, 433 F.3d 961 (7th Cir. 2006) (Easterbrook, J.), the Seventh Circuit reversed the district court for dismissing a declaratory claim that federal law preempted a state criminal statute on the ground that the plaintiff's "inability to

demonstrate that criminal prosecution is 'imminent' means there is no case or controversy under Article III of the Constitution." *Id.* at 962. The Seventh Circuit rejected the district court's "'imminence' requirement," *id.*, explaining that the "catalog of decisions that conduct review … long before prosecution is 'imminent,' is extensive," *id.* at 963. And in *Pustell v. Lynn Public Schools*, 18 F.3d 50 (1st Cir. 1994), the First Circuit explained that a declaratory judgment claim may be ripe "[r]egardless of the imminence of an enforcement action," *id.* at 53, and even if the timing is not yet "appropriate for injunctive relief," *id.* at 53 n.4.

It is thus well established that "the declaratory judgment procedure 'creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy.'" *United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986) (Friendly, J.) (quoting Wright, *The Law of Federal Courts* § 100, at 671 (4th ed. 1983)). As one scholar summarized, "when a plaintiff seeks an injunction there is not only the requirement of constitutional ripeness but also the requirement of 'equitable ripeness,' which usually means that there must be imminent harm"; by contrast, "when a plaintiff seeks a declaratory judgment, … there is no additional ripeness requirement that is specific to the declaratory judgment." Bray, *The Myth of the Mild Declaratory Judgment*, 63 Duke L.J. 1091, 1135 (2014).[3]

---

[3] *See also, e.g.*, Ritchie de Larena, *Re-evaluating Declaratory Judgment*

The panel's dismissal of Google's declaratory claims regarding threatened enforcement action is inconsistent with governing precedent and the established distinction between the ripeness standards for injunctive and declaratory claims. The panel should correct that error.

### C.     A Declaratory Claim Is Ripe When There Is A Genuine Threat Of Prosecution

For declaratory actions challenging threatened enforcement action, "standing and ripeness boil down to the same question." *MedImmune*, 549 U.S. at 128 n.8; *see Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 n.5 (2014); 13B Wright et al., *Fed. Prac. & Proc. Juris.* § 3532.5 ("distinction" between "standing and ripeness" has been "all but obliterated, at least for declaratory-judgment actions").

The test for whether pre-enforcement claims for declaratory relief are ripe is whether the plaintiff has alleged a threat of enforcement that is genuine or credible. *See Steffel*, 415 U.S. at 475 (declaratory relief available where "federal plaintiff demonstrates a genuine threat of enforcement"); *Susan B. Anthony List*, 134 S. Ct. at 2343 (pre-enforcement declaratory claims justiciable because plaintiffs "alleged

---

*Jurisdiction in Intellectual Property Disputes*, 83 Ind. L.J. 957, 962 (2008) (declaratory relief "is most useful when sought early in the process, before either party suffers grave or irreparable damage"); Rendleman, *Prospective Remedies in Constitutional Adjudication*, 78 W. Va. L. Rev. 155, 161 (1976) (declaratory relief is available for "people embroiled in an actual controversy which has not developed to the stage at which someone could seek damages or an injunction").

a credible threat of enforcement"); *Holder v. Humanitarian Law Project*, 561 U.S. 1, 15 (2010) ("credible threat"); *MedImmune*, 549 U.S. at 129 ("genuine threat"); *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393 (1988) ("well founded fear"); *Ohio Civil Rights Comm'n v. Dayton Christian Sch.*, 477 U.S. 619, 625 n.1 (1986) ("reasonable threat").  The Supreme Court has explained that plaintiffs fail to satisfy this requirement if they have "no fears of state prosecution except those that are imaginary or speculative" and "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible."  *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298-299 (1979) (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)).

As this Court has observed, this standard is a "low threshold," satisfied so long as the threat of prosecution is not "'chimerical,' or 'imaginary or speculative.'"  *International Soc'y for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 821 (5th Cir. 1979) (citations omitted); *see also Brister* 214 F.3d at 681 ("In no way are plaintiffs' 'threats of prosecution … imaginary, speculative or chimerical' ….  Thus, plaintiffs have demonstrated the existence of an Article III controversy."); *Center for Individual Freedom v. Carmouche*, 449 F.3d 655, 660 (5th Cir. 2006) (finding Article III controversy because "fear of prosecution … is not 'imaginary or wholly speculative'").  Other Circuits have similarly held pre-enforcement declaratory claims justiciable when there is "a 'credible threat' of

8

enforcement … —*i.e.*, 'one that is not chimerical, imaginary[,] or speculative.'"

*Harrell v. The Florida Bar*, 608 F.3d 1241, 1258 (11th Cir. 2010) (quoting *Eaves*,

601 F.2d at 821).[4]

This well-established standard applies to claims for declaratory relief

regarding threatened enforcement action, whether the challenge is to a state law

"on its face or as applied," *Steffel*, 415 U.S. at 475, and whether the challenge is

based on preemption, *e.g.*, *520 Mich. Ave.*, 433 F.3d at 962, or on constitutional

grounds, *e.g.*, *Eaves,* 601 F.2d at 821.  Moreover, when claims are based on the

First Amendment, ripeness requirements are at their lowest ebb, *see Morial v.*

*Judiciary Comm'n of State of La.*, 565 F.2d 295, 298 (5th Cir. 1977),[5] because the

---

[4] *See also, e.g.*, *Kiser v. Reitz*, 765 F.3d 601, 608-610 (6th Cir. 2014); *Cooksey v. Futrell*, 721 F.3d 226, 235, 240-241 (4th Cir. 2013); *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 485 (8th Cir. 2006); *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 618 (9th Cir. 1999); *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1501 (10th Cir. 1995).

[5] *See also National Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 689 (2d Cir. 2013) ("[W]e assess pre-enforcement First Amendment claims … under somewhat relaxed standing and ripeness rules."); *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) ("[W]e have applied the requirements of ripeness and standing less stringently in the context of First Amendment claims."); *Sullivan v. City of Augusta*, 511 F.3d 16, 31 (1st Cir. 2007) ("[W]hen free speech is at issue, concerns over chilling effect call for a relaxation of ripeness requirement."); *Peachlum v. City of York*, 333 F.3d 429, 434 (3d Cir. 2003) ("A First Amendment claim … is subject to a relaxed ripeness standard."); *Florida Right to Life, Inc. v. Lamar*, 273 F.3d 1318, 1323 (11th Cir. 2001) ("In First Amendment cases, this [ripeness] test is less exacting."); 13B Wright, *Fed. Prac. & Proc. Juris.* § 3532.3 ("First Amendment rights of free expression and association are particularly apt to be found ripe for immediate protection, because of the fear of irretrievable loss.").

harm alleged includes a chilling effect on First Amendment rights, a danger that is largely "one of self-censorship," which "can be realized even without an actual prosecution," *American Booksellers*, 484 U.S. at 393.

