No. 16-10605

# In the
# United States Court of Appeals
# For the Fifth Circuit

———————————————

**DAVID TYLER MOSS AND BRANDON KEATING,**

*Plaintiffs-Appellees,*

v.

**MARKO PRINCIP, doing business as Videogames YouTube Channel, Individually, doing business as Achievement Guide, doing business as Game Guide L.L.C.; BRYAN MARTIN**

*Defendants-Appellants*

———————————————

*On Appeal from the United States District Court for the Northern District of Texas, Dallas, The Honorable Paul D. Stickney, U.S. Magistrate Judge*
**USDC No. 3:14-CV-3088**

———————————————

### REPLY BRIEF FOR DEFENDANTS-APPELLANTS
———————————————

**SBAITI & COMPANY PLLC**
Mazin A. Sbaiti, Esq.
Texas Bar No. 24058096
1201 Elm Street
Suite 4010
Dallas, Texas 75270
Tel: (214) 432-2899
Fax: (214) 853-4367
Email: MAS@SbaitiLaw.com
CC: ESD@sbaitilaw.com
    RMR@sbaitilaw.com

**ATTORNEY FOR
DEFENDANTS-APPELLANTS**

TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................1
II. ARGUMENT AND AUTHORITIES.......................................................1
    A. THERE IS [STILL] NO FEDERAL JURISDICTION:
        THE PARTNERSHIP REMAINS THE REAL PARTY IN
          INTEREST AND IS, IN ANY CASE, NOT
          DISPENSABLE ......................................................................1
   1.The Partnership is the Real Party in Interest ...................................3
   2.Appellees Also Secured Litigation Advantages due to the
       Partnership's Presence—They Cannot Conveniently Walk
       That Back Now to Salvage Jurisdiction ......................................6
   3.Appellees' Vision for Jurisdiction Impermissibly Invites
     Manipulation and Gamesmanship ...................................................9
    B. THE VERDICT WAS INCONSISTENT; A NEW
       TRIAL IS NECESSARY; AND APPELLANTS HAVE
       NOT WAIVED THIS ISSUE...................................................12
   1.Assuming Arguendo That Verdict Inconsistencies are
     Subject to Waiver, Appellants Sufficiently Preserved This
     Issue by Raising it in District Court, Prior to Entry of
     Judgment ................................................................................13
   2.A Special Verdict was Reached in the Court Below, and
     There is No Duty to Preserve Inconsistency Under Rule
     49(a)........................................................................................16
   3. Even Assuming That a General Verdict had Been
      Rendered Below, Appellees' Claim That Rule
      49(b) Verdicts are Conclusively Subject to Waiver
      Analysis in This Circuit is Wrong: Numerous
      Fifth Circuit Authorities Hold Otherwise......................................21
   4.The Better-Reasoned View is that Inconsistencies in General
      Verdicts are Not Subject to Waiver: This Court Should
      Adopt the Mercer Line of Cases as Precedent and Limit
      Stancill's Contrary Intimations to the Unique Facts of That
      Case........................................................................................23
    C. APPELLEES FAIL TO ADDRESS ANY OF THE OTHER
       ARGUMENTS RAISED ON APPEAL.....................................26
III. CONCLUSION......................................................................................27

# TABLE OF AUTHORITIES

## CASES

*Alverez v. J. Ray McDermott & Co.,* 674 F.2d 1037 (5th Cir. 1982) ......................16

*Atlas Glob. Grp., L.P. v. Grupo Dataflux*, 312 F.3d 168 (5th Cir. 2002) ...............11

*Bankston v. Burch*, 27 F.3d 164 (5th Cir. 1994)...................................................4, 5

*Bankston v. Burch*, 27 F.3d 164 (5th Cir. 1994)........................................................4

*Brunner v. Maritime Overseas Corp.,*779 F.2d 296 (5th Cir. 1986) ......................23

*Carden v. Arkoma Assocs.*, 494 U.S. 185 (1990) ..................................................1, 2

*Caterpillar, Inc. v. Lewis,* 519 U.S. 61 (1996) ......................................................2, 9

*Chappell v. Emco Machine Works Co*., 601 F.2d 1295 (5th Cir 1979)....................1

*City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63 (1941)................................8

*Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278 (5th Cir. 1999).....16

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925 (2d Cir. 1998)1

*Farnsworth v. Basin Marine, Inc.*, No. 97-3091, 1999 U.S. Dist. LEXIS 1016 (E.D. La. Jan. 28, 1999) ................................................................................12

*Gallick v. Baltimore & O.R.R.*, 372 U.S. 108  (1963) ............................................20

*Gasperini v. Ctr. for Humanities*, 518 U.S. 415 (1996) ............................ 12, 13, 14

*Giddy Up, LLC v. Prism Graphics, Inc.*, No. 3:06-cv-0948, 2008 U.S. Dist. LEXIS 19088 (N.D. Tex. Mar. 12, 2008)................................................... 21, 23

*Griffen v. Matherne,* 471 F.2d 911 (5th Cir. 1973) ................................................20

*Gross v. Gann*, No. 1:13-cv-00166, 2014 U.S. Dist. LEXIS 135455 (N.D. Miss. Aug. 20, 2014)..........................................................................................3

*Guidry v. Kem Mfg. Co.*, 598 F.2d 402 (5th Cir. 1979)............................. 17, 18, 20

*Hall v. Douglas,* 380 S.W.3d 860 (Tex.App.—Dallas 2012)....................................5

*Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986).............................19

*In re Mirant Corp.,* 378 F.3d 511 (5th Cir. 2004) .................................................24

*Kanzelberger v. Kanzelberger*, 782 F.2d 774 (7th Cir. 1986)..................................7

*Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375 (1994)...........................9

*Kontrick v. Ryan*, 540 U.S. 443 (2004).....................................................................9

*Lee v. Ty Equity Grp., Inc*., 3:01-cv-0253, 2001 U.S. Dist. LEXIS 18293 (N.D. Tex. Nov. 8, 2001)............................................................................................5

*Lexcon v. Milbeg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998)................10

*Lopez v. Davis*, 531 U.S. 230 (2001) ......................................................................24

*Lotus Dev. Corp. v. Borland Int'l, Inc.,* 788 F. Supp. 78 (D.Mass 1992)...............18

