No. 17-50102

————————————————

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

————————————————

DEIDRE SEIM, Individually, and on behalf of all
others similarly situated,

*Plaintiff – Appellant*

v.

HOMEAWAY, INCORPORATED, A Delaware
Corporation,

*Defendant – Appellee*

————————————————

On Appeal from the United States District Court, Western District of Texas, No.
1:16-cv-00479, Honorable Lee Yeakel, Presiding

————————————————

## BRIEF FOR APPELLANT

————————————————

Jasper D. Ward IV
JONES WARD PLC
1205 E. Washington Street, Suite 111
Louisville, Kentucky 40206
(502) 882-6000

Counsel for Plaintiff-Appellant

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel for record for Appellant Deidre Seim certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**Appellant**
Deidre Seim
**Counsel for Appellant**
Jasper D. Ward
Alex C. Davis
Ashton Rose Smith
JONES WARD PLC
1205 E. Washington St., Suite 111
Louisville, Kentucky 40206

Michael Singley
Edwards Law
1101 E. 11th St.
Austin, Texas 78702

Ketan U. Kharod
Kharod Law Firm, P.C.
P.O. Box 151677
Austin, Texas 78715

Robert Ahdoot
Theodore W. Maya
Bradley K. King
Ahdoot & Wolfson, PC
1016 Palm Ave.
West Hollywood, California 90069

**Appellee**
HomeAway, Inc.
**Counsel for Appellee**
David D. Shank
Stephen E. McConnico
Michael L. Merriman
SCOTT DOUGLASS &
　　　MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, Texas 78701

/s/ Jasper D. Ward IV____
Counsel of Record for Appellant

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, Deidre Seim, respectfully requests oral argument. This appeal requires the Court to interpret Kentucky law, and the principles of contract formation. Oral argument may assist the Court in resolving these issues.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................ iii

TABLE OF CONTENTS......................................................................................... iv

TABLE OF AUTHORITIES ................................................................................... vi

JURISDICTIONAL STATEMENT ..........................................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................................2

STATEMENT OF THE CASE..................................................................................3

SUMMARY OF THE ARGUMENT ......................................................................11

ARGUMENT ..........................................................................................................14

I.   The district court erred as a matter of law in interpreting the arbitration provision of theFebruary Terms applicable to Ms. Seim's four unexpired subscription contracts. ..................................................................................16

   A.   The arbitration provision was ambiguous as it was subject to more than one reasonable interpretation. An ambiguous contract must be construed against the drafter, HomeAway ..........................................16

   B.   Ms. Seim's four unexpired subscription contracts were separate agreements that could not be amended by her renewal of a pay-per-booking contract. ...............................................................................22

   C.   Ms. Seim's four unexpired subscription contracts were not amended because Ms. Seim did not agree to amend these contracts. ................26

II.  The arbitration provision in the February Terms as to her four unexpired subscription contracts was illusory and unenforceable. .................................29

A. The district court erred in failing to uphold Ms. Seim's rejection of the arbitration agreement, thereby making it illusory and unenforceable. ..........................................................................................................29

B. The district court erred in reaching a different decision in this case than its companion Arnold case.  Ms. Seim's four subscription contracts were renewed under the April Terms, which the district court ruled was illusory and unenforceable because HomeAway could unilaterally modify or abolish an arbitration provision. .....................33

III. The district court erred in ruling that applying the arbitration provision to Ms. Seim's four unexpired subscription contracts was supported by consideration and not unconscionable.................................................................................34

A. There was no new consideration to support an amendment to Ms. Seim's four unexpired subscription contracts .....................................34

B. Ms. Seim did not consent to the amendments to her four unexpired subscription contracts. ........................................................................37

C. The arbitration provision was procedurally and substantively unconscionable as applied to Ms. Seim's four unexpired subscription contracts.................................................................................................40

IV. Judicial economy and public policy would not be served by enforcing arbitration provision against Ms. Seim.......................................................44

CONCLUSION ……………………………………………………………..45

CERTIFICATE OF SERVICE …………………………………………………47

CERTIFICATE OF COMPLIANCE …………………………………………..48

# TABLE OF AUTHORITIES

<u>Cases</u>

*3D Enters. Contr. Corp. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 174

    S.W.3d 440, 448 (Ky. 2005)................................................................13

*Arnold v. HomeAway*, 17- 17-50088........................................................6

*Austin v. Decker Coal Co*., 701 F.2d 420, 425-26 (5th Cir. 1983)..........12

*B. Perini & Sons, Inc. v. S. R. Co.*, 239 S.W.2d 964, 966 (Ky. 1951)....................17

Cantrell Supply, Inc. v. Liberty Mut. Ins. Co., 94 S.W.3d 381, 385 (Ky. App.

    2002) ...........................................................................................14

*Cassinelli v. Stacy*, 238 K 827, 835, 38 SW. 2d 980, 983 (1931). ..........................28

*Cent. Bank & Tr. Co. v. Kincaid*, 617 S.W.2d 32, 33 (Ky. 1981)...........................14

*Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335 (Ky. Ct. App. 2001).......30

*Cuppy v. General Accident Fire & Life Assurance Corp.*, 378 S.W.2d 629, 632

    (Ky. 1964)...........................................................................................24

*David Roth's Sons, Inc. v. Wright & Taylor, Inc.,* 343 S.W.2d 389, 391 (Ky. 1961).

    .......................................................................................................7

*Day v. Fortune Hi-Tech Mktg.*, 536 Fed. Appx. 600, 2013 U.S. App. LEXIS 19060

    (6th Cir. 2013) ...................................................................................25

*Dixon v. Daymar Colls. Grp., LLC*, No. 2012-SC-000687-DG, 2015 Ky. LEXIS 73

    (Apr. 2, 2015) ...................................................................................31

*Energy Home v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013).........................................7

*ESI Cos. v. Ray Bell Constr. Co.*, No. 2008-CA-001756-MR, 2009 Ky. App.

    Unpub. LEXIS 995, at *20-21 (Ct. App. Nov. 25, 2009) ....................................23

*Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 321 (Ky. 2015) ...............30

*Fowler's Bootery v. Selby Shoe C*o., 273 Ky. 670, 671-72, 117 S.W.2d 931, 932

    (1938).................................................................................................................24

*Frear v. P.T.A. Indus.*, 103 S.W.3d 99, fn. 12 (Ky. 2003) .......................................14

*Gilmore v. Green*, 14 Bush 772, 77 Ky. 772 (Ky, 1879).........................................28

*Gulf, C. & S. F. R. Co. v. Coca-Cola Bottling Co.*, 363 F.2d 465, 467 (5th Cir.

    1966) ..................................................................................................................12

Ham Marine, Inc. v. Dresser Indus., Inc., 72 F.3d 454, 458 (5th Cir. 1995) ..........12

*Illinois Central R.R. v. Gulf, Mobile & Ohio R.R.*, 308 F.2d 374, 375 (5th

    Cir.1962)..............................................................................................................12

*In re Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir.1981) ............................12

*Island Creek Coal Co. v. Wells,* 113 S.W.3d 100, 103-04 (Ky. 2003)....................13

*J. Lee Milligan, Inc. v. CIC Frontier, Inc.*, 289 F. App'x 786, 789 (5th Cir. 2008) 12

*J.M. Davidson, Inc. v. Webster*, 128 S.W. 3d 223, 231 (Tex. 2003).......................24

*Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 609 (5th Cir. 2000) ........12

*Ky. Ass'n of Ctys. v. Bradley*, No. 1999-CA-002856-MR, 2001 Ky. App. LEXIS

    62, at *5 (Ct. App. May 18, 2001) ....................................................................24

*Ky. Shakespeare Festival, Inc. v. Dunaway,* 490 S.W.3d 691, 695 (Ky. 2016)......13

*Lawson v. Ky. Ret. Sys.*, 291 S.W.3d 679, 682 (Ky. 2009) .....................................17

*Lifemark Hosps., Inc. v. Liljeberg Enters, (In re Liljeberg Enters.)*, 304 F.3d 410,

    439 (5th Cir. 2002). ............................................................................12

*Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63, 115 S. Ct. 1212, 1219

    (1995)...................................................................................................33

*Middlesboro v. Am. Sur. Co.*, 307 Ky. 769, 775, 211 S.W.2d 670 (1947)..............19

*Morrison v. Amway Corp.*, 517 F.3d 248, 255 (5th Cir. 2008) ...............................24

*Mortg. Elec. Registration Sys. v. Abner*, 260 S.W.3d 351, 354 (Ky. Ct. App. 2008)

    ..........................................................................................................33

*Nat'l Union Fire Ins. Co. v. Circle, Inc.*, 915 F.2d 986, 989 (5th Cir. 1990) .........12

*Ogden v. Redd*, 76 Ky. 581 (Ky. 1877) ...................................................................28

*Paul Miller Ford, Inc. v. Rutherford*, No. 2007-CA-000293-MR, 2007 Ky. App.