### D.    Hood Has Threatened Enforcement Action

The record establishes that Google faces a genuine threat of enforcement action, one that is not imaginary, speculative, or chimerical.

*First*, Hood has charged that Google's Autocomplete feature is unlawful.  In a letter to Google's Chief Executive Officer, Hood charged that "Google is aiding and abetting by allowing its autocomplete feature to lead and even encourage its users to illegal activity."  ROA.391.  In that same sentence, Hood warned that he and other attorneys general are "duty-bound to enforce their consumer protection laws and other civil and criminal statutes."  ROA.391.

In a separate letter to Google's General Counsel, Hood similarly alleged that "Google is responsible and outside [CDA] Section 230's protections" when "Autocomplete steers users towards illegal content and websites."  ROA.649.  In that same letter, Hood explained that he sought to "hold[] Google to account for … its promotion of particular unlawful websites through the Autocomplete feature."  ROA.650.  Similarly, Hood labeled Google an "accessory before the fact" because Autocomplete led users to sites selling pharmaceuticals unlawfully.  ROA.392.

*Second*, Hood has claimed that Google violates the law by displaying links to unlawful content in its search results.  In a letter to Google's General Counsel, he warned that "Google cannot escape liability" when it "promotes, through its search results, websites obviously selling unlawful drugs or streaming pirated videos."  ROA.648.  He explained that "[o]nce Google is aware of that conduct … it assists criminal actors in advertising their services."  ROA.648.  One day before Google filed this suit, Hood held a press conference to announce that Google was "assisting in a crime" by allowing sites that stream pirated content to appear in its search results.  ROA.1574.

*Third*, Hood has alleged that Google's YouTube service violates the law by displaying advertising next to "videos that promote criminal activities."  ROA.646.  In a letter to Google's General Counsel, Hood asserted that "YouTube's role in unlawful conduct is well-established" and that "Google's actions go beyond those of a legitimate business engaging in arms-length transactions."  ROA.648.  Hood contended that "YouTube is clearly on notice of the illegal content of [a] video," and that "YouTube's knowledge of this illegality, combined with its decision to monetize the video and share profits with its producer, proves its intent to 'further, promote, and cooperate' in the illegal conduct."  ROA.647, 648.  Hood notified Google that he seeks to "hold[] Google to account for … its business partnership with the producers of YouTube videos engaged in unlawful conduct."  ROA.650.

11

In addition to identifying specific conduct he deemed unlawful, Hood took concrete steps that reinforced the peril Google faces. He wrote the company's outside counsel requesting that Google "preserve potentially relevant information that may be used as evidence in pending or *reasonably foreseeable litigation*." ROA.397-398 (emphasis added).[6] Hood gave a presentation to fellow attorneys general that detailed Google's alleged wrongdoing, explained the elements of "Possible Causes of Action," and offered theories to overcome Google's anticipated defenses. ROA.524-528. Hood issued a subpoena in which he asserted that he has "reasonable grounds to believe that Google Inc. has used trade practices that are unfair, deceptive, and misleading" in violation of the MCPA. ROA.809; *see Susan B. Anthony List*, 134 S. Ct. at 2344-2345 (citing finding of "probable cause to believe" conduct violated statute as evidence of justiciable dispute).

Hood also made repeated, detailed demands that Google change its practices or face legal action. In one letter, Hood warned that if Google did not voluntarily meet his demands, he would "take legal action to change behavior." ROA.378. In another letter, Hood reiterated that Google must meet his demands to "maintain its status as a legitimate business and avoid further liability." ROA.642. He warned that a "lawyer with a badge is not enough to push" Google, so he might have "to

---

[6] By letter of April 22, 2016, Hood withdrew the subpoena that Google challenged but expressly warned: "Please be advised that the litigation hold letter dated June 10, 2013, remains in effect."

put somebody in jail," ROA.617, predicted a "court battle," ROA.1585, and

declared that Google "should be convicted of a felony," ROA.1588-1589. These

open, repeated, and specific threats go well beyond what courts have required to

find a declaratory judgment claim ripe. *See, e.g.*, *Center for Individual Freedom*,

449 at 660 (declaratory claim justiciable where state agency's "interpretation" of

statute in "advisory letter" gave plaintiff "nonspeculative risk" of prosecution,

despite lack of threats directed at plaintiff); *First Gibraltar Bank, FSB v. Morales*,

19 F.3d 1032, 1038-1039 (5th Cir. 1994) (declaratory claim ripe where no overt

threats directed at plaintiffs, but state officials had expressed opinion that certain

conduct violated state law), *opinion vacated and superseded on other grounds*, 42

F.3d 895 (5th Cir. 1995); *KVUE, Inc. v. Moore*, 709 F.2d 922 (5th Cir. 1983)

(declaratory claim ripe where prosecutor would "not rule out prosecution," despite

prosecutor's testimony that "she did not anticipate prosecuting" plaintiff).[7]

No one can reasonably be expected to brush off a state attorney general's

specific allegations of unlawful conduct and repeated threats of enforcement

---

[7] *See also, e.g.*, *Kiser*, 765 F.3d at 609 (declaratory claim justiciable where state agency sent warning letter regarding past conduct and recommended that plaintiff seek advice of counsel if he intended to continue conduct); *Cooksey*, 721 F.3d at 241 (declaratory claim ripe where state agency asserted statute applied to plaintiffs' website, proposed changes to website, and noted that it would "continue to monitor the situation"); *520 Mich. Ave.*, 433 F.3d at 962-963 (declaratory claim justiciable where state agency issued "civil investigative demand" under state law asking plaintiff for "information" about its labor force, leading plaintiff to conclude "it was in the state's cross-hairs").

action.  The law does not require Google to either accede to Hood's demands or

call his bluff.  The whole point of the Declaratory Judgment Act is precisely to

"ameliorate" the dilemma faced by those put to the choice of "abandoning …

rights or risking prosecution."  *MedImmune*, 549 U.S. at 129.

Where, as here, the threats pertain to specific, discrete practices that Google

contends are protected by the First Amendment and the CDA or preempted under

the DMCA or the FDCA, Google has the right to seek declaratory relief in federal

court.  *See United Farm Workers Nat'l Union*, 442 U.S. at 298 (declaratory claim

is justiciable when "plaintiff has alleged an intention to engage in a course of

conduct arguably affected with a constitutional interest, but proscribed by a statute,

and there exists a credible threat of prosecution thereunder"); *accord Septum, Inc.

v. Keller*, 614 F.2d 456, 459 (5th Cir. 1980).