*Louisiana v. Am. Nat'l Prop. Co.,* 746 F.3d 633(5th Cir. 2014) ..............................8

*Mercer v. Long Mfg. N.C., Inc.*, 671 F.2d 946 (5th Cir. 1982) ..............................22

*Moore v. Simon Enters.*, 919 F.Supp. 1007 (N.D. Tex. 1995) ..................................3

*Nauslar v. Coors Brewing Co*., 170 S.W.3d 242 (Tex. App. - Dallas 2005) ............5

*Nero v. Industrial Molding Corp.*, 167 F.3d 921 (5th Cir. 1999)...........................26

*Newman-Green v. Alfonzo-Larrain*, 490 U.S. 826 (1989) .......................................7

*Nolan v. Olean Gen. Hosp.,* No. 13-cv-00333(A)(M), 2013 U.S. Dist. LEXIS 96420 (W.D.N.Y. June 19, 2013).........................................................................11

*Odom v. Posey*, No. 09-cv-3532, 2009 U.S. Dist. LEXIS 70129  (E.D. La. July 27, 2009) ...............................................................................................................6

*People v. Ribowsky*, 568 N.E.2d 1197 (N.Y. 1991) ...............................................20

*Reightler v. Monmouth Bioproducts, LLC*, No. 1:14-cv-3518, 2014 U.S. Dist. LEXIS 176036 (D.N.J. Dec. 22, 2014) ....................................................................5

*Richard's Paint & Body Shop, LLC v. BASF Corp.,* No. A-11-cv-560, 2012 U.S. Dist. LEXIS 158069 (W.D. Tex. Nov. 5, 2012) ...................................................19

*Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 U.S. Dist. LEXIS 24537 (N.D. Tex. Nov. 23, 2004)....................................................................4

*Roh v. DeVack*, No. 3:07-cv-1901 (CSH), 2010 U.S. Dist. LEXIS 127814 (D. Conn. Dec. 3, 2010)..................................................................................................5

*SCS Communs., Inc. v. Herrick Co.*, 360 F.3d 329 (2d Cir. 2004)......................6, 7

*Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529, 534-35 (5th Cir. 1974)........21

*TLI, Inc. v. U.S.*, 100 F.3d 424 (5th Cir. 1996)................................................ 23, 25

*Turyna v. Martam Constr. Co.*, 83 F.3d 178 (7th Cir. 1996) ..................................19

*Urquhart v. Wertheimer*, 646 F.Supp.2d 210 (D. Mass. 2009) ................................3

*Walker v. S. Cent. Bell Tel. Co.* 904 F.2d 275 (5th Cir. 1990) ...............................16

*Weingart v. Allen & O'Hara, Inc.*, 654 F.2d 1096 (5th Cir. 1981).................. 12, 20

*Younger v. Harris* , 401 U.S. 37 (1971).....................................................................8

## STATUTES

NY CPLR § 5501(c) ..............................................................................................13

Tex. Bus. Orgs. Code § 152.056..............................................................................4

## OTHER AUTHORITIES

Donald Olander, *Resolving Inconsistencies in Federal Special Verdicts*, 53 Fordham L. Rev. 1089 (1985) ..................................................................... 20, 25

MOORE'S FEDERAL PRACTICE.......................................................................... 18, 20

Wright & Miller, Federal Practice and Procedure ........................................... 16, 17

# I.

## INTRODUCTION

Sadly, the gravamen of the opposition to this appeal is a limp appeal to fealty for jury verdicts, and the recognition that the Plaintiffs would really rather not have to do it all again. But such an appeal is anemic in the face of the gross injustice befalling the Appellants/Defendants in this case, who have already lost everything they worked for because of this verdict.

# II.

## ARGUMENT AND AUTHORITIES

### A. THERE IS [STILL] NO FEDERAL JURISDICTION: THE PARTNERSHIP REMAINS THE REAL PARTY IN INTEREST AND IS, IN ANY CASE, NOT DISPENSABLE

"[J]urisdiction is *not* a game … [rather] it is one of the fundamental tenets of our Constitution that only *some* cases may be brought in federal court."[1] The proper establishment of subject matter jurisdiction is a prerequisite to all other relief; any action taken by a court without jurisdiction is a legal nullity.[2]

The basic principles leading to jurisdictional questions here are well-established. The diversity and removal statutes require *complete* diversity of

---

[1] *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 929 (2d Cir. 1998).

[2] *Chappell v. Emco Machine Works Co*., 601 F.2d 1295 (5th Cir 1979).

citizenship, meaning that no party may share citizenship with any opposing party.[3] In turn, the citizenship of unincorporated entities is determined by the citizenship of each of its members.[4] Because this case involved a partnership form of business and an LLC, those entities imputed their full rosters of citizenship to both sides of the case, destroying complete diversity. Federal subject matter jurisdiction *vel non* thus turns on whether the Partnership and LLC could be dropped under Federal Rule 21, which turns on Appellees' characterization of same as *dispensable* and unimportant.

Readily acknowledging that complete diversity was lacking from the moment of removal all the way through trial, Appellees portray the issue as whether this "*initial* misjudgment still burden[s] and run[s] with the case, or [wa]s [instead] overcome by the" district court's *purported* "dismissal of the non-diverse defendant."[5] In so doing, they frame Appellants' jurisdictional argument as tethered to the fact that a non-diverse party was once present in federal court *at all*, an issue of timing and formalism rather than substance. The *only* basis Appellees offer for salvaging jurisdiction via treatment of the Partnership as expendable under Rule 21 is the claim that at the conclusion of litigation they opted not to "seek any relief

---

[3] *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990).

[4] *Id.*

[5] Response at 24 (quoting *Caterpillar, Inc. v. Lewis,* 519 U.S. 61, 70 (1996)).

against the partnership at trial," and did "not seek entry of judgment against the Partnership."[6]

With that, we turn to the issues.

## 1. <u>The Partnership is [Still] the Real Party in Interest</u>

Attempting to reframe the issue, the Response merely elides numerous binding and persuasive authorities holding that the Partnership is indispensable for the simple reason that it is the real party in interest in this case. Rule 17(a) of the Federal Rules states that "[a]n action must be prosecuted in the name of the real party in interest." There are rare exceptions where a party may sue in its own name without joining the true benefactor of the action—but "partners" and "partnerships" in disputes don't count.