    LEXIS 494, at *9-10 (Ct. App. Dec. 28, 2007)....................................30

*Pool v. First Nat'l Bank*, 155 S.W.2d 4, 6 (Ky. 1941)............................................28

*Ram Eng'g & Constr., Inc. v. Univ. of Louisville*, 127 S.W.3d 579, 586 (Ky. 2003)

    ..........................................................................................................24

*Sargent v. Shaffer*, 467 S.W.3d 198, 212 (Ky. 2015). ...........................................23

*Sawyer v. Mills,* 295 S.W.3d 79, 86 (Ky. 2009) .....................................................28

*Schnuerle v. Insight Communs., Co. L.P.*, 376 S.W.3d 561, 575 (Ky. 2012). ..........7

*TRC Envtl. Corp. v. LVI Facility Servs.*, 612 Fed. Appx. 759, 761 (5th Cir. 2015)30

*Tres Jeanee, Inc. v. Brolin Retail Sys. Midwest, Inc*. No. 3:07-CV-139H, 2007 WL

    3118482, at *3 (W.D. Ky. Oct. 22, 2007) ............................................................31

*Valued Servs. of Ky., LLC v. Watkins*, 309 S.W.3d 256, 263 (Ky. Ct. App. 2009).33

*Vinaird v. Bodkin's Adm'x,* 254 Ky. 841, 851, 72 S.W.2d 707, 711 (1934)............28

*Wallace v. Fortune Hi-Tech Marketing*. 2012 U.S. Dist LEXIS 136029 *4 (E.D.

    Ky. Sept. 24, 2012)..................................................................................................25

*Weird v. State Farm Mut. Auto. Ins. Co.*, No. 2012-CA-000326-MR, 2017 Ky.

    App. LEXIS 27, at *17-18 (Ct. App. Feb. 10, 2017) ...........................................23

## Statutes

9 U.S.C. § 2 .................................................................................................................32

KRS 417.050................................................................................................................32

## Treatises

*17A Am. Jur. 2d Contracts § 152* (2009)...................................................................28

17A C.J.S. Contracts § 545 (2013) ............................................................................29

# JURISDICTIONAL STATEMENT

Deidre Seim appeals from the January 18, 2017 Order granting Defendant-Appellee's Motion to Compel Arbitration and dismissing the action with prejudice. The Order was entered by the Honorable Lee Yeakel in the United States District Court for the Western District of Texas. Plaintiff-Appellant timely filed a Notice of Appeal dated February 3, 2017. This Court has jurisdiction over the appeal under 28 U.S.C. § 1291.

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

I.    Did the district court hold in error under Kentucky law that Ms. Seim was bound by an arbitration provision on HomeAway's WebPages even though her four unexpired subscription contracts did not require arbitration?

II.   Did the district court hold in error under Kentucky law that the arbitration provision as applied to Ms. Seim's four unexpired subscription contracts was not illusory and enforceable?

III.  Did the district court hold in error under Kentucky law that for the arbitration provision to apply to Ms. Seim's four unexpired subscription contracts it must be supported by new consideration?

IV.   Did the district court err in not holding that judicial economy and public policy would be served by not enforcing the arbitration provision against Ms. Seim?

## STATEMENT OF THE CASE

HomeAway owns several websites that operate as vacation rental marketplaces, allowing homeowners and property managers (hereinafter "owners") to offer short-term rental vacation properties to travelers. Travelers can search HomeAway's websites, locate a vacation property to rent, communicate with the owner of that vacation property and pay the owner via the website's financial facilitation system. Owners either joined the site through a subscription model, paying HomeAway an annual fee to cover the costs of listing and renting their vacation properties through the website (hereinafter "subscription contract"); or, a pay-per-booking model, paying HomeAway a percentage of the rental fees when the vacation property is rented (hereinafter per-per-booking contract"). ROA.8. When Ms. Seim joined the website in 2011, travelers were not charged a fee for using the HomeAway websites. HomeAway represented to owners that its websites would continue to remain free for travelers, and contractually obligated itself to do so, distinguishing itself from other online rental websites. ROA.9 & 13-14. In reliance on this marketplace model and its representations, Ms. Seim and thousands of other owners entered into one-year subscription or pay-per-booking contracts with HomeAway for the right to list their rental vacation properties on HomeAway's websites. ROA.9. The terms and conditions for the subscription and pay-per-booking contracts were posted on HomeAway's websites**.** ROA.43. The terms and conditions were subject to change, however, and in order to enter into one these

3

contracts owners agreed to the terms and conditions posted as of the date the owner signed up. ROA.9 & 15.

Ms. Seim entered into five such subscription contracts over a four year period, one in 2011, two in 2012, one in 2013 and one in 2014 and paid HomeAway's annual subscription fees. ROA.14-15. These five properties were named and numbered as follows: "Kentucky Derby Home" (347391); "FabHistoric Home" (417223); "Historic District Townhouse" (430762); "Beautiful Baxter Ave Townhouse" (483179); and "Ideal Louisville Home" (653474). ROA.122. As of the end of 2015, she renewed each property on their annual anniversary dates, so that all of her subscription contracts had been renewed subject to the terms and conditions posted on its websites as of September 15, 2015 (hereinafter "September Terms"). ROA.238.

HomeAway subsequently posted changes to the terms and conditions on February 9, 2016 (hereinafter "February Terms") and again on April 28, 2016 (hereinafter "April Terms"). ROA.380. The key provisions of the changed terms and conditions from the September Terms at issue in this appeal are:

1) A mandatory arbitration provision added by the February Terms and continued in the April Terms (Section 19). The key paragraph of the arbitration provision, including the last sentence that applied the clause to claims that arose before the February Terms were agreed follows:

> Any and all Claims will be resolved by binding arbitration, rather than in court, except you may assert Claims on an individual basis in small claims court if they qualify. This includes any Claims you assert against us, our subsidiaries, users or any companies offering products or services through us (which are beneficiaries of this arbitration agreement). This also includes any Claims that arose before you accepted these Terms, regardless of whether prior versions of the Terms required arbitration.

ROA.157.

2) The owners' right to reject amendments to the terms and conditions during a contract year, in both the September Terms and the February Terms but deleted by the April Terms (Section 21 and Section 22, respectively)

> We reserve the right, in our sole discretion, to amend these Terms, in whole or in part, at any time, with or without your consent and you acknowledge and agree that your consent to any such amendment is not required in the event the proposed amendment is clerical and/or non-substantive in nature. . . If you disagree  with any non-clerical and/or substantive amendment to these Terms… your sole remedy as a member is to withhold your consent to the applicability of the proposed amendment to your use of the Site, in which case your use of the Site will continue to be governed by the terms and conditions that were applicable to your use of the Site during the then current term of your subscription as the same were in effect immediately prior to the proposed amendment and you agree that you are responsible for keeping a copy of such terms. When members renew subscriptions, the terms in effect at the time of renewal will govern, provided that such terms may change as described above.

ROA.56 & 163.

3)  The imposition of a traveler service fee to be paid to HomeAway, added

by the February Terms and continued in the April Terms (Section 9).

> We will charge a service fee payable by travelers who book a property on the Site via the Site checkout. The service fee covers the use of the Sites, including such features as 24/7 support, and is calculated as a variable percentage of the total reservation amount (which may or may not include additional fees, taxes, and damage deposits).

ROA.149-150.

When the February Terms were posted on the HomeAway website, HomeAway immediately began charging the travelers' service fee, breaching the contracts with Ms. Seim which had been renewed under the September Terms. ROA.16.   On March 17, 2016, when one of Ms. Seim's subscription contracts came up for renewal, she changed it from a subscription contract to a pay-per-booking contract, making her *Kentucky Derby Home* property subject to the February Terms; leaving the other four subscription contracts still subject to the September Terms as all were still within their respective subscription contract periods. ROA.238-9.

Exercising her contractual right to object to the application of the travelers service fee on her four subscription contracts under Section 21 of the September Terms, she filed suit on April 15, 2016, in Travis County, Texas against HomeAway for breach of contract, and other causes of action for attempting to unilaterally changing the terms and conditions of her subscription contracts.   She did not make a claim challenging the application of the February Terms to her *Kentucky Derby*

*Home* pay-per-booking contract. ROA.7-42.