Under settled precedent, that remains true even if it is uncertain whether

Hood will actually initiate the legal action he has threatened.  *See United Farm

Workers Nat'l Union*, 442 U.S. at 302 (finding "fear of criminal prosecution … is

not imaginary or wholly speculative" even though penalty "has not yet been

applied and may never be applied"); *International Tape Mfrs. Ass'n v. Gerstein*,

494 F.2d 25, 28 (5th Cir. 1974) ("A specific threat of enforcement is not

mandatory, but plaintiffs should somehow demonstrate that the statute poses more

than an imaginary threat to their well-being.").

14

In sum, Hood has repeatedly warned Google that he considers unlawful under Mississippi law specific practices that Google contends are protected under federal law. He has repeatedly threatened to bring an enforcement action, even to criminally prosecute Google, if it does not cease that specific protected conduct. And he has backed up his threats by making litigation preservation demands, outlining his litigation strategy to potential allies, and issuing a subpoena asserting that he has "reasonable grounds to believe" that the specific conduct is unlawful under Mississippi law. Google's claims for declaratory relief regarding this threatened enforcement action are ripe.

## CONCLUSION

This Court should grant the petition for panel rehearing, and either (1) clarify that its ruling does not address the ripeness of Google's claims for declaratory relief or (2) rule that Google's claims for declaratory relief regarding Hood's threats of enforcement action are ripe, and in either case remand for further proceedings in the district court on those claims.

Respectfully submitted.

/s/  Peter G. Neiman

FRED KRUTZ
DANIEL J. MULHOLLAND
FORMAN WATKINS
   KRUTZ & TARDY LLP
200 South Lamar Street, Suite 100
City Centre
Jackson, MS  39201
(601) 960-8600

CHRISTOPHER W. JOHNSTONE
WILMER CUTLER PICKERING
   HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
(650) 858-6000


April 22, 2016

PETER G. NEIMAN
CHRISTOPHER BOUCHOUX
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
(212) 230-8800

JAMIE S. GORELICK
PATRICK J. CAROME
BLAKE C. ROBERTS
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000

## CERTIFICATE OF SERVICE

I certify that on this 23rd day of April, 2016, I electronically filed the foregoing Petition for Panel Rehearing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

I also certify that on the 22nd day of April, 2016, my colleague Blake C. Roberts, emailed an identical version of the Petition for Panel Rehearing to the Fifth Circuit ECF Help Desk at ca05_cmecf@ca5.uscourts.gov with a cover email noting Google's counsel's inability to log into ECF for filing. On that email, Mr. Roberts copied Counsel of Record for Defendant-Appellant Attorney General Jim Hood and all other counsel designated to receive electronic service via ECF for this appeal.

I certify that the foregoing Petition for Rehearing filed via ECF on April 23 is identical to the Petition for Rehearing emailed by Mr. Roberts on April 22.


/s/  Peter G. Neiman
PETER G. NEIMAN

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Fifth Circuit Rule 32.3, the undersigned hereby certifies that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Fifth Circuit Rule 32.1 and with the page limit requirements of Federal Rule of Appellate Procedure 40(b) and Fifth Circuit Rule 40.3.

/s/  Peter G. Neiman
PETER G. NEIMAN

April 22, 2016

ATTACHMENT

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-60205

United States Court of Appeals
Fifth Circuit

**FILED**

April 8, 2016

Lyle W. Cayce
Clerk

GOOGLE, INCORPORATED,

        Plaintiff - Appellee

v.

JAMES M. HOOD, III, Attorney General of the State of Mississippi, in his official capacity,

        Defendant - Appellant

Appeals from the United States District Court
for the Southern District of Mississippi

Before STEWART, Chief Judge, KING and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Mississippi's Attorney General, James M. Hood III, believes that internet giant Google may be liable under state law for facilitating dangerous and unlawful activity through its online platforms. Hood's conflict with Google culminated in his issuance of a broad administrative subpoena, which Google challenged in federal court. The district court granted a preliminary injunction prohibiting Hood from (1) enforcing the administrative subpoena or (2) bringing any civil or criminal action against Google "for making accessible third-party content to internet users." Hood appeals, arguing that the district court should have dismissed Google's suit on a number of threshold grounds,

No. 15-60205

and in any event erred in granting injunctive relief. Expressing no opinion on the merits, we vacate the injunction.

## I.

This dispute concerns the adequacy of Google's efforts to police the technology services it provides to tens of millions of people every day.

## A.

Google's leading internet search engine processes over 3.5 billion searches per day, finding webpages responsive to users' queries through an algorithmic review of billions of pages selected from over 60 trillion indexed pages.[1] Google also operates YouTube, a popular platform for uploading and viewing videos to which nearly 300 new hours of content are added every minute. Both services feature Google's "Autocomplete" function, which uses an algorithm based on prior search activity and the content of indexed pages to predict a query as it is typed. This feature, according to Google, is intended to save time and correct common misspellings. The user may select one of the suggested queries to run a search, or ignore the suggestions and keep typing.

Google earns revenue through services called AdWords, which places third-party advertisements alongside search results and YouTube videos, and AdSense, which allows third-party websites to host advertisements generated through AdWords. Over 40 million AdWords advertisements are created each day. The order in which they appear to users depends on, among other factors,

---

[1] These and other statistics cited in this opinion reflect evidence filed with the district court in 2014, and may be outdated. A "webpage" is a single "document on the World Wide Web, consisting of a hypertext file and any related files for scripts and graphics, and often hyperlinked to other documents on the Web." *Webpage*, AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE at 1963 (5th ed. 2011). A "website" is "[a] set of interconnected webpages." *Website, id.*

how much the advertiser pays and the "quality" of the advertisements and linked websites

Although the vast majority of the content users find through Google's services is produced by third parties, Google takes measures to weed out illegal material.  For example, when Google receives a valid "takedown notice" from a copyright owner about a webpage containing unauthorized material, or when a court rules content unlawful, Google removes the offending page from its search results.  In 2013 alone, Google removed 222 million pages from its search results as a result of takedown notices.  Though it generally does not remove whole *sites* on the basis of infringing *pages*, Google "incorporates" copyright removal notices as a negative factor in the search algorithm it uses to rank sites.  The company also removes from its search results limited content such as personal financial information and images showing sexual abuse of children.  And Google blocks predictive Autocomplete queries for narrow "cases of potentially shocking or offensive entries (*e.g.*, hate speech) and in cases where there is a high correlation between particular terms and infringing copyright."[2]

Videos that violate YouTube's terms and conditions can be removed in several ways.  Users can flag videos, which are then reviewed and, if they violate Google's guidelines, taken down.  Google also removes videos in response to valid legal complaints and uses computer models to identify large-scale policy violations.  Additionally, a system called Content ID allows copyright owners to "identify and manage their content on YouTube" by sending YouTube a database of copyrighted files.  When a newly uploaded video matches such a file, the copyright owner can choose to mute, block,

---

[2] In other countries, Google further limits search results in accordance with "local law."  For example, Google removes Nazi-related content from its Germany-based search engine and "insults to religion" from its India-based search engine.

monetize, or track that video.  User accounts can be terminated for egregious or repeated violations.