The only argument Appellees raise is that the presence of all the partners can cure the absence of the partnership. Not so. "Regardless of the presence of all the [human] partners before the [c]ourt, the law in the Fifth Circuit is clear: where the partnership is … the real party in interest," it *must* be present for the Court to render the kind of relief Plaintiffs have asked for here.[7]

---

[6] Response at 20.

[7] *Moore v. Simon Enters.*, 919 F.Supp. 1007 (N.D. Tex. 1995) (collecting cases). *See also Gross v. Gann*, No. 1:13-cv-00166, 2014 U.S. Dist. LEXIS 135455, at *10 (N.D. Miss. Aug. 20, 2014) (dismissing action for lack of diversity jurisdiction because action to remove partners from partnership is a derivative claim and partnership is necessary party thereto); *Urquhart v. Wertheimer*, 646 F.Supp.2d 210, 212 (D. Mass. 2009) (dismissing action for lack of joinder of

It is troubling, to say the least, that Appellants' extensive discussion of this Court's decision in *Bankston v. Burch*,[8] and its sibling decisions goes wholly unaddressed by the Appellees. Without belaboring the point, we remind the Court that Texas law governs whether a party on a claim is the real party in interest.[9] "A federal court sitting in diversity must look to state law to determine which party holds the substantive right."[10] Texas law treats "[a] partnership as an entity *distinct* from its partners."[11] Where, as here, an individual sues in his own name to vindicate rights that he possesses only derivatively, Rule 17 generally requires that the real party in interest—the business entity—be substituted in his place.[12]

In *Bankston v. Burch*, this Court held unequivocally that the partnership's presence is essential for all claims where the gravamen of the claim is some injury to the person's partnership rights or interest, or some claim to vindicate them.[13] Just as here, the *Bankston* plaintiff sought damages for loss of his partnership interest; sought removal and ouster of Burch as a general partner; sought an injunction against

---

necessary party in action to remove general partner because partnership is an indispensable party thereto).

[8] *Bankston v. Burch*, 27 F.3d 164 (5th Cir. 1994). *See* Appellants Opening Br. at pp. 23-28.

[9] *Id.* at 180.

[10] *Id.*

[11] Tex. Bus. Orgs. Code § 152.056 ("PARTNERSHIP AS AN ENTITY") (emphasis added).

[12] *Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 U.S. Dist. LEXIS 24537, at *8 (N.D. Tex. Nov. 23, 2004).

[13] 27 F.3d at 168.

dissipation of partnership assets; and sought a declaration that the partnership had been mismanaged and defrauded by the managing partner and the Fifth Circuit observed "the form of the lawsuit does not obscure its substance: it is the partnership's rights, not the limited partners' [personally] that the lawsuit seeks to vindicate."[14]

Numerous holdings are in accord.[15] Indeed the issue is so well-settled that other federal courts have cited the *Bankston* decision for the proposition that: "[w]hen a member of an unincorporated entity brings an action [involving] that unincorporated entity, 'the doors of the federal courts' are 'effectively close[d]' to that action."[16]

Moreover, as a practical matter where injunctive relief would oust members of the partnership and dictate its composition and control, it is "not clear [how] a

---

[14] *Id*. at 168.

[15] *E.g., Lee v. Ty Equity Grp., Inc*., 3:01-cv-0253, 2001 U.S. Dist. LEXIS 18293 (N.D. Tex. Nov. 8, 2001) (partnership is indispensable party to claim for declaratory relief naming the partners of the partnership because "claims for declaratory judgment...are derivative claims"); *Hall v. Douglas,* 380 S.W.3d 860, 873 (Tex.App.—Dallas 2012) ("Even when cast as 'personal damages,' claims for 'a diminution in value of partnership interests or a share of partnership income' may only be asserted only by the partnership itself."); *Nauslar v. Coors Brewing Co*., 170 S.W.3d 242, 250 (Tex. App. - Dallas 2005) (holding that a partner has no individual cause of action for losses such as harm to the value of the partner's interest—those claims belong to the partnership and must be brought as derivative action).

[16] *Reightler v. Monmouth Bioproducts, LLC*, No. 1:14-cv-3518, 2014 U.S. Dist. LEXIS 176036 at *2 (D.N.J. Dec. 22, 2014) (quoting *Bankston*, 27 F.3d at168-69).

court could order the dissolution of or otherwise exercise authority over an independent legal entity which had not been party to the underlying action."[17]

## 2. **Appellees Also Secured Litigation Advantages due to the Partnership's Presence—They Cannot Conveniently Walk That Back Now to Salvage Jurisdiction**

Appellees beguiling claim that they treated the Partnership as "nominal" throughout the case is simply wrong: they unquestionably sought relief as to the Partnership *before*, *during* and *after* trial. Early in the case—and long before any determination of rightful ownership—the Plaintiffs-Appellees actually moved to put the partnership into receivership.[18] The motion was ultimately denied, but only because the case was on the eve of trial when the lower court finally ruled on the motion and thus the judge determined a preliminary receivership was unnecessary.[19] Thus, the specter that control over the Partnership might be seized without trial hung over the case for approximately *a year*, which threat undeniably colored the litigation. When "the presence of a non-diverse party" affords a tactical advantage

---

[17] *Roh v. DeVack*, No. 3:07-cv-1901 (CSH), 2010 U.S. Dist. LEXIS 127814, at *14 (D. Conn. Dec. 3, 2010). *See also Odom v. Posey*, No. 09-cv-3532, 2009 U.S. Dist. LEXIS 70129, at *14-16 (E.D. La. July 27, 2009) (entity indispensable where "the gravamen of the plaintiffs' claims … involve[] the very existence of Oakbrook Ventures [the company], and the plaintiffs seek to declare" the partnership members and oust certain partners)

[18] *See* ROA.393 (Doc #21: MOTION Appointment of Receiver filed by Brandon Keating, David Tyler Moss).

[19] *See* ROA.719 (Doc. #52: District Court's Order Denying Receivership).

or "bolsters the credibility of one side" throughout the life of the case, a Rule 21 dismissal is simply inappropriate.[20]

Independent of the real-party-in-interest analysis, the nature of the relief Plaintiff-Appellees sought at trial and in judgment *specifically* targeted the Partnership, and blatantly contradicts any notion that its presence in the case was "merely nominal." They cannot have it both ways.