On July 11, 2016, HomeAway filed a motion to compel arbitration and dismiss Ms. Seim's suit because Ms. Seim agreed to arbitrate any and all claims and disputes with HomeAway when she renewed the *Kentucky Derby Home* under the February Terms**.** ROA.107. HomeAway argued that the language of the arbitration provision was "susceptible of an interpretation that covers Seim's dispute" including any claims she had under her other four subscription contracts. ROA.112. The specific language relied upon by HomeAway for this interpretation of the arbitration provision was: "This also includes any Claims that arose before you accepted these Terms, regardless of whether prior versions of the Terms required arbitration." ROA.113.

The district court held a joint hearing on HomeAway' Motion to Compel Arbitration in this case and in a companion case also on appeal with this Court, *Arnold v. HomeAway*, 17-50088, on August 24, 2016. ROA.374. Ms. Seim argued that the arbitration provision should not be applied to her four subscription contracts because she made no agreement, as a matter of law, to submit her claims under her four subscription contracts to arbitration.    First, Ms. Seim received no new consideration from HomeAway on those four subscription contracts. ROA.257-259. It is a fundamental principle of Kentucky contract law that a material alteration in the terms of an existing contract cannot be enforced unless there is new

7

consideration. *See Pool v. First Nat'l Bank*, 155 S.W.2d 4, 6 (Ky. 1941). Second, because HomeAway failed to honor Ms. Seim's right to withhold her consent to applying the amendments of the February Terms to her other subscription contracts, the arbitration provision was not a valid contract but was an illusory document. *See David Roth's Sons, Inc. v. Wright & Taylor, Inc.,* 343 S.W.2d 389, 391 (Ky. 1961). ROA.260-262. Third, the arbitration provision was procedurally and substantively unconscionable. *Schnuerle v. Insight Communs., Co. L.P*., 376 S.W.3d 561, 575 (Ky. 2012).

Procedurally, a contract is unconscionable if unclear language conceals or obscures a contractual term. In analyzing substantive unconscionability under Kentucky law, consideration must be given to the commercial reasonableness of the contract terms and the purpose and effect of the terms. ROA.267. Based upon Ms. Seim's previous dealings with HomeAway, the application of the arbitration provision to her four subscription contracts was done without "meaningful" notice. ROA.413. HomeAway, after the fact and without disclosing that her renewal of her *Kentucky Derby Home* would do so, imposed an arbitration provision that covers any and all disputes related to HomeAway's websites in any way, shape or form, including ones relating to unexpired contracts with different terms for dispute resolution and in spite of her right to reject the changes. ROA.265. Furthermore, the arbitration provision is so broad as to be unenforceable, especially when it

8

conflicts with HomeAway's previous choice of venue provision that it also wrote. *See Energy Home v. Peay*, 406 S.W.3d 828, 835 (Ky. 2013). ROA.266.

On January 18, 2017, the district court granted HomeAway' motion to dismiss Ms. Seim's suit and compel arbitration, adopting HomeAway's argument that Seim agreed to its arbitration provision by renewing her *Kentucky Derby Home* under the February Terms and that by signing on to HomeAway's website she agreed to extend the arbitration requirement to her unexpired subscription contracts. The district court held that the plain language of the arbitration provision applied to any claims that Ms. Seim might have against HomeAway, including any claims that arose before she accepted the February Terms under any prior versions of the terms and conditions. ROA.363. So not only did the arbitration provision apply to claims for her *Kentucky Derby Home* property under its prior subscription contract, it also applied to any claims she might have under her other four unexpired subscription contracts.

> The plain language of the February 9, 206 Terms and Conditions, however, provides that the arbitration provision applies to 'any Claims [Seim] assert[s] against [HomeAway],' including 'any Claims that arose before [Seim] accepted these Terms, regardless of whether prior versions of the Terms required arbitration.'

ROA.363.

The district court's Order and Opinion briefly rejected Ms. Seim's arguments that there was no consideration for the arbitration provision as applied to unexpired

subscription contracts holding that the renewal for the pay-per-booking contract was sufficient consideration. While the district court did not allow Ms. Seim to exercise her right to reject the February Terms amendments under Section 21 of the September Terms, the district court held that because the February Terms still contained a provision that gave owners the right to object to the application of new conditions to unexpired contracts, the arbitration agreement was not illusory. Finally, the district court dismissed the argument that the arbitration provision was unconscionable because it was stated in clear and concise language and Ms. Seim assented to it. ROA.366-367.

In the companion suit, *Arnold v. HomeAway 17-50088,* HomeAway had also filed a motion to compel arbitration and dismiss the claims of Ivan Arnold for the same reason; that is, when he renewed one of his subscription contracts under the April Terms he had agreed to arbitrate all of his claims under all of his other subscription contracts as well. On January 10, 2017, the district court denied HomeAway's motion to dismiss and compel arbitration of Mr. Arnold's Complaint. The district court held that the arbitration agreement of the April Terms was illusory because HomeAway retained the unilateral right to abolish or modify the arbitration agreement but had deleted the owners' right to object to changes in terms and conditions during an unexpired contract's term.

At the time of the district court's Order and Opinion, all of Ms. Seim's subscription contracts had been renewed and were also subject to the April Terms.

## SUMMARY OF THE ARGUMENT

Ms. Seim listed five vacation properties on HomeAway's websites over a five year period.  She paid different subscription amounts for her listing and in order to use the website she agreed to the terms and conditions in effect when she listed her properties. At each renewal, which occurred on different dates, Ms. Seim paid a new subscription amount for an annual contract period and agreed to the terms and conditions that were in place at the time.  Notwithstanding that each property was covered by a different contract, after Ms. Seim filed this lawsuit, HomeAway applied the arbitration provision applicable to one of her properties to all of her properties.

First, the district court erred when it held that the arbitration provision clearly applied to all of Ms. Seim's claims because of the language of its retroactive provision. In a breach of contract case in which the parties disagree upon the meaning of a contract provision, the court must determine first whether it is ambiguous. Under Kentucky law, the standard for ambiguity is an objective one: reasonableness. Even though HomeAway argued that the retroactive language of the arbitration provision was ". . . susceptible of an interpretation that covers Seim's dispute," the district court failed to address Ms Seim's interpretation of that arbitration provision as only applying to one of her contracts. It is a reasonable interpretation.  HomeAway states quite clearly that the terms and conditions in effect

11

when an owner signs up is the "contract" that governs the owner's use of the site. Each sign up is a separate act and, depending on the date an owner signs up and the date of changes HomeAway makes to its terms and conditions, an owner could have multiple properties operating under different terms and conditions. When a court finds an ambiguity in a contract, then it must resolve such ambiguity against the party that drafted the contract.

Second, there is no dispute that if an owner did not consent to an amendment to terms and conditions to an existing contract, the amendment had no effect. Ms. Seim filed suit in Travis County, Texas objecting to the application of the amendments to her unexpired contracts. HomeAway refused to honor her right to withhold her consent to the amendments. In the companion case to this case, *Arnold v. HomeAway*, the district court held that "if a party to a contract retains the right to unilaterally abolish or modify an arbitration provision, the agreement to arbitrate is illusory and not binding." The district court held the arbitration provision was not applicable to Arnold's contracts because after the April 2016 amendments, HomeAway retained unilateral rights as to the arbitration provision. Kentucky law and Texas law on contract formation and valid arbitration provisions do not differ. Under Kentucky law when a party retains the unilateral right to perform or not perform a particular provision of a contract, the contract is illusory. Ms. Seim rejected the arbitration provision. By granting HomeAway its motion to compel

arbitration, the district court rendered the arbitration provision purely illusory.  In the alternative, the district court should have acknowledged that after April 2016, Ms. Seim, like Mr. Arnold, was subject to the amendments the court had ruled illusory and unenforceable.

Third, the terms and conditions that contained the arbitration provision was not a valid contact under Kentucky law.  An amendment to an existing contract must follow the same rules as formation of a contract.  To constitute a valid contract, there must be an offer and acceptance, full and complete terms, and a mutual, bargained-for exchange of valuable consideration. Ms. Seim received no compensation for accepting the requirement that she arbitrate her claims under her four unexpired subscription contracts.  Ms. Seim had already paid HomeAway the annual fees for the four subscription contracts so she did not owe any additional fees, all of the services HomeAway provided regarding the vacation rentals stayed the same.  There was no new consideration that would support a finding that the arbitration provision applied to her.  Furthermore the application of the arbitration to Ms. Seim is unconscionable. HomeAway failed to demonstrate that she knowingly agreed to the arbitration provision. Ms. Seim knew that she renewed a subscription contract it became subject to the new terms and conditions, but she had no reason to believe it changed her other subscription contracts as well.  There was nothing in the February Terms that would have informed her she was agreeing to apply the arbitration

provision to her other subscription contracts.