Google's AdWords policies prohibit advertising for, among other things, counterfeit goods, "dangerous products or services" including recreational drugs and weapons, "products that are designed to enable dishonest behavior" such as hacking software, and hate-promoting or otherwise "offensive or inappropriate content."  Google restricts (but does not prohibit) advertising for "adult-oriented content," alcoholic beverages, intellectual-property-violative material, and healthcare-related content (including over-the-counter and prescription medication).  In 2014, Google rejected over 428 million advertisements and suspended or terminated over 900,000 advertiser accounts for AdWords policy violations.  Similar policies govern AdSense.

## B.

In late 2012 and early 2013, Hood and other state attorneys general began expressing concern that search engines were not doing enough to combat copyright infringement, the sale of prescription drugs and counterfeit products, and other "illegal and harmful" activity on the internet.  In April 2013, Hood's office wrote to Google about these topics, alleging that the company had inadequately responded to previous requests for information, showing an "unwillingness to make meaningful reforms" and "a lack of commitment to making the Internet a safe place for families and commerce."  Hood complained that, among other things, children were "able to purchase drugs without a prescription through Google," and that "sites peddling counterfeit and pirated goods are still appearing at the top of" search results.  Hood expressed a desire to meet with Google to develop solutions, but warned that "if voluntary actions will not suffice, we will take legal action."  As it had before, Google responded,

highlighting its existing efforts to counter illegal activity online and explaining why, in its view, more severe measures were inappropriate.

Friction between the parties escalated. In May 2013, Hood threatened that if the company did not "provide adequate answers," he would urge his fellow attorneys general to issue civil investigative demands (subpoenas) to the company. He also demanded a "24-hour link" through which requests by attorneys general to remove webpages from Google's searchable index would be "granted or addressed within hours." About a month later, Hood sent Google's counsel a letter requesting a litigation hold, explaining that Mississippi was "investigating and evaluating Google's conduct related to its search algorithm, auto-complete feature, advertising policies, and any other related functions," with the purpose of "determin[ing] whether there exist any violations of Mississippi law." "One of the many potential outcomes of the ongoing investigation," Hood warned, "could be civil or criminal litigation."

At a subsequent meeting of attorneys general, Hood called on his colleagues to issue subpoenas in an effort to "force [Google] to come to the table in earnest and make these changes and admit what they've done" and "block . . . some of the search results that are coming to the top ahead of . . . legitimate sites." Google wrote to Hood about these remarks, arguing that its existing practices were lawful, that more stringent measures against illegal content would be inconsistent with free speech values and the practices of similar companies, and that federal law immunized Google from liability for the complained-of conduct.

In November 2013, Hood sent another letter criticizing Google and demanding that the company (1) promote in its search results "sites [that] have been authorized to provide content"; (2) mark such "authorized" sites in search results; (3) remove entire websites "substantially dedicated to intellectual property infringement" from its search index; (4) refuse to index new pages

from websites "for which Google has received multiple notices of infringement"; (5) "dramatically" demote "rogue" infringement sites in search results; and (6) warn users before it "permits them to link from Google to rogue sites." Hood rejected the notion that Google was immune from legal action, stating that Google was being investigated for its "own conduct" and was "not a mere publisher of third-party content when it suggests search terms through Autocomplete," profits from YouTube videos involving illegal activity, or builds its search algorithms. Hood repeated similar criticisms and demands at public meetings in early 2014, as the parties continued to exchange letters.

Google has made some changes in response to Hood's investigation. It created a "trusted flag" mechanism through which Google promptly reviewed videos Hood's office complained about. After being trained on that tool, Hood's office flagged seven videos, six of which Google quickly took down. When asked by the district court, Hood's counsel could not identify any investigatory efforts related to the videos his office flagged. His office has nevertheless asked that Google immediately remove flagged videos pending review and "consider implementing a more comprehensive content evaluation process." Google has also blocked certain Autocomplete predictions and no longer permits advertisements on videos relating to "health and pharmacy" topics.

## C.

In October 2014, Hood made good on his threats to issue an administrative subpoena, which stated broadly that there were "reasonable grounds to believe that Google Inc. may have violated . . . the Mississippi Consumer Protection Act," Miss. Code. Ann. § 75-24-1, *et seq.* The administrative subpoena sought information on Google's platforms, advertising practices, and knowledge of and efforts to police "dangerous" or "illegal" content such as prescription or illicit drug sales, drug abuse, credit card leaks, fraudulent identification documents, human trafficking, and

copyright infringement. And it demanded a response by mail to a post office box within thirty days, warning that if Google did not comply, Hood "may apply to" a state court "for an order compelling compliance in accordance with Miss. Code Ann. § 75-24-17."

The administrative subpoena, which totals 79 pages and includes 69 interrogatories and 141 document requests, is written expansively. For example, many of its requests pertain to conduct by which Google or third parties "aid," "abet," "assist," "facilitate," "encourage," or "promote" content or conduct that is "dangerous" or "unlawful." These verbs are all defined as

> the doing of any act, including the act of hosting or displaying search results, content or advertisements, that could possibly directly, indirectly or tangentially further or advance a course of action by any actor or actors, regardless of whether or not the act or acts would be protected or immunized under the Communications Decency Act, 47 United States Code ("U.S.C."), § 230. These terms should be construed broadly . . .

"Dangerous content or conduct," in turn,

> means content, conduct, or information that in itself is dangerous or has indicia that it could, in any way, either directly, indirectly or tangentially, aid, abet, assist, facilitate, encourage or promote activity that could lead to physical harm or injury and takes into account all facts and circumstances, including the age of the intended audience.

Similarly, "illegal" or "unlawful" "content or conduct"

> means content, conduct, materials or any information that is itself in violation of any criminal or civil law of the United States or that of any state or territory or has indicia that it could, either directly, indirectly or tangentially, promote, facilitate, encourage, aid, or abet activity that could be in violation of any criminal or civil law of the United States or that of any state or territory.

Some of the administrative subpoena's requests would require massive document production. For example, one seeks "all documents concerning any actions considered, taken, or not taken to remove videos . . . that appear to be

promoting, offering for sale, disseminating, engaging in or facilitating Dangerous or Illegal Content/Conduct," without temporal limitation. For context, in 2014 alone, Google removed or blocked over 180 million videos for policy violations. Many requests lack temporal limitations as well. Google executives aver that responding to the administrative subpoena "would be incredibly burdensome, in terms of time and resources."

The parties agreed to extend the return date to January 5, 2015, and that Google would in the meantime voluntarily share some materials. Google then shared approximately 100,000 pages of documents. Google claims that those documents show third parties created all of the content that the administrative subpoena identifies as objectionable. On December 17, 2014, Hood's office rebuffed Google's requests to narrow the administrative subpoena's temporal scope and exclude subject matters Google maintains are immunized by or are exclusively the province of federal law.