As the Second Circuit has observed, "[u]nder Newman-Green, If the presence of the nondiverse party may afford another party a tactical advantage, then a jurisdictional defect that might have produced the advantage *cannot properly be cured*" after the fact utilizing Rule 21.[21] Judge Posner lucidly explained how naming the business entity as a litigant in cases very similar to this one[22] can easily "color[] the outcome of [the] suit. [Its] presence side-by-side with [the human members] len[ds] additional credence to [a] claim the defendants ha[ve] usurped control of the [business]—made the dispute seem less a squabble among the shareholders and more an effort by the defendants to despoil the company."[23]

He concludes that: "Having enjoyed whatever trial advantage [they] got from joining the [entities] … the Appellees cannot now turn around and drop the

---

[20] *SCS Communs., Inc. v. Herrick Co.*, 360 F.3d 329, 336 (2d Cir. 2004).

[21] *Id.* at 343 (quoting *Newman-Green v. Alfonzo-Larrain*, 490 U.S. 826, 838 (1989)).

[22] The entity was simply a corporation rather than partnership.

[23] *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 778-79 (7th Cir. 1986) (Posner, J.).

cop[arties] retroactively in order to cure the jurisdictional defect and confirm victory on the merits."[24]

Finally, the world envisioned by Appellees is contradictory. According to them jurisdictional facts can change haphazardly based on trial tactics and even after a verdict is rendered, since a party is free to *choose not* to "seek entry of judgment against" a spoiler even if the jury's verdict might support it.[25] This is simply incorrect. Diversity jurisdiction cannot be had by the *actions* of a *party at trial*, but "*only* by the *action[s]* of Congress in conformity with the judiciary sections of the Constitution."[26] As the Supreme Court has repeatedly made clear, "this is not a sacrifice of justice to technicality,"[27] but a necessary tenant of comity and respect for state courts underlying our Our Federalism.[28]

Accordingly, any assessment of the Partnerships role in the case for purposes of Rule 21 and diversity jurisdiction must be *pro*spective rather than *retro*spective. While their three-sentence analysis of the Partnership's *ultimate* importance was itself insufficient, Appellees have failed to even go through the motions of assessing this "[j]urisdictional fact[] as determined *at the time of removal*," rather than "by

---

[24] *Id*. at 779.

[25] Response at 20.

[26] *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 75 (1941).

[27] *Id*.

[28] *Younger v. Harris* , 401 U.S. 37 (1971).

subsequent events."[29] Stated even more directly by the Supreme Court: "a court's subject-matter jurisdiction *cannot* be expanded to account for the parties' litigation conduct."[30]

Federal subject matter jurisdiction is limited, and once it is challenged a federal court must "presume[] that a cause lies outside of its limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."[31] Appellees, as proponents of jurisdiction, have not even attempted to answer the right questions. Their silence is deafening, and also determinative.

### 3. Appellees' Vision for Jurisdiction Impermissibly Invites Manipulation and Gamesmanship

Appellees' heavy reliance on *Caterpillar* obscures that decision's clear *disapproval* of flexible exceptions that could open jurisdiction up to manipulation.[32] More importantly, that decision does not stand for the proposition that if a case has progressed far enough along, the requirements for jurisdiction can be rewritten (or bent) on the whim of a litigant. In *Caterpillar*, the entity that spoiled jurisdiction "at the time of *removal*" exited when it reached a settlement *after* litigating the case, but *before* trial.[33] This retroactive cure required agreement of parties on *both* plaintiff

---

[29] *Louisiana v. Am. Nat'l Prop. Co.,* 746 F.3d 633, 635 (5th Cir. 2014).

[30] *Kontrick v. Ryan*, 540 U.S. 443, 446 (2004) (emphasis added).

[31] *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994) (citations omitted).

[32] *See Caterpillar,* 519 U.S. at 70.

[33] *Id*. at 68.

and defendant sides, and was tied to substantive issues developed through discovery. There was thus no indication that its exit was, as here, an outcome-oriented attempt to preserve jurisdiction, rather the fact "the jurisdictional requirements [were] met at the time judgment [was] entered" was organic.[34]

In determining that the *remaining* parties should not suffer, the Court was still cautious that future litigants might attempt to "game" any exceptions allowed. The Court in *Caterpillar* thus emphasized a key safeguard: a future schemer would have to "gamble that [the] jurisdictional defect—the absence of complete diversity—will *first* escape detection, and *then* disappear prior to judgment" as a result of other developments.[35] As it later clarified, it was "on ***this*** understanding that [the Supreme Court] held considerations of 'finality, efficiency and economy' trumped the error."[36] Thus, Appellees' characterization of this as a case like *Caterpillar* where the defect is "overcome by the _eventual_ dismissal of the nondiverse defendant" is absurd.[37] The litigants did not *eventually* realize a jurisdictional spoiler had come and gone, Appellees specifically sought dismissal in an outcome-oriented scheme to create jurisdiction retroactively.

---

[34] *Id*. at 64.

[35] *Id* at 78.

[36] *Lexcon v. Milbeg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 43 (1998).

[37] Response at 24 (quoting *Caterpillar* at 70).

Conversely, the facts in *Grupo Dataflux* are much closer to the case at bar. There, the party asserting federal jurisdiction "could—and *did*—single-handedly remove the parties whose presence spoiled diversity" *without* any judicial oversight or safeguards.[38] So too here. The Plaintiffs-Appellees were in complete control in deciding whether to "s[eek] any relief against the partnership … [or] entry of judgment against the Partnership at trial,"[39] just as Atlas had complete control over whether its two Mexican partners remained with the company or not.[40] In that posture the Supreme Court unsurprisingly rejected the invitation to create a jurisdiction-saving exception under the banner of finality and economy.

Appellees cheer a *discretionary* (and self-serving) approach to the questions of federal subject matter jurisdiction, and view Rule 21 as a crowbar used to fashion the jurisdictional outcome they prefer.[41] They are wrong. As to both judges and litigants, the power to bend jurisdiction to a preferred outcome under Rule 21 "is *not* discretionary, it is *imaginary*."[42]

---

[38] *Atlas Glob. Grp., L.P. v. Grupo Dataflux*, 312 F.3d 168, 176 (5th Cir. 2002) (Garza, J., dissenting).

[39] Response at 20.

[40] *Atlas* at 594.