Finally, Ms. Seim's claims are among thousands that are before the district court in class actions against HomeAway.  It goes against both public policy and judicial economy to force Ms. Seim to arbitrate the issues that will be decided by the court for other plaintiffs.


# ARGUMENT

The district court interpreted the arbitration provision of the February Terms, which Ms. Seim agreed to when she signed-on to HomeAway's website to renew one of her five subscription contracts, as being retroactively applicable to all of her unexpired subscription contracts.  This Court reviews a district court's decision interpreting a contract provision *de novo*.  "The district court's interpretation of a contract is reviewed *de novo*, and the contract and record are reviewed independently and under the same standards that guided the district court." *Lifemark Hosps., Inc. v. Liljeberg Enters, (In re Liljeberg Enters.)*, 304 F.3d 410, 439 (5th Cir. 2002). (Internal quotations and cases omitted.)  "The standard of review for contract interpretation is *de novo*"  *Nat'l Union Fire Ins. Co. v. Circle, Inc.*, 915 F.2d 986, 989 (5th Cir. 1990).  "Contract interpretation is a question of law which we review *de novo*." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 609 (5th Cir. 2000)  "The stated and logical reason for *de novo* review is that this Court is in as good position to interpret the written contract as was the district court." *Illinois*

*Central R.R. v. Gulf, Mobile & Ohio R.R.*, 308 F.2d 374, 375 (5th Cir.1962). (Quotation and case citations omitted.)

The district court did not find that the arbitration provision was ambiguous as to its application to Ms. Seim's other four subscription contracts. This Court's *de novo* review of a district court's contract interpretation includes a review of whether the contract is ambiguous or not. "Whether a contract is ambiguous is a conclusion of law that this court reviews de novo." *J. Lee Milligan, Inc. v. CIC Frontier, Inc.*, 289 F. App'x 786, 789 (5th Cir. 2008) (citing *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 458 (5th Cir. 1995). "This broad standard of review includes the determination of whether the contract is ambiguous. This initial determination is, equally with other aspects of contract interpretation, a question of law." *Austin v. Decker Coal Co.*, 701 F.2d 420, 425-26 (5th Cir. 1983) (citing *In re Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir.1981)). "The contract is before us and it is our duty to interpret its meaning without any presumption in favor of the interpretation given it or the legal conclusions reached by the trial court." *Gulf, C. & S. F. R. Co. v. Coca-Cola Bottling Co.*, 363 F.2d 465, 467 (5th Cir. 1966).

Furthermore, in interpreting a contract the Fifth Circuit does not limit its review to the four corners of the document:

> But in considering the contract, we cannot interpret it, or determine its true meaning in a vacuum with complete disregard of pertinent facts and surrounding circumstances out of which this litigation arose. . . . In reaching our

15

> decision in this case we are within the bounds of sound legal principles and fundamental rules of contract construction if we look not only to the actual wording of the contract, but also give consideration to its subject matter, the facts relating to the controversy in issue and the surrounding circumstances, in order to determine the intention of the parties as reflected by the words used.

*Id.*

Likewise, under Kentucky contract law, a lower court's decision interpreting a contract provision, "including determining whether a contract is ambiguous," is reviewed de novo. *Ky. Shakespeare Festival, Inc. v. Dunaway,* 490 S.W.3d 691, 695 (Ky. 2016). "Generally, the interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review." *3D Enters. Contr. Corp. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005). (Internal quotation marks and cases omitted.) If an ambiguity exists, the court will gather, if possible, the intention of the parties from the contract as a whole, and in doing so will consider the subject matter. *Island Creek Coal Co. v. Wells,* 113 S.W.3d 100, 103-04 (Ky. 2003).

**I.      The district court erred as a matter of law in interpreting the arbitration provision of the February Terms applicable to Ms. Seim's four unexpired subscription contracts.**

**A. The arbitration provision was ambiguous as it was subject to more than one reasonable interpretation. An ambiguous contract must be construed against the drafter HomeAway.**

The district court interpreted the arbitration provision in the February Terms as applicable to all of Ms. Seim's unexpired subscription contracts. The district court

stated that the "plain language" of the arbitration provision provided that it applied to all "claims" Ms. Seim had "regardless of whether prior versions of the Terms required arbitration." ROA.363. The district court erred in not finding that the arbitration provision as applicable to other subscription contracts not being renewed under the February Terms was ambiguous.

In a breach of contract case in which the parties disagree upon the meaning of a contract provision, the court must determine first whether it is ambiguous. "[T]he starting point for contract interpretation is to determine whether the terms of the contract itself are ambiguous," *Island Creek Coal Co.* 113 S.W.3d at 104.    "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co*., 94 S.W.3d 381, 385 (Ky. App. 2002) (citation omitted).    Under Kentucky law, the standard for ambiguity is an objective one: reasonableness. An ambiguous contract is one capable of more than one different *reasonable* interpretation. *Frear v. P.T.A. Indus.*, 103 S.W.3d 99, fn. 12 (Ky. 2003).  "An ambiguous contract is one capable of more than one different, reasonable interpretation. *Cent. Bank & Tr. Co. v. Kincaid*, 617 S.W.2d 32, 33 (Ky. 1981).

HomeAway, in its Motion to Compel Arbitration, argued that the retroactive language of the arbitration provision was ". . . susceptible of an interpretation that covers Seim's dispute" and in fact was all encompassing as to any claims Ms. Seim

had against HomeAway, its subsidiaries, users or companies offering services or products through HomeAway. ROA.112. Ms. Seim does not dispute that the arbitration provision applied to her *Kentucky Derby Home*, even retroactively. She disputes, however, that it applied to all of her subscription contracts, which were separate contracts not the subject of the Kentucky Derby Home renewal agreement.

Ms. Seim's interpretation is a reasonable one given the manner in which HomeAway contracts with owners. HomeAway posts its terms and conditions on its websites and binds those who use its websites when they check-off to participate as an owner or a traveler. There is no universal start or finish date to these contracts and HomeAway may change the terms and conditions governing its various websites at any time. Owners sign up on those websites at any time. ROA.380. HomeAway states quite clearly that the terms and conditions in effect when an owner signs up is the "contract" that governs the owner's use of the site. Each sign up is a separate act and, depending on the date an owner signs up and the date of changes HomeAway makes to its terms and conditions, an owner could have multiple properties operating under different terms and conditions. In order to manage these very fluid contractual relationships, HomeAway owners did not have to consent to changes to their existing contracts when an update of the terms and conditions were made. New terms would only apply if consented to by the owner or when a subscription or pay-per-booking contract was renewed. ROA.381. HomeAway's

18

procedure included putting the onus on the owners to download and retain the terms

and conditions under which their contracts were governed so owners had those

original terms and conditions if needed.    In Section 22 of the February Terms,

HomeAway states that:

> This version of the Terms became effective on the date set forth above and this version amends the version effective prior to such date. We reserve the right, in our sole discretion, to amend these Terms, in whole or in part, at any time, with or without your consent and you acknowledge and agree that your consent to any such amendment is not required in the event the proposed amendment is clerical and/or non-substantive in nature . . . If you disagree  with any non-clerical and/or substantive amendment to these Terms… your sole remedy as a member is to **withhold your consent to the applicability of the proposed amendment to your use of the Site**, in which case your use of the Site will continue to be governed by **the terms and conditions** that were applicable to your use of the Site during the then current term of your subscription as the same were in effect immediately prior to the proposed amendment and you agree that you are responsible for keeping a copy of **such terms**. When members renew subscriptions, **the terms** in effect at the time of renewal will govern, provided that such terms may change as described above.

(Emphasis added.) ROA.163.

"Terms," with a capital "T" is a defined term in the February Terms at the

very start of the posted terms and conditions.

> By using or accessing HomeAway.com   . . . you acknowledge that you agree to and are subject to the following terms and conditions, as well as our Privacy

> Policy, which also governs your use of the Site, and is incorporated by reference (collectively the "**Terms**").

(Emphasis in original.)  ROA.138.

In the provision of the February Terms above "terms and conditions" that owners may keep in place under subscription contracts already in effect are not defined terms, but referred to generally as "terms and conditions."