## D.

On December 19, 2014—without further responding to the administrative subpoena or seeking relief in state court—Google filed this lawsuit. Google alleges that Hood's investigation violates Google's immunity under the Communications Decency Act (CDA), its Fourth Amendment rights, and the First Amendment rights of Google and its users. Google contends that "any further steps [Hood] takes to fulfill his threats of a criminal prosecution, civil litigation, and/or enforcement proceeding against Google under Mississippi law for making accessible third-party content to Internet users would further violate" these rights. Google also alleges that federal law preempts Hood's "[i]nquiry, insofar as it pertains to possible copyright infringement or the importation of prescription drugs."

On the same day it filed its complaint, Google moved for a temporary restraining order and a preliminary injunction. Hood filed an opposition and

a motion to dismiss. The district court held a hearing at which each side offered legal argument but neither put on testimony. The court then denied Hood's motion to dismiss and preliminarily enjoined him from (1) enforcing the administrative subpoena, or (2) "bringing a civil or criminal charge against Google under Mississippi law for making accessible third-party content to Internet users (as threatened)." This appeal followed.

## II.

A preliminary injunction is an "extraordinary remedy" that should not be granted unless its proponent clearly shows: "(1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195–96 (5th Cir. 2003). We review the district court's determination on each of these elements for clear error, its conclusions of law de novo, and the ultimate decision whether to grant relief for abuse of discretion. *Bluefield Water Ass'n v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009).

Our review of subject-matter jurisdiction is plenary and de novo. *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 772 (5th Cir. 2003). "Although we review a district court's abstention ruling for abuse of discretion, we review de novo whether the requirements of a particular abstention doctrine are satisfied." *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004) (quoting *Nationwide Mut. Ins. Co. v. Unauthorized Practice of Law Comm.*, 283 F.3d 650, 652 (5th Cir. 2002)).

## III.

This lawsuit, like others of late, reminds us of the importance of preserving free speech on the internet, even though that medium serves as a

No. 15-60205

conduit for much that is distasteful or unlawful. *See Backpage.com, LLC v. Dart*, 807 F.3d 229 (7th Cir. 2015) (holding unconstitutional a sheriff's threats to credit card companies to stop doing business with a website that hosts classified ads for prostitution). Also like other recent litigation, this case implicates section 230 of the Communications Decency Act—Congress's grant of "broad immunity" to internet service providers "for all claims stemming from their publication of information created by third parties," which we and other circuits have consistently given a wide scope. *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008); *see also Doe v. Backpage.com, LLC*, --- F.3d ---, 2016 WL 963848, at *3–9, 14 (1st Cir. Mar. 14, 2016) (affirming dismissal based on section 230 despite appellants' "persuasive case" that the defendant "tailored its website to make sex trafficking easier" and stating: "If the evils that the appellants have identified are deemed to outweigh the First Amendment values that drive the CDA, the remedy is through legislation, not through litigation.").[3]   Yet we are also cognizant that an injunction is an equitable remedy that should only issue when essential to prevent an otherwise irreparable injury. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982); *Lake Charles Diesel*, 328 F.3d at 195–96. With these principles in mind, we turn to the parties' arguments.

A.

We first reject Hood's contention that we can resolve this case on the simple ground that the district court lacked federal-question jurisdiction. Federal courts have jurisdiction over "all civil actions arising under the

---

[3] Legislatures have indeed become entangled in these issues. *See* John D. McKinnon, *Senate Holds Classified-Ad Site Backpage.com in Contempt*, WALL ST. J. (Mar. 17, 2016), http://www.wsj.com/articles/senate-holds-classified-ad-site-backpage-com-in-contempt-1458241526 (reporting on contempt resolution authorizing the Senate's legal counsel to bring a federal enforcement action concerning subpoenas that a controversial website company, relying on the First Amendment and the CDA, has refused to comply with).

No. 15-60205

Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. We apply the "well-pleaded complaint rule" to determine whether a suit arises under federal law, asking "whether the plaintiff has affirmatively alleged a federal claim." *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 328 (5th Cir. 2008). As a corollary, "anticipated or potential defenses, including defenses based on federal preemption, do not provide a basis for federal question jurisdiction." *Id.* Here, Google brings four claims under 42 U.S.C. § 1983 alleging violations of the United States Constitution and federal statutory law. This satisfies the well-pleaded complaint rule.

Focusing on Google's claims for declaratory relief, Hood protests that Google really presents only artfully pleaded anticipated defenses to a future state-law action—but he is wrong, as illustrated by our recent decision in *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389 (5th Cir. 2015). There, the Texas Attorney General determined that NiGen's dietary supplements were misleadingly labeled in violation of state law. He sent NiGen and its retailers letters "intimating that formal enforcement was on the horizon"; as a result, the retailers stopped selling the accused products. 804 F.3d at 392. NiGen sought federal declaratory and injunctive relief, but the Attorney General argued that all of NiGen's claims were "essentially anticipatory defenses to the threatened enforcement action." *Id.* at 392, 395. We disagreed, explaining that when a plaintiff seeks both declaratory and injunctive relief from allegedly unconstitutional state action, the well-pleaded complaint rule as adapted to declaratory actions "does not prevent that plaintiff from establishing federal jurisdiction." *Id.* at 395–96. Here too, Google's claims seeking to enjoin a state officer's alleged violations of federal law invoke federal-question jurisdiction. *See Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983) ("It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights."); *Major League Baseball v. Crist*, 331 F.3d

11

No. 15-60205

1177, 1182 (11th Cir. 2003) (holding that federal-question jurisdiction existed over § 1983 claims that a state attorney general's investigative subpoena was preempted by federal law).[4]

## B.

We next consider whether the district court should have abstained under the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), which applies to suits for injunctive and declaratory relief. *See Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 86 (5th Cir. 1992).

*Younger* established that federal courts should not enjoin pending state criminal prosecutions unless the plaintiff shows "bad faith, harassment, or any other unusual circumstances that would call for equitable relief," such as a "flagrantly and patently" unconstitutional state statute. *Younger*, 401 U.S. at 53–54. The doctrine reflects the principle that equitable remedies are inappropriate "when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Id.* at 43–44. It also protects our federal system's "notion of 'comity,' that is, a proper respect for state functions." *Id.* at 44. As the Supreme Court has explained, interference with state judicial proceedings "prevents the state . . . from effectuating its substantive policies . . . . results in duplicative legal proceedings, and can readily be interpreted 'as reflecting negatively upon the state courts' ability to

---

[4] The remainder of Hood's purported federal-question jurisdiction arguments fail, as they relate to the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("Dismissal for lack of subject matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974))); *Rodriguez v. DeBuono*, 175 F.3d 227, 233 (2d Cir. 1998) (explaining that whether a federal statute is enforceable through § 1983 is a merits question that "does not implicate jurisdiction").