[41] *See* Response at 22.

[42] *Nolan v. Olean Gen. Hosp.,* No. 13-cv-00333(A)(M), 2013 U.S. Dist. LEXIS 96420 at *21 (W.D.N.Y. June 19, 2013).

## B. THE VERDICT WAS INCONSISTENT; A NEW TRIAL IS NECESSARY; AND APPELLANTS HAVE NOT WAIVED THIS ISSUE

Unable to reconcile the enormous difference in the jury's contract damages award and its tort damages award, the Response attempts but fails to bridge the gap with an ill-conceived waiver argument. *Weingart v. Allen & O'Hara* controls on the initial matter of inconsistency itself.[43] In nearly identical circumstances, this Court held:

> [the jury's findings] on damages were hopelessly inconsistent [and] that a new trial [wa]s required. The plaintiffs claimed the *same damages* on the *same facts* under their *fraud theory* as under their *breach of contract theory*, and *the jury charges and the interrogatories on compensatory damages on each of those theories were identical* and yet the jury awarded compensatory damages of only $28,000 for breach of contract and over $200,000 for fraud.[44]

So too here—with the same facts, same plaintiffs, same defendants, and the same instructions on the formula to measure damages, the jury reached the "same" disparate result as in *Weingart*: an inexplicable six-figure difference between tort and contract damages.

Appellees' only attempt to address this patent inconsistency head-on is the bizarre contention that *Weingart* was somehow overruled by the Supreme Court's

---

[43] *Weingart v. Allen & O'Hara, Inc.*, 654 F.2d 1096 (5th Cir. 1981).

[44] *Id.* at 1106 (emphasis added). *See also Farnsworth v. Basin Marine, Inc.*, No. 97-3091, 1999 U.S. Dist. LEXIS 1016, at *5 (E.D. La. Jan. 28, 1999) ("A finding that the jury's verdict was critically inconsistent requires a new trial since the court cannot speculate which inconsistent finding the jury intended to be controlling.").

decision in *Gasperini v. Center for Humanities*.[45] But *Gasperini* dealt with "the standard a federal court uses to measure alleged *excessiveness* of a jury's verdict," rather than *inconsistencies* within a jury's verdict.[46]

Specifically, the majority held that when a federal court applying New York law in a diversity case was faced with a putatively excessive verdict, the evaluative standard for "excessiveness" was supplied by a New York statute that authorized a new trial whenever "an award … deviates materially from what would be reasonable compensation," rather than the more-deferential "shock-the-conscience" test elsewise applicable throughout the Second Circuit and New York's state courts prior to passage of the tort reform law at issue.[47] Because Appellees do not point to any *Texas* statute demanding inconsistencies be evaluated any differently than this Court said in *Weingart*, their appeal to *Gasperini* is simply inapposite.

The remainder of the Response's arguments claim the issue of inconsistency was waived, but they are similarly unpersuasive.

### 1. Although Unnecessary, Appellants Sufficiently Preserved This Issue by Raising it in District Court, Prior to Entry of Judgment

Appellees incorrectly claim that inconsistency was raised for the first time on appeal. In reality, Appellants' counsel raised this very issue at the very first

---

[45] *See* Response at 28 (citing *Gasperini v. Ctr. for Humanities*, 518 U.S. 415 (1996)).

[46] *Gasperini*, 518 US at 422 (emphasis added).

[47] *See id*. at 422—423 and at n.4 (quoting NY CPLR § 5501(c)).

practicable moment before the district court, which weighs decidedly against a finding of waiver.

The attorney who had handled Princip and Martin's case through trial withdrew abruptly, just five days after losing a $20 million verdict. Undersigned counsel was hired the day trial counsel withdrew, and had only five days to prepare for the hearing before the district court on the plaintiff's motion for judgment.[48] Appellants were also prejudiced going into the judgment hearing because the final versions of the trial transcripts had not yet been certified by the court reporter, and new counsel was, thus, limited in his preparations to reading docketed entries available on PACER and talking to his new clients about the case.[49]

Still yet, at this first hearing upon being retained, Counsel raised the very same verdict inconsistencies discussed at length in Appellants' Opening Brief to the trial court, *before* any judgment had been rendered.[50] Counsel also asked the trial judge to briefly stay an entry of judgment so that transcripts of the trial proceedings could be finalized and reviewed, so that Appellants' post-trial advocacy would be informed

---

[48] *Id.*

[49] *See id.*

[50] *See* ROA.2412. (Transcript of Hearing on Plaintiff's Motion for Entry of Judgment):

Mr. Sbaiti: Understood, your Honor. But the jury found past damages on a tort remedy of $600,000, and then they found past damages on a contract remedy of $725,000. Those usually in a case like this are the same number because they are valuing the same thing. And so the fact that the jury verdict *is inconsistent* already raises a red flag. (emphasis added).

as to "knowing what [the] evidence said, knowing what motions were actually made, what objections were preserved," and so on.[51] These requests were denied, placing Appellants in a posture "very much behind the eight ball."[52]

Two key implications emerge:

***First,*** contrary to Appellees' argument, but consistent with binding and persuasive authorities, *neither* branch of Rule 49 supports waiver of verdict inconsistencies at all, for the reasons that follow. Thus, Appellants by raising the issue to the trial court actually went *beyond* what the law requires in order to test an inconsistent verdict on appeal.

***Second***, while Appellees say that inconsistency must be raised with the jury still empaneled, all of their waiver arguments rest on the claim that inconsistency was simply ignored below and has only *just now* been raised for the first time on appeal, which characterization is incorrect per the supplemental record.[53] Because *Appellees failed* to object to the inconsistency point when it was raised to the trial court—assuming they would have been correct to do so—*they* have waived the argument here. "New grounds may be considered [on appeal] where, as here," they were belatedly raised to the court below but "the non-movant did not object" to them

---

[51] *Id.*

[52] *Id.*

[53] Response at 32.

on that basis.[54] Irony aside, Appellants submit this Court should err on the side of evaluating the substantive merits of appellate issues, rather than disposing of them on technicalities.[55]

### 2. **A Special Verdict was Reached in the Court Below, and There is No Duty to Preserve Inconsistency Under Rule 49(a)**

The Federal Rules break verdicts into two categories: special verdicts which are addressed in Rule 49(a) and general verdicts under Rule 49(b). The Fifth Circuit has been steadfast in holding that inconsistencies in *special* verdicts are *not* waivable under any circumstance, *to wit* "waiver w[ill] *not* apply [if the jury give[s] a special verdict."[56] Like subject-matter jurisdiction, the discrepancy may be raised even after the jury is discharged.[57] Here, Circuit precedent and common sense make it abundantly clear that the verdict rendered here was special, not general. Thus, Appellees' waiver argument arrives a dead letter.