The relevant portion of the arbitration provision reads:

> Any and all Claims will be resolved by binding arbitration, rather than in court, except you may assert Claims on an individual basis in small claims court if they qualify. This includes any Claims you assert against us, our subsidiaries, users or any companies offering products or services through us (which are beneficiaries of this arbitration agreement). This also includes any Claims that arose before you accepted **these Terms**, regardless of whether prior versions of the **Terms** required arbitration.

(Emphasis added.)  ROA.157.

In the arbitration paragraph because **Terms** is capitalized the phrase "whether prior versions of the Terms required arbitration" it is reasonable for Ms. Seim to interpret the retroactive application of that provision as applying only to "these" Terms. Whereas, if Terms was meant to apply the arbitration provision to unexpired subscription and pay-per-booking contracts, Ms. Seim would expect the reference to be to all properties, and all contracts. The ever-changing nature of contract provisions as an owner adds and/or renews properties on different dates and with different terms and conditions is inherently confusing.  Using a capital "T" for

20

"Terms" as a substitute for a "Contract" requires meticulous attention as to when term means "this contract" or a prior contract with different "terms and conditions," which hopefully an owner has retained since it can no longer be found on the website. Likewise, HomeAway immediately removes the prior versions, such that they cannot be used even as a reference to the timeframe the contract covers, "its term." So it is reasonable that HomeAway and Ms. Seim have different interpretations of the retroactive application of the phrase "regardless of whether prior versions of the Terms required arbitration." HomeAway argued that it could be "interpreted" as applying to all of Ms. Seim's contracts even in the absence of her consent. Ms. Seim, who did not include in her breach of contract suit claims for her *Kentucky Derby Home* subscription contract, argued that the arbitration provision applied to prior claims she might have under <u>that</u> subscription contract, but only <u>that</u> subscription contract. Therefore, the district court erred as a matter of law in not finding the retroactivity reach of the arbitration provision ambiguous.

When a court finds an ambiguity in a contract, then it must resolve such ambiguity against the party that drafted the contract. *See B. Perini & Sons, Inc. v. S. R. Co.*, 239 S.W.2d 964, 966 (Ky. 1951) ("No rule is better established than that, when a contract is susceptible of two meanings, it will be construed strongest against the party who drafted and prepared it.") and *Lawson v. Ky. Ret. Sys.*, 291 S.W.3d 679, 682 (Ky. 2009) ("A general principle of contract construction is that any

ambiguity should be construed against the drafter . . .").  Certainly in this case construing the arbitration provision against the drafter is warranted.  HomeAway created the confusion evidenced in this discussion by the manner it chose to have owners use its websites. As demonstrated above, Ms. Seim was expected to constantly keep up with posted terms and conditions, which could change at any time, in order to be ready to "consent" or "withhold consent" even if she was within the "current term" of her paid subscription contracts.

This Court should determine that the "retroactive" nature of the phrase in the arbitration provision is ambiguous and construe the language against HomeAway as drafter and in favor of Ms. Seim.  Ms. Seim's four unexpired subscription contracts contained a specific right to take disputes she might have with HomeAway to court, which she has done.  Imposing the arbitration provision by way of a 8-word phrase in a separate document, whose provisions did not apply to the unexpired subscription contracts without her consent, denied Ms. Seim both her contractual and constitutional right to access to a court for her dispute with HomeAway.

**B. Ms. Seim's four unexpired subscription contracts were separate agreements that could not be amended by her renewal of a pay-per-booking contract.**

The district court erred in its interpretation of the February Terms as applying to all of Ms. Seim's claims against HomeAway.  Ms. Seim listed each of her five vacation properties on HomeAway's websites on different dates, paying different

subscription amounts, and making each subject to different terms and conditions. At each renewal, which occurred on different dates, Ms. Seim paid a new subscription amount for an annual contract period and made each subject to the terms and conditions that were in place at the time. When the February Terms were posted, all of Ms. Seim's subscription contracts had been renewed under the September Terms. ROA.238. When her *Kentucky Derby Home* subscription contract came up for renewal in March 2016, she changed it to a pay-per-booking contract and it came under the February Terms. By applying the February Terms to all of Ms. Seim's contracts, the district court treated her five contracts as one contract contrary to how Kentucky law treats such transactions.

Under Kentucky contract law Ms. Seim had five separate contracts with HomeAway and renewed only one of those contracts under the February Terms. Ms. Seim argued at the district court hearing that her lawsuit concerned only her four subscription contracts that were subject to the September Terms and that her agreement to the February Terms for her *Kentucky Derby Home* did not extend those terms to her other properties. Contracts between the same parties, entered into on separate days, regarding separate properties and with separate consideration *cannot be considered one contract*. In *Middlesboro v. Am. Sur. Co.*, 307 Ky. 769, 775, 211 S.W.2d 670 (1947), an insurance company executed a surety bond to cover the elected tax collector's one year term and renewed it seven times upon the collector's

reelections.    After discovering shortages, the city sued the insurance company for the amount of the bonds under each renewal for each year the collector held office to recover for the collector's misappropriation of funds.   The insurance company argued that the city was only allowed to recover under the original bond because all of the subsequent renewals simply kept the one bond in place.   The Kentucky court held that each subsequent bond renewal created a distinct contract separate from the original bond because the bond was renewed on separate dates and with separate consideration for each separate bond. "The obligation of the bond is to make good the loss occurring during its term. The obligation of each renewal is to make good the loss occurring during the renewal term. Each stands upon its separate consideration. We think the bond and the renewals were separate and distinct contracts and established separate and distinct liabilities." *Id.* at 673.

All of Ms. Seim's properties were contracted with HomeAway separately. Each had a separate anniversary date and separate consideration.   Each property could be separately designated as platinum, gold, silver, bronze, classic or bundled. Each could be a subscription or a pay-per-view contract.   HomeAway treated each property as a separate contract.   So when her *Kentucky Derby Home* subscription contract expired and Ms. Seim switched it to a pay-per-booking contract, it did not change the terms on her four other subscription contracts.   Those subscription contracts were not converted to pay-per-booking contract. HomeAway did not return

any part of her fully paid in advance annual subscription fees.

This was consistent with HomeAway's treatment of each property as a separate contract as repeatedly demonstrated in all versions of its terms and conditions:

> Each listing must relate to an individual and uniquely identified property. . . The property in a listing may not be substituted for any property without our consent. . . . The term of the subscription for any substituted property shall be the same as the term of the originally listed property (i.e., the term will not be extended past the original term).

*(September Term Section 28, February Term Section 29 and April Term Section 30)* ROA.59.

> All subscription listings are sold to run the full term that is chosen by the member. The term starts on the date that the member submits the full or initial (as applicable) payment and expires on the last date of the term chose by the member.

*(September Term Section 30, February Term Section 31 and April Term Section 33)* ROA.61.

> When members renew subscriptions, the terms in effect at the time of renewal will govern,

*(September Term Section 21, February and April Terms Section 22)* ROA.56.

> For subscription listings, the rates in effect at the time of the member's next subscription renewal, new listing or a member's upgrade or any other additional or new order of any product or service will govern for such renewal or other order.

*(September Term Section 21, February and April Terms Section 22)* ROA.56.

Because HomeAway treats each subscription and pay-per-booking as a separate contract, subject to the terms and conditions in place when it is listed, there is no basis for the district court's interpretation of the language of the arbitration provision as applying to all of Ms. Seim's subscription contracts. The reference to "any Claims that arose before [Seim] accepted these terms, regardless of whether prior versions of the Terms required arbitration" can only be interpreted as applying to claims regarding her *Kentucky Derby Home* claims prior to March 17, 2016.

### C. Ms. Seim's four unexpired subscription contracts were not amended because Ms. Seim did not agree to amend these contracts.

The district court held in error that Ms. Seim agreed to arbitrate claims under her four unexpired subscription contracts when she renewed the contract for her *Kentucky Derby Home*. By filing suit in Travis County, Texas for a breach to those four contracts, Ms. Seim withheld her consent to the February Terms being applied to claims under her four subscription contracts. HomeAway reserved the right to post changes to the terms and conditions at any time and allowed owners to reject changes made during a "current term," imposing the new terms and conditions only when a contract is up for renewal. This right to reject changes was in both the September Terms and the February Terms, ". . . your sole remedy as a member is to withhold your consent to the applicability of the proposed amendment to your use of the Site . . ."