No. 15-60205

enforce constitutional principles.'" *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975) (quoting *Steffel v. Thompson*, 415 U.S. 452, 462 (1974)).

Although *Younger* has been expanded beyond the criminal context, abstention is not required in every case of "[p]arallel state-court proceedings." *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013). Rather, as the Supreme Court recently clarified, it applies only to "three 'exceptional' categories" of state proceedings: ongoing criminal prosecutions, certain civil enforcement proceedings akin to criminal prosecutions,[5] and "pending 'civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions.'"[6] *Id.* at 588, 591 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)). If state proceedings fit into one of these categories, a court "appropriately consider[s] . . . before invoking *Younger*" whether there is "(1) 'an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) . . . provides an adequate opportunity to raise federal challenges.'" *Id.* at 593 (brackets omitted); *see Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

The district court did not err in declining to abstain because there was no "ongoing state judicial proceeding" fitting one of *Younger*'s three categories. "[A]bstention from the exercise of federal jurisdiction," it must be remembered, "is the 'exception, not the rule.'" *Id.* (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)). And *Younger* does not apply merely because "a state

---

[5] *See, e.g.*, *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.*, 477 U.S. 619, 623–28 (1986) (enforcement action before civil rights commission); *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432–35 (1982) (bar disciplinary proceedings); *Huffman*, 420 U.S. at 595–97, 611–12 (state-instituted public nuisance proceeding).

[6] *See, e.g.*, *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 3, 13 (1987) (execution of state-court judgment pending appeal); *Juidice v. Vail*, 430 U.S. 327, 330, 334–37 (1977) (state civil contempt procedures for judgment debtors).

bureaucracy has initiated contact with a putative federal plaintiff," *La. Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483, 1491 (5th Cir. 1995) (quoting *Telco Commc'ns, Inc. v. Carbaugh*, 885 F.2d 1225, 1229 (4th Cir. 1989)), or "a state investigation has begun," *Mulholland v. Marion Cty. Election Bd.*, 746 F.3d 811, 817 (7th Cir. 2014).   In *Louisiana Debating*, for example, a city commission with the power to issue cease-and-desist orders notified four private clubs of discrimination complaints, told them that the commission had the power to adjudicate or conciliate those complaints, and requested certain information. 42 F.3d at 1487. The clubs filed § 1983 actions seeking declaratory and injunctive relief on the ground that the city's anti-discrimination ordinance could not be applied to them consistent with the First Amendment. *Id.* at 1488.   We affirmed the district court's decision not to abstain, noting that the state action had not progressed nearly as far as in the Supreme Court's cases applying *Younger* to state agency proceedings in which the state had already "investigated the allegations, made determinations that probable cause existed, and served formal charges." *See id.* at 1490–91.

Here, we cannot agree with Hood that an executive official's service of a non-self-executing subpoena creates an "ongoing state judicial proceeding."  As of now, Hood has not moved to enforce the administrative subpoena in any state court, nor has any judicial or quasi-judicial tribunal begun proceedings against Google.   *See Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) (holding *Younger* abstention clearly erroneous "[a]bsent any *pending* proceeding in state tribunals").   Our holding that *Younger* does not apply comports with the doctrine's underlying principles because, in the absence of any pending state judicial proceeding, federal intervention would not "result in duplicative legal proceedings" or "reflect[] negatively upon [a] state court's ability to enforce constitutional principles." *Steffel*, 415 U.S. at 462.

No. 15-60205

Our decision in *Earle*, 388 F.3d at 515, does not compel a different conclusion. There, we considered "whether state *grand jury proceedings* in which subpoenas have been issued constitute an 'ongoing state proceeding' such that abstention is warranted." *Id.* at 519 (emphasis added). Crucial to our affirmance of the district court's abstention was that a Texas grand jury "is said to be 'an arm of the court by which it is appointed.'" *Id.* at 521 (quoting *Dall. Cty. Dist. Att'y v. Doe*, 969 S.W.2d 537, 542 (Tex. App. 1998)). Indeed, a Texas court (1) "impanels the grand jury after testing the qualifications of its members;" (2) "administers the jurors' oath, and instructs them as to their duties"; (3) advises the grand jury "on any matter it is considering"; and (4) issues and enforces any subpoena sought to be issued by the grand jury. *Id.* These factors are not present here. An executive official who frequently appears as an adversarial litigant in state courts is not an "arm" of the judiciary, and the administrative subpoena here has not been issued or enforced by any court. For these reasons, *Earle* does not control our analysis.[7]

---

[7] Nor are we persuaded by the out-of-circuit cases Hood cites. He relies most heavily on *J. & W. Seligman & Co. v. Spitzer*, which held that a state attorney general's issuance of an investigative subpoena initiated an ongoing proceeding for *Younger* purposes. No. 05 Civ. 7781 (KMW), 2007 WL 2822208, at *5 (S.D.N.Y. Sept. 27, 2007). Most of the cases on which that district court decision relied involved grand-jury subpoenas or judicially issued search warrants, both of which—unlike an administrative subpoena issued without prior court approval—involve proceedings before a neutral court or an arm thereof. The court disregarded this distinction because "the information sought may be used to initiate civil or criminal proceedings," *id.*—but that logic would apply to *any* investigative step, and courts need not abstain in the face of a mere investigation. *See Mulholland*, 746 F.3d at 817 ("The possibility that a state proceeding may lead to a future prosecution of the federal plaintiff is not enough to trigger *Younger* abstention; a federal court need not decline to hear a constitutional case within its jurisdiction merely because a state investigation has begun."). The Eighth Circuit has held that abstention was required by subpoenas issued pursuant to Arkansas law under which a prosecutor "takes the place of a grand jury." *Kaylor v. Fields*, 661 F.2d 1177, 1182 (8th Cir. 1981) (quoting *Johnson v. State*, 133 S.W.2d 15, 18 (Ark. 1939)). But Hood has cited no comparable Mississippi law and, since *Kaylor*, the Supreme Court has clarified the limited reach of *Younger*—including in a recent opinion correcting the Eighth Circuit's overly broad reading of the doctrine. *See Sprint*, 134 S. Ct. at 593.