A general verdict is just as the name implies one where: "the jury [is] simply asked to find *for* the plaintiff or *for* the defendant."[58] Historically most verdicts in

---

[54] *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 188 F.3d 278, 284 (5th Cir. 1999).

[55] *Cf. Walker v. S. Cent. Bell Tel. Co.* 904 F.2d 275, 277 (5th Cir. 1990) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose is … to facilitate a proper decision on the merits.").

[56] *Alverez v. J. Ray McDermott & Co.,* 674 F.2d 1037, 1040 (5th Cir. 1982).

[57] *Id.*

[58] 9B Wright & Miller, Federal Practice and Procedure § 2501 (hereinafter Wright & Miller).

the federal courts were general.[59] However, "[i]n 1937, Rule 49 was added to the Federal Rules to make two different avenues available to a trial court when charging the jury.[60] The provision for "special verdicts" gave the district judge an alternative to the blunt instrument of a general verdict, instead submitting the issues to the jury in the form of individual questions breaking the issues into more digestible parts.[61] Thirty-eight years ago, this Court observed that: "[t]he special verdict permitted by Rule 49(a) is a splendid device for clarification of jury verdicts and for focusing the jurors' attention on the disputed facts."[62]

Special verdict questions were (and are) often phrased matter-of-factly, although this does not prevent the trial court from asking, for instance, about the applicable standard of care.[63] While general verdicts are marked by their brusque win/lose oeuvre, special verdicts under Rule 49(a) distinctively guide the jury through a logical sequence of questions, instead of asking essentially: "Who won and do they get any money?"[64] This Court has observed "[t]he rule mandates no

---

[59] *See Guidry v. Kem Mfg. Co.*, 598 F.2d 402, 405 (5th Cir. 1979) (discussing the history of Rule 49).

[60] *Id.*

[61] 9B Wright & Miller § 2501.

[62] *Guidry*, 598 F.2d at 405.

[63] *Id.*

[64] *See id.*

particular form for the[se] questions, stating only that they shall be "'susceptible of categorical or other brief answers.'"[65]

The relevant factors indicate that a *special* verdict was rendered below:

**_First_**, the core question of a special verdict is whether the Jury or the Judge is applying the law. Here, it is undoubtedly the court applying the law. The Verdict Sheet goes through 30 questions asking for factual conclusions. The Jury is taken along a journey of "if/then" statements. If the jury answers one factual question, then it is to move on to other fact questions queued by the prior response(s). The ushering of the jury through these steps is the application of the law by the Court. Moreover, the Jury did make several findings of fact in Questions 21 and 22 that the Court took and used as the basis for its ouster and injunctive relief.

**_Second_**, as this Court explained in *Guidry*, the telltale indicator is whether "the trial judge … *submi[ts] various fact issues* to the jury *in the form of questions* with the answers forming a special verdict on each [question]"[66]—a special verdict per Rule 49(a)—or instead provides the jury the "*flexibility … to* [apply] *their* ideas of how the case ought to be decided without strict compliance with any [framework] laid down by the court"—a *general* verdict per Rule 49(b).[67] Tracking *Guidry* in

---

[65] *Guidry*, 598 F.2d at 406 (citing MOORE'S FEDERAL PRACTICE, § 49.03(2) at 2210). *Accord Lotus Dev. Corp. v. Borland Int'l, Inc.,* 788 F. Supp. 78 (D.Mass 1992).

[66] *Guidry*, 598 F.2d at 405.

[67] *Id*. (emphasis added).

both style and substance, the trial court's final Charge To The Jury states: "[t]his case is *submitted to you by asking questions about the facts*, which you must decide from the evidence you have heard in this trial."[68] This language is plain, direct, and completely *unaddressed* in Appellees' waiver analysis—which does not cite the actual court instructions even *once*.

*Third,* the trial court's clear language tracking Rule 49(a) is reinforced by the *thirty* individual questions that were grouped in a manner coalescing around different parts of the Plaintiffs' case. This too indicates a special rather than general verdict. Of course, Appellants do not suggest that Rule 49(a) verdicts are distinguished from Rule 49(b) verdicts by mechanically counting off the questions in the jury charge (indeed, this Court has on several occasions held that a trial judge employed a special verdict when only a few questions were asked).[69] But as Appellees concede in their brief, the prototypical "[g]eneral verdict[] *simply* ask[s] the jury to answer the question 'who won' and if they winning party is entitled to a monetary award … 'how much.'"[70] Even allowing some fluctuation, that sentiment simply *cannot* be reconciled with thirty intricate questions posed to the jury in this

---

[68] ROA.818 (emphasis added).

[69] *See Richard's Paint & Body Shop, LLC v. BASF Corp.,* No. A-11-cv-560, 2012 U.S. Dist. LEXIS 158069 at *20 (W.D. Tex. Nov. 5, 2012) (citing *Guidry* and *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986)).

[70] Response at 33 (quoting *Turyna v. Martam Constr. Co.*, 83 F.3d 178, 181 (7th Cir. 1996) (emphasis added)).

case over twenty-two pages.[71] Indeed, commentators have noted as a distinguishing feature that "[m]any special verdicts are [often] composed of *twenty or more* questions."[72]

***Fourth***, as *this* Court has noted when discussing the roots of federal special verdicts, the drafters modeled Rule 49(a) on analogous rules of procedure from several states and at times referenced those state antecedents to aid in interpreting the federal analog.[73] In *People v. Ribowsky*, New York's highest court characterized "the special verdict, [as] a step-by-step progression of 'yes or no' questions" that helps logically organize the jury's analysis, but it could just as easily have been writing about the jury instructions in this case below.[74] The almost syllogistic progression combined with the intricacy and sheer number of questions asked weighs heavily in favor of a special verdict rather than a general one.

Because special verdicts are not susceptible to waiver analysis, the patent inconsistency in the jury's verdict mandates a new trial here.[75]

---

[71] *See* ROA.833-854.