It is clear under both the September and February Terms, that if an owner did not consent to an amendment, the amendment had no effect. The September and February Terms do not specify how an owner is to withhold consent to the amended provisions. However, the September Terms contained the following dispute resolution clause:

> Section 18: Any cause of action you may submit in connection with your use of the site or pursuant to these terms will be filed in the state or federal courts in Travis County, Texas which you acknowledge, consent to and agree will be the exclusive forum and venue for any legal dispute between you and us. You also agree that any dispute between you and us will be governed by the laws of the state of Texas, without regard to conflict of laws principles. Any cause of action you may have hereunder or with respect to your use of the site must be commenced by filing suit in Travis County, Texas, within one (1) year after the incident upon which the claim or cause of action is based first occurred.

ROA.53.

As there was no other method in the September Terms for indicating that she did not consent to the amendments in the February Terms, both the traveler service fees and the arbitration provision, as those related to her four unexpired subscription contracts, Ms. Seim filed suit in Travis County, Texas. Her suit, filed on April 15, 2016, was within the "statute of limitations" of one-year after her complaint first arose as dictated by the September Terms. So even if Ms. Seim did agree to the February Terms on her *Kentucky Derby Home* and waived her right to object to the

changes in the February Terms, she only did so for the *Kentucky Derby Home* pay-per-booking contract, not her other four subscription contracts. Clearly, she timely withheld her consent to the arbitration provision.

The district court failed to recognize that she had withheld her consent to the arbitration provision in its Opinion and Order and, therefore, the district court denied Ms. Seim her right to have her breach of contract claims heard in a court located in Travis County, Texas. Under Kentucky law, a contract provision which provides for a selection of a forum and a limitation of time in which a claim may be brought, conveys "rights" to both parties. HomeAway could require Ms. Seim to bring her claim in Texas and to do so within a year of her claims. Likewise, Ms. Seim had the contractual right to bring her claims to court in Texas and to do so within a year of the breach of contract. As the Kentucky Court of Appeals noted in *ESI Cos. v. Ray Bell Constr. Co.*, No. 2008-CA-001756-MR, 2009 Ky. App. Unpub. LEXIS 995, at *20-21 (Ct. App. Nov. 25, 2009)[1]

> With regard to the limitation upon the period of time in which a claim may be brought under contract, we likewise restate the reasoning of the Tennessee Court of Appeals. Analogous to the selection of forum, the limitation upon the period in which a claim may be brought under contract

---

[1] Pursuant to the Rules Of Civil Procedure promulgated by the Supreme Court, CR 76.28(4)(c), this opinion is not to be published and shall not be cited or used as binding precedent in any other case in any court of this state; however, unpublished Kentucky appellate decisions, rendered after January 1, 2003, may be cited for consideration by the court if there is no published opinion that would adequately address the issue before the court. Opinions cited for consideration by the court shall be set out as an unpublished decision in the filed document and a copy of the entire decision shall be tendered along with the document to the court and all parties to the action.

is also a "right" within the definition provided by the Court.

Ms. Seim had a year to bring her claims to the Texas court for adjudication.  The district court denied her that right by applying the arbitration provision to her claims before the time ran on her right to sue.  The Kentucky Court has adopted a jural rights doctrine, which holds that the Kentucky legislature may not abrogate a plaintiff's rights under causes of action in existence at the time of the adoption of the present constitution in 1892. *Sargent v. Shaffer*, 467 S.W.3d 198, 212 (Ky. 2015). Specifically, the right to pursue a breach of contract claim in court is designated a jural right.  "When our legislature enacts a law that has this effect on jural rights (and clearly the right to sue for contract breach is a jural right), the Supreme Court does not hesitate to declare it unconstitutional."  *Weird v. State Farm Mut. Auto. Ins. Co.*, No. 2012-CA-000326-MR, 2017 Ky. App. LEXIS 27, at *17-18 (Ct. App. Feb. 10, 2017)  Ms. Seim had a right to bring her claims against HomeAway before the court. She rejected the arbitration provision when she filed suit.  The district court erred when it granted HomeAway's Motion to Compel Arbitration.

**II.      The arbitration provision in the February Terms as to her four unexpired subscription contracts was illusory and unenforceable.**

**A. The district court erred in failing to uphold Ms. Seim's rejection of the arbitration agreement, thereby making it illusory and unenforceable.**

The district court ruled that the arbitration provision of the February Terms

was not an illusory contract. Ms. Seim argued that because HomeAway refused to honor her right to withhold her consent to the changes in the February Terms, the February Terms was an illusory contract and therefore unenforceable. Under Kentucky law when a party retains the unilateral right to perform or not perform a particular provision of a contract, the contract is illusory. "An example of an illusory promise is one where performance is due only at the discretion of the promisor; in such a case, no promise has been made and thus no contract exists." *Ky. Ass'n of Ctys. v. Bradley*, No. 1999-CA-002856-MR, 2001 Ky. App. LEXIS 62, at *5 (Ct. App. May 18, 2001); *see also David Roth's Sons, Inc., 343 S.W. 2d* at 391 and *Ram Eng'g & Constr., Inc. v. Univ. of Louisville*, 127 S.W.3d 579, 586 (Ky. 2003).

In the *Arnold* case, the district court cited *J.M. Davidson, Inc. v. Webster*, 128 S.W. 3d 223, 231 (Tex. 2003) and *Morrison v. Amway Corp.*, 517 F.3d 248, 255 (5th Cir. 2008) for its holding that "if a party to a contract retains the right to unilaterally abolish or modify an arbitration provision, the agreement to arbitrate is illusory and not binding." Kentucky law and Texas law on contract formation and valid arbitration provisions do not differ. "Every contract requires mutual assent and consideration." *Cuppy v. General Accident Fire & Life Assurance Corp.*, 378 S.W.2d 629, 632 (Ky. 1964). "Mutuality of obligation is essential to the validity of an executory contract, and if either party is not bound because of lack of mutuality neither is bound." *Fowler's Bootery v. Selby Shoe C*o., 273 Ky. 670, 671-72, 117

S.W.2d 931, 932 (Ky. 1938). "The crucial question is whether the nature of the unilateral option is such that the party to whom it is granted has in actuality no fixed obligations under the contract. If so, his promise to perform is illusory in the sense that he has made no legally enforceable commitment, and justice demands the other party should not be bound." *David Roth's Sons, Inc.* at 391.

The United States District Court for the Eastern District of Kentucky applied this longstanding black letter Kentucky contract law in the context of arbitration agreements as recently as 2012 in *Wallace v. Fortune Hi-Tech Marketing*. 2012 U.S. Dist LEXIS 136029 *4 (E.D. Ky. Sept. 24, 2012) ROA.315-317. There, a plaintiff brought claims against defendants for consumer protection violations stemming from a pyramid scheme. *Id.* at *2. The defendants moved to compel arbitration. *Id.* The Court held that the defendants' promise to arbitrate was illusory because of a provision that, like the one here, authorized defendants to unilaterally amend the agreement. *Id.* at *4. Thus, the court held, the "amendment provision renders illusory the alleged agreement to arbitrate because FHTM has in actuality no fixed obligation to perform." *Id.* at *5. (*citing David Roth's Sons, Inc.*, 343 S.W.2d at 391). The court denied the motion to compel arbitration because, like here, the defendants' "promise to perform is illusory in the sense that it has made no legally enforceable commitment, and justice so demands the other party should not be bound." *Id* at *7.

The Sixth Circuit affirmed this decision (as well as a similar companion case)

in the unpublished decision *Day v. Fortune Hi-Tech Mktg.*, 536 Fed. Appx. 600, 2013

U.S. App. LEXIS 19060 (6th Cir. 2013) ROA.319-324. The court was clear:

"Because Defendant retained the ability to modify any term of the contract, at any

time, its promises were illusory." Like here, "in effect, Defendant promised to do

certain things unless it decided not to, and that is by definition illusory." *Id.* at 604.

(citations omitted). In the *Arnold* case, the district court held that the arbitration

provision was illusory. But in this case, the district court held it was not. The district

court was correct in *Arnold* and wrong here.

As discussed above, the district court viewed all of Ms. Seim's contracts with

HomeAway as one contract and ruled she agreed to be bound by the February Terms

on that one contract when she renewed her *Kentucky Derby Home* pay-per-booking

contract. Ms. Seim had the right to reject changes to the February Terms but did not.