Other courts' decisions support our conclusion that *Younger* does not apply. Most on point, one district court found that there was no ongoing judicial proceeding where a state attorney general issued civil investigative demands to professional baseball teams, reasoning: "Unless and until someone files a proceeding in court, CIDs are simply part of an executive branch investigation." *Major League Baseball v. Butterworth*, 181 F. Supp. 2d 1316, 1321 n.2 (N.D. Fla. 2001), *aff'd sub nom. Major League Baseball v. Crist*, 331 F.3d 1177 (11th Cir. 2003). Also, the First Circuit refused to apply *Younger* where Puerto Rico's Insurance Commissioner had, as part of a multi-year investigation, issued subpoenas that did not require prior court approval. *Guillemard-Ginorio v. Contreras-Gomez*, 585 F.3d 508, 511–12, 519 (1st Cir. 2009). That court drew on a Fourth Circuit decision in articulating a "rule[] requiring the commencement of 'formal enforcement proceedings' before abstention is required." *Id.* at 519–20 (quoting *Telco*, 885 F.2d at 1229).[8] We do not articulate any bright-line rule, but we do hold that the issuance of a non-self-executing administrative subpoena does not, without more, mandate *Younger* abstention.

## C.

Despite the foregoing, our precedents lead us to conclude that this administrative subpoena was not ripe for adjudication by the district court. This follows from our cases considering federal administrative subpoenas that, as here, were non-self-executing—that is, the issuing agency could not itself sanction non-compliance. In one case, the recipient of investigatory Federal Trade Commission subpoenas sought injunctive and declaratory relief against their enforcement. *Atl. Richfield Co. v. F.T.C.*, 546 F.2d 646, 647 (5th Cir.

---

[8] *See also ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 140 (3d Cir. 2014) (noting in dicta that all of the Supreme Court's *Younger* cases involved "some type of formal complaint or charges").

No. 15-60205

1977). Stressing that the subpoenas were "not self-executing and [could] only be enforced by a district court," we held that pre-enforcement equitable relief would be "inappropriate." *Id.* at 649. We reasoned that, if and when the FTC moved to enforce the subpoenas as contemplated by statute, the recipient would have an adequate remedy at law. Until then, the recipient would "suffer no undue hardship from denial of judicial relief" because it could not absent a court order "be forced to comply with the subpoenas nor subjected to any penalties for noncompliance." *Id.* at 650; *accord Anheuser-Busch, Inc. v. FTC*, 359 F.2d 487 (8th Cir. 1966) (Blackmun, J.).

We applied the same logic when the recipient of an administrative subpoena issued by the Immigration and Naturalization Service moved to quash it in federal court. *In re Ramirez*, 905 F.2d 97, 98 (5th Cir. 1990). The operative statute gave the INS no power to enforce its own subpoenas, but authorized district courts to issue orders requiring compliance on pain of contempt. *Id.* at 98 & n.2. Though both parties thought the case properly before the district court, we disagreed, stating: "Where an agency must resort to judicial enforcement of its subpoenas, courts generally dismiss anticipatory actions filed by parties challenging such subpoenas as not being ripe for review because of the availability of an adequate remedy at law if, and when, the agency files an enforcement action." *Id.* at 98. Because the government had not filed an enforcement action, this court held that the "motion to quash was not ripe for judicial action . . . and . . . should have been dismissed for lack of subject matter jurisdiction." *Id.* at 100; *see also Reisman v. Caplin*, 375 U.S. 440, 443–46 (1964) (holding that a pre-enforcement challenge to a non-self-executing Internal Revenue Service summons was "subject to dismissal for want of equity"); *Belle Fourche Pipeline Co. v. United States*, 751 F.2d 332, 334–35 (10th Cir. 1984) (finding no subject-matter jurisdiction over pre-enforcement challenge to investigative subpoena and citing *Reisman* as

17

No. 15-60205

"announc[ing] a rule strongly disfavoring any pre-enforcement review of investigative subpoenas").

The situation here is much the same. The statute under which this administrative subpoena was issued gives Hood no authority to enforce it; instead, if the recipient refuses to comply, the Attorney General "may, after notice, apply" to certain state courts "and, after hearing thereon, request an order" granting injunctive or other relief and enforceable through contempt. Miss. Code Ann. § 75-24-17. This procedure parallels those in the statutes at issue in *Atlantic Richfield*, 546 at 649 n.3, and *Ramirez*, 905 F.2d at 98 n.2. Hood has not brought an enforcement action.[9] And Google does not contest Hood's assertions that it could raise its objections to the administrative subpoena if Hood ever brings an enforcement proceeding.[10] The only real difference is that we have before us a state, not federal, subpoena. But we see no reason why a state's non-self-executing subpoena should be ripe for review when a federal equivalent would not be. If anything, comity should make us less willing to intervene when there is no current consequence for resisting the subpoena and the same challenges raised in the federal suit could be litigated

---

[9] *Cf. Sheridan v. Garrison*, 273 F. Supp. 673, 675–85 (E.D. La. 1967) (Rubin, J.) (enjoining enforcement of subpoena where plaintiff had been formally charged with an offense, had made "every effort" to challenge the subpoena in state court but had been denied relief, and faced contempt for refusing to testify before grand jury without an attorney present), *rev'd in part on other grounds*, 415 F.2d 699 (5th Cir. 1969).

[10] Perhaps because they are not yet implicated, the parties do not address the standards or procedures for challenging an administrative subpoena in Mississippi's courts. We note that Mississippi law expressly provides for the quashing of court-issued subpoenas that seek "privileged or other protected matter," subject the recipient "to undue burden or expense," or are issued in "bad faith." Miss. R. Civ. P. 45(d)(1)(A), (f). And we will of course not presume that Mississippi courts would be insensitive to the First Amendment values that can be implicated by investigatory subpoenas, *see United States v. R. Enters., Inc.*, 498 U.S. 292, 303 (1991); *id.* at 306–07 (Stevens, J., concurring), or to the general principle that "[c]ourts will not enforce an administrative subpoena . . . issued for an improper purpose, such as harassment," *Burlington N. R.R. Co. v. Office of Inspector General*, 983 F.2d 631, 638 (5th Cir. 1993) (citing *United States v. Powell*, 379 U.S. 48, 58 (1964)).

18

No. 15-60205

in state court. *See O'Keefe v. Chisholm*, 769 F.3d 936, 939–42 (7th Cir. 2014) (finding that a federal plaintiff's ability to litigate subpoena in state court counseled against injunctive relief even though the district court reasoned that the defendants' "bad faith" conduct justified an injunction).

In this as in any context, equitable relief is only appropriate when necessary to avoid an imminent irreparable injury. Because the administrative subpoena is not ripe for review, we hold that the district court should have rejected Google's pre-enforcement challenge.

## D.

The district court enjoined Hood not only from enforcing the administrative subpoena, but also from "bringing a civil or criminal charge against Google under Mississippi law for making accessible third-party content to Internet users." Mindful that an injunction is an "extraordinary remedy" that should not issue absent a substantial threat that the movant will suffer irreparable injury without one, *Lake Charles Diesel*, 328 F.3d at 195–96, we are persuaded that the district court should not have granted this relief at this juncture.