[72] *See* Donald Olander, *Resolving Inconsistencies in Federal Special Verdicts*, 53 Fordham L. Rev. 1089, 1102 (1985) (collecting cases). *See also Gallick v. Baltimore & O.R.R.*, 372 U.S. 108, 110-111 (1963) (22 question special verdict under Fed. R. Civ. P. 49(a); *Griffen v. Matherne,* 471 F.2d 911, 913 (5th Cir. 1973) (28 questions considered special verdict).

[73] *See Guidry*, 598 F.2d at 406 (discussing state practices that constituted the model for Rule 49(a) and also citing Moore, § 49.03(2) at 2210)).

[74] *People v. Ribowsky*, 568 N.E.2d 1197, 1199 (N.Y. 1991).

[75] *See Weingart*, 654 F.2d at 1106.

**3.** **Appellees' Claim That Rule 49(b) Verdicts are Conclusively Subject to Waiver Analysis in This Circuit is Wrong: Numerous Fifth Circuit Authorities Hold Otherwise**

Contrary to Appellees' major premise, it is not at all clear that inconsistencies are subject to waiver even in the case of general verdicts. As demonstrated below, the better-reasoned and more textually faithful view is that inconsistencies are _not_ waived in general verdicts either—a position supported by numerous precedential decisions in this Court. In either case, the matter has _not_ been waived, and the irreconcilable conflict in the jury's verdict mandates reversal.

The Response cites almost exclusively from the case *Giddy Up, LLC v. Prism Graphics, Inc.*, but Appellees reliance is questionable for reasons that go well beyond the fact it is an *unpublished* district court holding.[76] *Giddy Up* cites this Court's decision in *Stancill v. McKenzie Tank Lines, Inc.*,[77] for the proposition that failure to raise a verdict inconsistency while the jury is still empaneled results in waiver as to general verdicts, subsequent Fifth Circuit decisions raise serious doubts about the holding in that case. This Court, in a more recent decisions addressing Rule 49 waiver, placed significant emphasis on the fact the trial court in *Stancill* had not

---

[76] No. 3:06-cv-0948, 2008 U.S. Dist. LEXIS 19088 (N.D. Tex. Mar. 12, 2008).

[77] 497 F.2d 529, 534-35 (5th Cir. 1974).

only asked counsel for any objections in front of the jury, but also called them to the bench to pointedly ask for any objections a second time.[78]

The *Mercer* Court delved further into the issue, stating that it "obviously always will be better practice … to have move for resubmission or to have raised specifically the issue of inconsistent interrogatories prior to the dismissal of the jury."[79] But that Panel rejected the suggestion that *Stancill* stands for the proposition that failing to abide best practices is outcome-determinative; rather: "[w]*hile there are many practices which we recommend parties follow, extolling the virtue of a procedure is **not** equivalent to mandating that it be followed with the dire consequence of waiver for failure to adopt the practice.*"[80] Thus, it is more than plausible to think that *Stancill's* finding of waiver is limited to the specific facts of that case, or at minimum tempered by them.[81]

This Court echoed the melody sung in *Mercer* four years later in *Brunner v. Maritime Overseas Corp.*, and this analysis is worth quoting at length:

> The threshold question is whether appellants have preserved their error. At the time the charge was given to the jury, appellants did not object to the charge on the ground that the interrogatories could result in inconsistent answers. Appellants also did not object when the verdict was returned. The consideration of this issue would have been better served if appellants had made their objection at

---

[78] *Mercer v. Long Mfg. N.C., Inc.*, 671 F.2d 946, 948 n.1 (5th Cir. 1982) (on rehearing).

[79] *Id.*

[80] *Id.* at 949 (emphasis added).

[81] *See id.*

least at the time that the jury returned its verdict so that the court could evaluate whether or not it was inconsistent and could have sent it back to the jury to reconsider. But, appellants did not waive their right to complain of inconsistent answers by failing to object. If answers to jury interrogatories are in irreconcilable conflict, then the judge has no authority to enter judgment based upon those answers.[82]

Thus, time and again, this Court's more recent holdings have refused invitations to write only in permanent ink whenever the advocacy of counsel in the flurry of post-trial motions is less than perfect. *Indeed*, after reciting *out-of-circuit* cases dealing with 49(b), *Giddy Up* itself acknowledged that "the Fifth Circuit *has not specifically adopted this rule*" of waiver where the inconsistency is not raised immediately.[83]

### 4. The Better-Reasoned View is that Inconsistencies in General Verdicts are *Not* Subject to Waiver: This Court Should Adopt the *Mercer* Line of Cases as Precedent and Limit *Stancill's* Contrary Dictum to the Unique Facts of That Case

It should go without saying that "[s]tatutory construction must always begin with the ordinary meaning of the text" at issue.[84] But the Response and its cited cases paper over the fact that there is absolutely ***no*** textual basis auguring in support of waiver under Rule 49(b)—if anything the plain text indicates the opposite.

---

[82] 779 F.2d 296 (5th Cir. 1986).

[83] *Giddy Up, LLC*, 2008 U.S. Dist. LEXIS 19088 at *6.

[84] *TLI, Inc. v. U.S.*, 100 F.3d 424, 427 (5th Cir. 1996).

For general verdicts, Rule 49(b)(4) is straightforward: if the jury's "answers are inconsistent with each other and one or more is also inconsistent with the general verdict, judgment **must not be entered**." "Instead," the Rule states, "the court **must** direct the jury to further consider its answers and verdict, or **must** order a new trial."[85] Courts have repeatedly held that text employing *mandatory*—rather than permissive—language means exactly what it sounds like it means.[86] If any doubt remained as to waiver under 49(b), it is foreclosed by Rule 51, which addresses jury instructions and provides "no party may assign as error the giving or the failure to give an instruction unless he objects thereto *before the jury retires*."[87] Where a principle is expressed in one part of a writing but not another, it is presumed that where the drafters omitted it they did so deliberately.[88]

Finally, disregarding for a moment the flaws in Appellees' claim that Rule 49(b) entails waiver *at all*, the contention that waiver attaches the *moment* the jury is dismissed is also unpersuasive for three reasons. **_First_** Rule (49) permissively gives the trial court *several* avenues for addressing an inconsistent general verdict,

---

[85] *Id.*

[86] *E.g.*, *Lopez v. Davis*, 531 U.S. 230, 241 (2001).