Therefore, because HomeAway did not have the unilateral right to modify or

eliminate the arbitration provision, it was not illusory. However, Ms. Seim had five

contracts with HomeAway. She had the right to reject the amendments to the

September Terms governing the four unexpired subscription contracts. By denying

Ms. Seim the right to reject the arbitration provision and other changes in the

February Terms for her four unexpired subscription contracts, the district court gave

HomeAway the unilateral right to modify or eliminate the arbitration provision. By

granting HomeAway its motion to compel arbitration, even though the terms have

been changed over her objection, the district court's order effectively rendered the arbitration provision purely illusory. HomeAway reserved the right to unilaterally change, ignore or not follow the arbitration provision of the contract while binding Ms. Seim to it.

> **B. The district court erred in reaching a different decision in this case than its companion Arnold case. Ms. Seim's four subscription contracts were renewed under the April Terms, which the district court ruled was illusory and unenforceable because HomeAway could unilaterally modify or abolish an arbitration provision.**

The district court decided in the *Arnold* case that HomeAway's arbitration provision was illusory because the claims in that case fell under HomeAway's April Terms. In the *Arnold* case, the District Court was called upon to decide under Texas law, whether Mr. Arnold had entered into a valid arbitration provision with HomeAway when he renewed one of his subscription contracts under the April Terms. The April Terms had the same arbitration provision as the February Terms. The April Terms, however, eliminated the right of an owner to receive prior notice and to object to changes in terms and conditions during the unexpired term of a subscription contract. The district court, citing *J.M. Davidson,* 128 S.W.3d at 231 and *Morrison*, 517 F.3d at 255, ruled that because the April Terms eliminated the right to object to the arbitration provision, while retaining HomeAway's right to unilaterally modify or eliminate the arbitration provision, the arbitration provision was illusory.

In light of that ruling, the district court should have ruled that the arbitration provision as it pertained to Ms. Seim was illusory as well. The district court considered Ms. Seim's and Mr. Arnold's subscription contracts and pay-per-booking contracts as singular agreements capable of being amended by a subsequent single agreement. Ms. Seim's *Kentucky Derby Home* pay-per-booking contract was renewed in March 2016. However, all four of Ms. Seim's other contracts were renewed after her lawsuit was filed and after the April Terms had been posted. So at the time the district court's decision was rendered all of Ms. Seim's contracts fell under HomeAway's April Terms. If the district court was correct in holding that Ms. Seim's agreement to the February Terms changed all her contracts with HomeAway, then her agreement to the April Terms changed all her contracts again and put them under the April Terms. Ms. Seim is in the same position as the plaintiffs in the *Arnold* case, i.e., the April Terms made the arbitration provision illusory because HomeAway can unilaterally abolish or modify the arbitration provision. The arbitration provision should have been held illusory as to Ms. Seim.

**III.    The district court erred in ruling that applying the arbitration provision to Ms. Seim's four unexpired subscription contracts was supported by consideration and not unconscionable.**

**A. There was no new consideration to support an amendment to Ms. Seim's four unexpired subscription contracts**

The district court viewed Ms. Seim's renewal of her *Kentucky Derby Home* pay-per-booking contract as agreement to apply the February Terms to all her

subscription contracts.  The district court, therefore, failed to determine whether Ms.

Seim received any consideration for agreeing to give up her right to sue for damages

under those subscription contracts.  It is a fundamental principle of contract law -

and has been in Kentucky since 1877 - "that a material alteration in the terms of an

existing contract cannot be enforced unless a consideration for the change passes to

the party against whom it is sought to enforce the altered condition." *See Pool v.*

*First Nat'l Bank*, 155 S.W.2d 4, 6 (Ky. 1941) (*citing Gilmore v. Green*, 14 Bush 772,

77 Ky. 772 (Ky, 1879); *Ogden v. Redd*, 76 Ky. 581 (Ky. 1877)). See also *Vinaird v.*

*Bodkin's Adm'x,* 254 Ky. 841, 851, 72 S.W.2d 707, 711 (1934) (". . . new

consideration is required in order for an attempted modification for a contract to be

valid.") (Emphasis added.) See also, *Cassinelli v. Stacy*, 238 K 827, 835, 38 SW. 2d

980, 983 (1931). ("The alteration or modification of a contract to be effective must

be supported by a consideration . . . ") Kentucky law is also clear that "past

consideration is insufficient to support a promise." *Sawyer v. Mills,* 295 S.W.3d 79,

86 (Ky. 2009) (*citing 17A Am. Jur. 2d Contracts § 152* (2009)).

No new consideration was given to Ms. Seim for changing the September

Terms to require arbitration of disputes for her four unexpired subscription contracts.

The district court did determine that there was consideration for the February Terms

as it related to the *Kentucky Derby Home* but failed to identify any consideration as

it pertained to the other four subscription contracts. This is because nothing changed

regarding the other four subscription contracts.   ROA.366. Ms. Seim had already paid HomeAway the annual fees for the four subscription contracts so she did not owe any additional fees, the advertisements of her vacation properties were the same, and all other services HomeAway provided regarding the vacation rentals stayed the same.  Nothing changed for these four subscription contracts by Ms. Seim's renewal of a different subscription contract under a different payment model.

Put simply, the "offer" of the February Terms was only made to Ms. Seim as to her *Kentucky Derby Home*. Ms. Seim only "accepted" the February Terms as those pertained to her *Kentucky Derby Home*. And finally the "consideration" that Ms. Seim received by accepting the February Terms was to have her *Kentucky Derby Home* advertised on HomeAway's websites for another year.  There was no new consideration given to the other contracts when Ms. Seim renewed her *Kentucky Derby Home* that would support a finding that the arbitration provision applied to those other contracts.  Thus, under black letter contract law, the arbitration provision did not apply to her four unexpired subscription contracts just because Ms. Seim signed up *Kentucky Derby Home* for a pay-per-booking on March 17, 2016. HomeAway did not give Ms. Seim anything in addition to what she had already paid for when it posted the February Terms and attempted to bind her to arbitrate her claims under her unexpired subscription contracts.

## B. Ms. Seim did not consent to the amendments to her four unexpired subscription contracts.

It is also black letter contract law that one party may not unilaterally modify a contract, mutual assent is required. 17A C.J.S. Contracts § 545 (2013). HomeAway could not unilaterally change the express terms of the September Terms as to her four unexpired subscription contracts and force Ms. Seim into arbitration. The September Terms themselves belied that ability.  Ms. Seim had to consent to the arbitration provision, which she did not do.  And Kentucky contract law is clear: "The fundamental principle of contract formation is that [t]o create a valid, enforceable contract, there must be a voluntary, complete assent by the parties having capacity to contract. This principle applies with no less vigor when the issue is formation of an arbitration contract." *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 321 (Ky. 2015) .

A material change to an existing contract must follow the same rules as formation of a contract.  To constitute a valid contract, there must be an offer and acceptance, full and complete terms, and a mutual, bargained-for exchange of valuable consideration. See *Cantrell Supply, Inc., 94 S.W. 3d at* 384.   A valid agreement to arbitrate will be "evaluated on the basis of ordinary state-law principles that govern the formation of contracts." *TRC Envtl. Corp. v. LVI Facility Servs.*, 612 Fed. Appx. 759, 761 (5th Cir. 2015) Questions concerning the formation of an arbitration agreement are resolved in accordance with the

applicable state law governing contract formation. *See Extendicare Homes,* 478 S.W.3d *at* 321. ("The fundamental principle of contract formation is that to create a valid, enforceable contract, there must be a voluntary, complete assent by the parties having capacity to contract.") Where there is a question as to whether an arbitration provision exists as "a meeting of the minds," courts must examine the facts and circumstances surrounding the creation of the agreement. *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335 (Ky. Ct. App. 2001). Courts must assess contractual arbitration provisions on a case-by-case basis to determine if inclusion of the arbitration provision in the parties' agreement was abusive, unfair, or perhaps even involuntary and unknowing. *Conseco, supra. See also Paul Miller Ford, Inc. v. Rutherford*, No. 2007-CA-000293-MR, 2007 Ky. App. LEXIS 494, at *9-10 (Ct. App. Dec. 28, 2007). ROA.286-289.

Ms. Seim argued at length in her Response to the Motion to Compel Arbitration that HomeAway failed to demonstrate that she knowingly agreed to the arbitration provision. The webpage required her to check a box that said she did agree to the terms and conditions, which she could access by clicking on a link, in order to renew her *Kentucky Derby Home* property.  The district court held that even if she did not read the terms and conditions, she still agreed to them when she continued to use the website.  The district court cited *Tres Jeanee, Inc. v. Brolin Retail Sys. Midwest, Inc*. No. 3:07-CV-139H, 2007 WL 3118482, at *3 (W.D. Ky.