In *Morales v. Transworld Airlines*, the Supreme Court affirmed on federal preemption grounds an injunction against enforcement, under state consumer protection law, of written guidelines "containing detailed standards governing" air fare advertising—which Texas had told airlines they were violating through "formal notice[s] of intent to sue." 504 U.S. 374, 378–80, 391 (1992) (alteration in original). But the Court also held that the district court had "disregarded the limits on the exercise of its injunctive power" by enjoining the attorney general from "initiating any enforcement action . . . which would seek to regulate or restrict any aspect of the . . . plaintiff airlines' air fare advertising or the operations involving their rates, routes, and/or services." *Id.* at 382. The Court explained:

19

> In suits such as this one, which the plaintiff intends as a "first strike" to prevent a State from initiating a suit of its own, the prospect of state suit must be imminent, for it is the prospect of that suit which supplies the necessary irreparable injury. *Ex parte Young* thus speaks of enjoining state officers "*who threaten and are about to commence proceedings*," and we have recognized in a related context that a conjectural injury cannot warrant equitable relief. Any other rule (assuming it would meet Article III case-or-controversy requirements) would require federal courts to determine the constitutionality of state laws in hypothetical situations where it is not even clear the State itself would consider its law applicable. This problem is vividly enough illustrated by the blunderbuss injunction in the present case, which declares pre-empted "any" state suit involving "any aspect" of the airlines' rates, routes, and services. As petitioner has threatened to enforce only the obligations described in the guidelines regarding fare advertising, the injunction must be vacated insofar as it restrains the operation of state laws with respect to other matters.

*Id.* at 382–83 (citations omitted).

Unlike with the relief upheld in *Morales*, we do not have a formal notice of intent to sue for specific conduct.[11] Rather, as with the relief vacated in *Morales*, this injunction covers a fuzzily defined range of enforcement actions that do not appear imminent. We cannot on the present record predict what conduct Hood might one day try to prosecute under Mississippi law. Hood's complaints to Google and the public have been wide-ranging, and as Google stresses in its brief, the administrative subpoena is a "pre-litigation investigative tool" seeking information on a broad variety of subject matters—ranging from alleged facilitation of copyright infringement, illegal prescription

---

[11] Also, because it lacks a concrete and imminent threat of prosecution and challenges the anticipated application of a general consumer protection law, this case has little in common with those in which courts have enjoined threatened enforcement of state statutes specifically passed to target a website accused of facilitating sex trafficking through its online classified ads. *See Backpage.com, LLC v. Hoffman*, No. 13-cv-03952 (DMC)(JAD), 2013 WL 4502097 (D.N.J. Aug. 20, 2013); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805 (M.D. Tenn. 2013); *Backpage.com v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012).

No. 15-60205

drug sales, human trafficking, the sale of false identification documents, and credit card data theft.  Further, whether a defendant's actions exclusively consist of "making accessible third-party content to Internet users," the main qualifying language in this injunction, is not always readily determinable even after a complaint is brought.  *See CYBERsitter, LLC v. Google, Inc.*, 905 F. Supp. 2d 1080, 1086 (C.D. Cal. 2012) (denying Rule 12(b)(6) motion based on CDA immunity); *Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484 AHM (SHx), 2008 WL 4217837, at *8 (C.D. Cal. July 16, 2008) ("The question whether any of Google's conduct disqualifies it for immunity under the CDA will undoubtedly be fact-intensive.").[12]

True enough, a federal lawsuit can sometimes proceed on the basis of a merely threatened prosecution.  But unlike in, say, *Steffel*—where the plaintiff was told he would be prosecuted if he distributed handbills at a certain shopping center, 415 U.S. at 455—adjudicating whether federal law would allow an enforcement action here would require us to determine the legality of state action "in hypothetical situations."[13]  *Morales*, 504 U.S. at 382.  And of course, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion).   "A preliminary injunction is not

---

[12] By citing these cases, we do not suggest that section 230 of the CDA would not apply if Hood were to eventually bring an enforcement action, or cannot be applied at the motion-to-dismiss stage.  Indeed, several courts have applied the provision to dismiss claims against Google.  *See, e.g.*, *Dowbenko v. Google, Inc.*, 582 F. App'x 801, 804–05 (11th Cir. 2014) (per curiam) (affirming dismissal of defamation claim; rejecting the argument that the CDA did not apply because "Google manipulated its search results to prominently feature the article at issue"); *Jurin v. Google, Inc.*, 695 F. Supp. 2d 1117, 1122–23 (E.D. Cal. 2010) (affirming dismissal of several claims; rejecting argument that CDA did not apply because Google "suggest[ed] keywords to competing advertisers").

[13] Nor is this case like *NiGen*, in which we allowed a suit to proceed where a state attorney general had told the plaintiff that it had "determined" that a specific act—the labeling of products with the letters "HCG"—violated a particular law, and "intimat[ed] that formal enforcement was on the horizon."  804 F.3d at 392–95.

No. 15-60205

appropriate, however, 'unless the party seeking it can demonstrate that "First Amendment interests are either threatened or in fact being impaired at the time relief is sought."'" *Nat'l Treasury Emp. Union v. United States*, 927 F.2d 1253, 1254 (D.C. Cir. 1991) (Thomas, J.) (quotation marks and brackets omitted) (quoting *Wagner v. Taylor*, 836 F.2d 566, 577 n.76 (D.C. Cir. 1987) (quoting *Elrod*, 427 U.S. at 373)). Thus, invocation of the First Amendment cannot substitute for the presence of an imminent, non-speculative irreparable injury. And we cannot say at this early stage of a state investigation that any suit that could follow would necessarily violate the Constitution. *Cf. Wilson v. Thompson*, 593 F.2d 1375, 1385–88 & nn. 21–22 (5th Cir. 1979) (laying out a fact-intensive test for whether a prosecution constitutes unconstitutional retaliation for an exercise of First Amendment rights).

In sum, as underscored by Hood's apparent need to gather considerable information before he can determine whether an enforcement action is warranted, the prospect of one is not sufficiently imminent or defined to justify equitable relief. *See O'Shea v. Littleton*, 414 U.S. 488, 499 (1974) (explaining that equitable interference with a state's criminal processes is inappropriate absent "a showing of irreparable injury which is 'both great and immediate'"); *Boyle v. Landry*, 401 U.S. 77, 81 (1971) ("[T]he normal course of state criminal prosecutions cannot be disrupted or blocked on the basis of charges which in the last analysis amount to nothing more than speculation about the future.").

## IV.

We conclude that the district court erred in granting injunctive relief because neither the issuance of the non-self-executing administrative subpoena nor the possibility of some future enforcement action created an imminent threat of irreparable injury ripe for adjudication. We express no opinion on the reasonableness of the subpoena or on whether the conduct discussed in the parties' briefs could be held actionable consistent with federal

No. 15-60205

law.  The district court's preliminary injunction is VACATED, and this case is REMANDED with instructions to dismiss.