[87] Fed. R. Civ. P. 51.

[88] *See In re Mirant Corp.*, 378 F.3d 511, 522 (5th Cir. 2004) ("Obviously, Congress knew how to draft an exclusion for collective-bargaining agreements when it wanted to; its failure to do so in this instance indicates that Congress intended that § 365(a) apply to all collective-bargaining agreements covered by the NLRA.").

of which returning the jury is just one. Rule 49(b)(3)(A) allows the court to dispense with the inconsistency itself and enter "under Rule 58, an *appropriate* judgment according to the answers, notwithstanding the general verdict."[89] Likewise, Rule 49(b)(3)(C) allows the judge to simply order a new trial, upon realizing the inconsistency.

Neither of *these* requires that the jury still be empaneled, and Appellees cite no case explaining why the attenuation of just *one* option when inconsistency is raised following the jury's dismissal should be outcome determinative.

***Second***, if lengthy multi-step jury charges, which are actually indicative of Rule 49(a) special verdicts, can simply be characterized as "interrogatories" under Rule 49(b), advocates and litigants are put to an impossible task: deducing intricate findings that dovetail with each other instantaneously or lose them altogether.[90] Even if the jury's dismissal carries some weight, it is not clear why a trial court could not at least *try* to call back a jury that had reached an inconsistent finding, rather than declaring the inconsistency immune.

***Third***, to the extent the Appellees theory has any substance at all, it is cabined in the Seventh Amendment's jury trial provision which requires that a jury's

---

[89] *TLI, Inc.*, 100 F.3d at 427.

[90] *See* Olander, *Resolving Inconsistencies in Federal Special Verdicts*, 53 Ford. L. Rev. at 1105 n.101 (collecting cases that stand for the proposition "if time is not allowed for a careful examination of the special verdict after it has been returned by the jury  a waiver rule may be prejudicial to the litigants").

seemingly inconsistent verdict be harmonized if possible.[91] Apart from superficially appealing to the involvement of the jury at all, this argument reads the Seventh Amendment backwards. The unique reverence at common law was afforded to the jury system itself, rather than the handful of men and women filling out any particular verdict sheet. If a jury verdict cannot be harmonized despite the presumptive favor it enjoys, the jury has by definition rendered a verdict that is incoherent. Appropriate respect for the Seventh Amendment would come from retrying the case before a new group of citizens who may be more up to the task, rather than petrifying an inexplicable holding on technical grounds.

## C. APPELLEES FAIL TO ADDRESS ANY OF THE OTHER ARGUMENTS RAISED ON APPEAL

Appellants raised several bases for reversal including:

- *There is no Factual Basis for Finding Past or Future Damages that the Jury awarded.*

- *There is No Evidence in the Record to Support the Jury's Implicit Finding that The Channel Earned $2 Million Such That Plaintiffs Would Each Be Entitled to $600,000 in Past Tort Damages*

- *The Contract Damages Have No Evidentiary Support*

- *That the Economic Loss Doctrine foreclosed liability under the tort theories; and*

- *The Court's Failure to Order a New Trial as To Bryan Martin Was Manifest Error because*

---

[91] *See* Response at 31 (citing *Nero v. Industrial Molding Corp.*, 167 F.3d 921 (5th Cir. 1999).

- o *the contracts he was found liable for were executed a year before he entered the scene, as was admitted by the other side, and*

- o *Plaintiffs own allegations and testimony are that Mr. Princip essentially intended all along to repudiate and violate his duties under the partnership agreements—meaning, Bryan Martin could not have "interfered" with a contract already being breached by Mr. Princip.*

These all go ignored and unaddressed. Appellees' only plea to the Court is one of exhaustion – they are just tired of doing this case, they do not want to retry it – all other considerations (fairness, justice, procedure) be damned. But that is not how this works, and that is a fairness door that would only swing one way.

## III.

## CONCLUSION

Appellants respectfully ask this Court to reverse or remand the case based upon lack of federal subject matter jurisdiction, or in the alternative, award a new trial.

Respectfully submitted this 16th day of March, 2017.

> /s/ *Mazin A. Sbaiti*_____
> Mazin A. Sbaiti
> Texas Bar No. 24058096
> 1201 Elm Street
> Suite 4010
> Dallas, Texas 75270
> Tel: (214) 432-2899
> Fax: (214) 853-4367
> Email: MAS@SbaitiLaw.com
> CC: ESD@sbaitilaw.com
>     RMR@sbaitilaw.com
>
> **ATTORNEY FOR**
> **DEFENDANTS-APPELLANTS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of March, 2017, a true and correct copy of the foregoing document was sent to all parties and counsel of record via electronic service.

/s/ *Mazin A. Sbaiti*_____
Mazin A. Sbaiti
Texas Bar No. 24058096
1201 Elm Street
Suite 4010
Dallas, Texas 75270
Tel: (214) 432-2899
Fax: (214) 853-4367
Email: MAS@SbaitiLaw.com
CC: ESD@sbaitilaw.com
    RMR@sbaitilaw.com

**ATTORNEY FOR
DEFENDANTS-APPELLANTS**

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitations of FED. R. APP. P.

32(a)(7)(B), excluding the parts exempted by FED. R. APP. P. 32(a)(7)(B)(iii):

**6,478 words**.

2.     This brief complies with the type-face requirements of FED. R. APP. P.

32(a)(5) and the type-style requirements of  FED. R. APP. P. 32(a)(6):

Proportionally spaced typeface using Microsoft Word, Office 2016

In Times New Roman, 14-point font.

3.     The undersigned understands a material misrepresentation in completing this

Certificate, or circumvention of the type-volume limits in FED. R. APP. P.

32(a)(7), may result in the Court's striking the Reply Brief and imposing

sanctions against the person signing the Reply Brief.

/s/ *Mazin A. Sbaiti*
Mazin A. Sbaiti
Texas Bar No. 24058096
1201 Elm Street
Suite 4010
Dallas, Texas 75270
Tel: (214) 432-2899
Fax: (214) 853-4367
Email: MAS@SbaitiLaw.com
CC: ESD@sbaitilaw.com
     RMR@sbaitilaw.com

**ATTORNEY FOR
DEFENDANTS-APPELLANTS**