Oct. 22, 2007) in support of its decision. However, the U.S. District Court in that decision noted that "Though this Court finds no Kentucky case discussing the issue, a survey of cases from other jurisdictions suggests that clickwrap agreements requiring the user to assent to their terms are generally upheld in the face of allegations of insufficient notice of terms. This Court concludes that Kentucky courts likely would uphold such an agreement." (Cases omitted.) However, the decision of the Kentucky Supreme Court in *Dixon v. Daymar Colls. Grp., LLC*, No. 2012-SC-000687-DG, 2015 Ky. LEXIS 73 (Apr. 2, 2015) may indicate otherwise. ROA.274-284.

In *Dixon* the Kentucky Supreme Court held that an arbitration provision printed on the back of a student enrollment form was not valid because the student was to sign only the front of the form and the attempt to incorporate the arbitration provision on the back of the form was unsuccessful. It is likely that the Kentucky courts might find the fact situation here to be similar. The arbitration provision was on page 20 of a 38 page document that Ms. Seim would need to access by clicking on a link on the webpage. Ms. Seim may well have read every word of the terms and conditions when initially joining the website. She may have not read or merely skimmed the February Terms before she agreed to renew her *Kentucky Derby Home*. She does not now dispute that her claims under her *Kentucky Derby Home* pay-per-booking contract were made subject to the arbitration provision when she renewed

39

it.  However, she certainly did not read into the February Terms that she was agreeing to apply the arbitration provision to her other subscription contracts.   She knew that when she had renewed a subscription contract in the past, it did not change her other subscription contracts, so why would this one be any different.  The Kentucky court very likely would agree that HomeAway had unsuccessfully tried to incorporate an arbitration provision to her four unexpired subscription contracts when she renewed her *Kentucky Derby Home* pay-per-booking contract.

### C. The arbitration provision was procedurally and substantively unconscionable as applied to Ms. Seim's four unexpired subscription contracts.

The district court erred when it held that the arbitration provision of the February Terms was not unconscionable.  Under Kentucky law, if an agreement to arbitrate is procedurally or substantively unconscionable, it is unenforceable.  "The doctrine of unconscionability . . . is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences *pe se* of uneven bargaining power or even a simple old-fashioned bad bargain." *Schnuerle v. Insight Communs., at* 575.   The Supreme Court of Kentucky has also been clear that "[u]nder both the Federal Arbitration Act and the Kentucky Uniform Arbitration Act, agreements to submit controversies to arbitration may be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of

any contract.'"  *Energy Home v. Peay,* 406 at 835 (citing 9 U.S.C. § 2; KRS 417.050). "Certainly, unconscionability is one of the grounds upon which any contract may be revoked." *Id.* (citations omitted). The Supreme Court of Kentucky explained the types of unconscionability under Kentucky law:

> Procedural unconscionability relates to the process by which an agreement is reached and to the form of the agreement. It includes, for example, the use of fine or inconspicuous print and convoluted or unclear language that may conceal or obscure a contractual term. Substantive unconscionability refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent. When reviewing for substantive unconscionability, consideration is given to 'the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns.'

*Id.* at 835 (*citing Schnuerle*, 376 S.W.3d at 576-77).

In *Valued Servs. of Ky., LLC v. Watkins*, 309 S.W.3d 256, 263 (Ky. Ct. App. 2009), the Kentucky Court of Appeals noted that while an agreement to arbitrate is not unconscionable merely because the parties to it are unequal in bargaining position, "an arbitration provision that contains a substantial waiver of a parties' rights is unenforceable." *See also Mortg. Elec. Registration Sys. v. Abner*, 260 S.W.3d 351, 354 (Ky. Ct. App. 2008) ("a bargain is not unconscionable merely because the parties to it are unequal in bargaining position, [but] an arbitration provision that contains a substantial waiver of a parties rights' is unenforceable.")

(citations and quotation marks omitted).

Under any reasonable viewing, HomeAway's February Terms are procedurally and substantively unconscionable. First, HomeAway did not provide "reasonably conspicuous notice" that there was a significant change to the terms and conditions. Instead, it merely included a link in very small typeface at the bottom of a page with much more important information such as credit card fields. ROA.130. In *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63, 115 S. Ct. 1212, 1219 (1995) the Supreme Court refused to enforce an ambiguous choice of law provision in an arbitration provision against the consumer because "As a practical matter, it seems unlikely that petitioners . . . had any idea that by signing a standard-form agreement to arbitrate disputes they might be giving up an important substantive right. In the face of such doubt we are unwilling to impute this intent to petitioners." This is the exact same standard for unconscionability in Kentucky: "the use of fine or inconspicuous print and convoluted or unclear language that may conceal or obscure a contractual term." *Peay*, 406 S.W.3d at 835.

Here, Ms. Seim had used HomeAway since 2011, and had operated continuously under terms and conditions without arbitration provisions. Because there was no conspicuous indication or notice by HomeAway that these February Terms were substantially different than previous versions, there was no reason for

her or any reasonable person to suspect such drastic changes, nor did Ms. Seim have any opportunity to amend, alter, negotiate, or otherwise bargain for these terms. The crux of whether there is true inquiry notice is whether there is some conspicuous information, understandable by a reasonable, non-lawyer user as to the true gravity of the rights one is giving up. Here, even if the terms and conditions link and presentation of the webpages are sufficient to put her on notice she should click on them, there is nothing she would see when she viewed the February Terms that indicated it was a drastically different contract than the dozens of previous ones she had entered into over the past five years, nor is there any indication until more than halfway through that the arbitration agreement is even part of it.

The February Terms are also substantively unconscionable. HomeAway attempts to use a renewal of one contract to unilaterally and retroactively change only certain terms of multiple previous subscription contracts and eliminate Ms. Seim's ability to bring claims under those unexpired contracts, without clearly and understandably spelling that out to users. In analyzing substantive unconscionability under Kentucky law, this Court must give consideration to "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." *Peay* 406 S.W.3d at 835 (citations omitted). Here, HomeAway made two material changes to the September Terms on the same day: it added service

fees despite repeated public assurances to Ms. Seim and other property owners and its contractual agreements not to do so and it sought to eliminate the right of Ms. Seim and other property owners to bring a case in court or receive a trial by jury over that change, despite having originally chosen Travis County, Texas, as the required venue for claims.

Taken together, it is clear that HomeAway took an action it knew would lead to lawsuits for breach of contract, and therefore unilaterally inserted language to shield itself from those lawsuits at the exact same time, without adequate notice or any consideration to users about the change. The "purpose and effect" of these actions is to allow HomeAway to take full payment upfront for a product and then simply not deliver it, with no consequences and judicial immunity. Certainly no business would agree to such a term, and public policy should not allow the simultaneous breach of and unilateral change to the enforcement mechanism of a contract. Under Kentucky law, the arbitration agreement is substantively unconscionable and cannot be enforced as a matter of public policy.

**IV.     Judicial economy and public policy would not be served by enforcing arbitration provision against Ms. Seim**

The public policy aims of the Federal Arbitration Act would not be furthered by forcing Ms. Seim's claims for her subscription or pay-per-booking contracts to arbitration. In addition to the *Arnold* case, there are multiple other filed cases by

individuals who are not subject to motions to compel arbitration in *Kirkpatrick, et al., v. HomeAway*, 2016- cv-733, also pending in the Western District of Texas, which seek class action treatment over the same issues. Thus additional claims involving the same underlying merits as Ms. Seim's case will proceed in district court and judicial economy and public policy support managing all of these cases together in one proceeding.

## CONCLUSION

For the foregoing reasons, Appellant respectfully request that this Court reverse the district court, and remand this case to the Western District of Texas.

Respectfully submitted,

/s/ Jasper D. Ward IV
Jasper D. Ward
Alex C. Davis
Ashton Rose Smith
JONES WARD PLC
1205 E. Washington St., Suite 111
Louisville, Kentucky 40206

Michael Singley
Edwards Law
1101 E. 11th St.
Austin, Texas 78702

Ketan U. Kharod
Kharod Law Firm, P.C.
P.O. Box 151677
Austin, Texas 78715

Robert Ahdoot
Theodore W. Maya
Bradley K. King
Ahdoot & Wolfson, PC
1016 Palm Ave.
West Hollywood, California 90069

*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of May, 2017 an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system.

  /s/ Jasper D. Ward IV

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,053 words, as determined by the word-count function of Microsoft Word 2013, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.

 /s/ Jasper D. Ward IV_____