No. 17-50102

───────────────────────────

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

───────────────────────────

DEIDRE SEIM, Individually, and on behalf of all others similarly situated,

*Plaintiff – Appellant*

v.

HOMEAWAY, INCORPORATED, A Delaware Corporation,

*Defendant – Appellee*

───────────────────────────

On Appeal from the United States District Court, Western District of Texas, No. 1:16-cv-00479, Honorable Lee Yeakel, Presiding

───────────────────────────

# REPLY BRIEF FOR APPELLANT

───────────────────────────

                                   Jasper D. Ward IV
                                   JONES WARD PLC
                                   1205 E. Washington Street, Suite 111
                                   Louisville, Kentucky 40206
                                   (502) 882-6000
                                   Counsel for Plaintiff-Appellant

## TABLE OF CONTENTS

Table of Contents …………………………………………………………...2

Table of Authorities ………………………………………………………....3

Introduction ……………………………………………………………….…4

Argument ……………………………………………………………………6

      A. Kentucky Law Does Not Justify Arbitration Here ……………………..6

      B. The Delegation Clause Does Not Change Court's Contract Formation

         Analysis ………………………………………………………………...10

Conclusion …………………………………………………………………..12

Certificate of Service ………………………………………………………..14

Certificate of Compliance …………………………………………………...14

# TABLE OF AUTHORITIES

*Arnold v. HomeAway,* 17-50088 (5th Cir.) ……………………………….……5

*Baquie v. E. Energy Corp.,* 2010 U.S. Dist. LEXIS 32803 (W.D. Ky. 2010) ……10

*Day v. Fortune Hi-Tech Mktg.,* 536 Fed. Appx. 600, 2013 U.S. Dist. LEXIS 19060 (6th Cir. 2013) ………………………………………………………….5, 7, 9, 10

*Dixon v. Daymar Colls. Grp., LLC,* 2015 Ky. LEXIS 73 (2015) ……………11, 12

*Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306 (6th Cir. 2000) ………8, 9

*James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC,* 2012 U.S. Dist. LEXIS 130589 (E.D. Ky. 2012) ……………………………………….11

*Kindred Nursing Ctrs. Ltd. P'ship v. Cox,* 486 S.W.3d 892 (Ky. App. 2015) ….....7

*Menefee v. Rankins,* 158 Ky. 78, 164 S.W. 365 (Ky. App. 1914) …………………8

*Morgan v. Morgan,* 309 Ky. 581, 218 S.W.2d 410 (Ky. App. 1949) ……………...8

*Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646 (6th Cir. 2013) ………………7

*Mortg. Elec. Registration Sys. v. Abner*, 260 S.W. 3d 351 (Ky. App. 2008) …....7, 11

*Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63 (2010) ………………………10, 11

*Wallace v. Fortune Hi-Tech Mktg.,* 2012 U.S. Dist. LEXIS 136029 (E.D. Ky. Sept. 24, 2012) ……………………………………………………………....5, 6

## INTRODUCTION

There are three (3) different Terms and Conditions ("Terms") that are relevant here. First, the September 2015 Terms, which give HomeAway the right to amend the Terms, Seim the right to reject substantive modifications to those Terms, and which require suit be filed in Travis County, Texas. HomeAway Br. p. 6. Second, the February 2016 Terms, which include two substantive changes: (1) a provision requiring arbitration; and (2) the implementation of the traveler fees HomeAway began charging mid-contract, without notice or opportunity for rejection, which form the merits of Ms. Seim's case. Finally, the April 2016 Terms, which do not allow Seim the opportunity to reject substantive changes, and include the provision requiring arbitration (as well as continuation of the traveler fees).

The February 2016 Terms provided that if Seim disagreed with any substantive amendment to the Terms, her sole remedy was to withhold consent to the applicability of the proposed amendment, in which case her use of the Site would *continue to be governed by the terms and conditions that were in effect immediately prior to the proposed amendment*. HomeAway Br. p. 7; ROA.163 (emphasis added). Accordingly, Seim withheld her consent and filed suit in Travis County, Texas, pursuant to the Terms that were in effect immediately prior to the proposed amendment – the September 2015 Terms. ROA.53. Thereafter, as HomeAway

admits in its brief, four other properties owned by Seim were renewed pursuant to HomeAway's April 2016 Terms. HomeAway Br. p. 5, 18.

Curiously now, HomeAway makes two incompatible arguments: first, that the April Terms are "irrelevant" to this appeal, yet second, simultaneously, that the most recent terms (which would be the April 2016 Terms) supersede all previous versions of the contract, and govern all of Seim's properties. Simply put: HomeAway can't have it both ways. Either Ms. Seim had the right to reject the arbitration provision, or the April 2016 Terms superseded all previous terms. Under either scenario, the trial court should have denied HomeAway's arbitration motion.

That is because HomeAway members were not provided notice of the substantive changes in the February 2016 Terms, nor the April 2016 Terms, and likewise, neither version required notice to members, permitting HomeAway to make substantive changes unilaterally. As such, and pursuant to Kentucky law and Texas law as applied by this Court, the Terms do not constitute a formed contract;[1] however, as HomeAway argues, and as is consistent with Kentucky law, the most recent version of the terms supersede the prior versions. HomeAway Br. p. 23 ("Kentucky law favors the last-in-time principle: 'the later agreement will be construed to discharge the former if they are inconsistent'").[2]

---

[1] *See Wallace v. Fortune Hi-Tech Mktg.,* 2012 U.S. Dist. LEXIS 136029 (E.D. Ky. Sept. 24, 2012); *Day v. Fortune Hi-Tech Mktg.,* 536 Fed. Appx. 600, 2013 U.S. Dist. LEXIS 19060 (6th Cir. 2013).
[2] Both Ms. Seim and HomeAway agree that Kentucky law applies. *See* HomeAway Br. p. 10.

Thus, if the most recent Terms supersede all previous versions, then the April 2016 Terms govern all of Seim's properties, regardless of her objection to the changes implemented from September 2015 to the February 2016 Terms. If that is the case, then the April 2016 Terms are illusory and not binding pursuant to Kentucky law, which is clear, if a party to a contract retains the right to unilaterally abolish or modify the contract, including the arbitration provision, the agreement to arbitrate is illusory and not binding.[3] *Wallace v. Fortune Hi-Tech Mktg.,* 2012 U.S. Dist. LEXIS 136029, *4 (E.D. Ky. Sept. 24, 2012); ROA.315-317. Conversely, if the February 2016 Terms apply to Seim's *Kentucky Derby Home*, then because Seim assented to the April 2016 Terms for her other four properties (HomeAway Br. p. 8), it is **only** the *Kentucky Derby Home* that is governed by the February 2016 Terms, and Ms. Seim rejected the arbitration agreement. The other four properties would then be analyzed independently. There is no factual scenario where *only* the February 2016 Terms apply to *all* of Ms. Seim's claims, and therefore this Court must reverse the trial court.

## ARGUMENT

A. Kentucky Law Does Not Justify Arbitration Here[4]

---

[3] This is also consistent with the district court's ruling in the companion case: *Arnold v. HomeAway,* No. 17-50088 (5th Cir).

[4] *See* fn. 2, *supra.*

Contract interpretation, specifically, whether a contract was formed, is a question of law for the Court. *Mortg. Elec. Registration Sys. v. Abner,* 260 S.W.3d 351 (Ky. App. 2008). Likewise, the existence of a valid arbitration agreement as a threshold matter must first be resolved by the Court. *Id.* And the burden of establishing the existence of a valid agreement to arbitrate is upon the party seeking to compel arbitration. *Kindred Nursing Ctrs. Ltd. P'ship v. Cox,* 486 S.W.3d 892, 894 (Ky. App. 2015). The existence of a valid agreement to arbitrate is controlled by **state law rules of contract formation**. *Id. See Day v. Fortune Hi-Tech Mktg.,* 536 Fed. Appx. 600 (6th Cir. 2013) (emphasis added). Thus, Kentucky law requires the Court determine the existence of a valid arbitration agreement, and specifically, delegation clause.

Pursuant to Kentucky law, changes made effective upon their issuance, rather than after a fixed period of time, are illusory and unenforceable. *Id.* at 604 ("While some states may permit enforcement of a contract that requires only notice, rather than advance notice, for alteration of its terms, Kentucky is not one of those states"). Thus, where a party to a contract attempts to alter the terms without notice to the other party, the contract is illusory and unenforceable. *Id.* at 605. *See e.g., Morrison v. Circuit City Stores, Inc.,* 317 F.3d 646, 667-68 (6th Cir. 2013) (relying on the fact that there was a fixed time between notice and the effect of the change to uphold the agreement).

Here, Seim rejected the substantive changes contained in the February 2016 Terms by filing suit in Travis County, Texas pursuant to the September 2015 Terms, despite the fact that the February 2016 Terms gave Seim no "advanced notice" including a fixed period of time for rejection (pursuant to Kentucky law, this lack of advanced notice alone renders the February 2016 Terms illusory and unenforceable[5]). However, if the most recent terms, the April Terms, govern all of Seim's properties (as HomeAway argues, HomeAway Br. p. 23) then Seim's objection and rejection of the February 2016 Terms is irrelevant, and all of her five properties must be analyzed pursuant to the April 2016 Terms.

To hold all of Seim's properties are governed by the February 2016 Terms is incompatible with the last-in-time principle pursuant to Kentucky law[6] (and in fact, goes against HomeAway's own arguments, HomeAway Br. p. 23. Moreover, holding all of Seim's properties are governed by the February 2016 Terms produces an absurd result where all of Seim's properties are retroactively governed by the February 2016 Terms (Terms no longer in effect pursuant to HomeAway's website) despite the superseding April 2016 Terms. Either Seim's properties are governed by the September 2015 Terms, pursuant to Seim's rejection of the February 2016

---

[5] *See Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306 (6th Cir. May 1, 2000) (Holding where a party retains an unlimited right to unilaterally modify the arbitration provision without providing notice to the other party, the contract is not binding and unenforceable). *See also Morgan v. Morgan*, 309 Ky. 581, 218 S.W.2d 410, 412 (Ky. App. 1949) (A contract must be binding on both or else it is binding on neither).

[6] *Menefee v. Rankins,* 158 Ky. 78, 83, 164 S.W. 365, 367 (Ky. App. 1914) ("One written contract complete in itself will be conclusively presumed to supersede another one made prior thereto in relation to the same subject-matter").

Terms, or they are governed by the April 2016 Terms, pursuant to the last-in-time principle. If any property is governed by the February 2016 Terms, it could be ***only*** the *Kentucky Derby Home*.

If only Seim's *Kentucky Derby Home* is subject to the February 2016 Terms, then her other four properties must be analyzed pursuant to either the September 2015 Terms or the April 2016 Terms.[7] If the April 2016 Terms govern Seim's properties, those Terms did not impose a binding obligation upon HomeAway because HomeAway retained the right to unilaterally modify the contract, including the arbitration provision, at any time, and without notice to members such as Seim. Accordingly, the April 2016 Terms, including the arbitration provision and delegation clause, are illusory and not enforceable as a contract pursuant to Kentucky law. *See Day v. Fortune Hi-Tech Mktg.,* 536 Fed. Appx. at 605 ("Nothing bound Defendant to continue its agreement, or even to maintain the same terms. . . Without a binding obligation, a promise is illusory, and therefore not enforceable as a contract"); *see also Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306 (6th Cir. 2000) ("EDSI's illusory promise does not create a binding obligation. The purported arbitration agreement therefore lacks a mutuality of obligation. Without a mutuality of obligation, the agreement lacks consideration").

---

[7] If Seim's properties are governed by the September 2015 Terms, then they are not subject to arbitration and venue is proper in Travis County, Texas, where Plaintiff filed suit pursuant to the September 2015 Terms.

B. The Delegation Clause Does Not Change Court's Contract Formation Analysis

Contrary to HomeAway's contentions, the delegation clause does not negate state law rules of contract formation. The delegation clause is one part of the contract to be analyzed, and "parties must still have a valid and enforceable agreement to resolve their claims in arbitration." *Day v. Fortune Hi-Tech Mktg.,* 536 Fed. Appx. at 603.

Here, HomeAway retained the right to amend the contract, including the delegation clause at any time. Thus, when determining if the arbitration agreement, including the delegation clause is valid, if HomeAway retains the right to amend the terms at any time, the promise is illusory. *See id.* at *605:

> As the district court pointed out, Defendant could have, through any one of the various notice devices it included, changed the contract immediately upon receipt of a signed copy from any one of the Plaintiffs. Without a binding obligation, a promise is illusory, and therefore not enforceable as a contract.

Thus, where like here, HomeAway retains the right to unilaterally modify the arbitration agreement, including the delegation clause, the Court must determine the existence of a valid arbitration agreement as a threshold matter. *See id.*[8] Further, "[w]hen a party challenges whether the arbitration agreement – and, by extension, the delegation provision – was in fact agreed to, *Rent-A-Center's* analytical approach

---

[8] *See also Baquie v. E. Energy Corp.,* 2010 U.S. Dist. LEXIS 32803 (W.D. Ky. April 1, 2010) ("[I]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof") (citing 9 U.S.C. § 4).

does not apply." *Dixon v. Daymar Colls. Grp., LLC,* 2015 Ky. LEXIS 73 (April 2, 2015) (*citing Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63 (2010)). Thus, as explained by the Kentucky Supreme Court in *Dixon*, and contrary to HomeAway's contention, the delegation clause is not dispositive where the validity of the entire contract, and specifically the delegation provision, has been challenged, as is the case here. It is the Court, not the arbitrator, who must determine the existence of a valid arbitration agreement as a threshold matter pursuant to Kentucky law. *Mortg. Elec. Registration Sys. v. Abner,* 260 S.W.3d 351 (Ky. App. 2008)("[T]he existence of a valid arbitration agreement as a threshold matter must first be resolved by the court"); *Dixon v. Daymar Colls. Grp., LLC,* 2015 Ky. LEXIS at *19-20; *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC,* 2012 U.S. Dist. LEXIS 130589 (E.D. Ky. 2012) ("[T]he claim disputing the existence or enforceability of an agreement to arbitrate is a question for the court to decide. . . and will not be submitted to arbitration") (internal citations omitted).

Lastly, the touchstone of the analysis here is: "Does the arbitration agreement at issue clearly and unmistakably evince Appellants' and Appellees' intent to submit questions of aribitrability to the arbitrator?" *Dixon v. Daymar Colls. Grp., LLC,* 2015 Ky. LEXIS 73 at *17-18 (internal citations omitted). "[W]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally should apply ordinary state-law principles that govern the formation

of contracts." *Id.* (internal citations omitted). Here, the difficulty that the parties, lawyers and courts have in deciding which "contract" even applies shows the lack of clear and unmistakable intent to arbitrate. Through numerous, unilateral changes, HomeAway has made it nearly impossible for the average consumer such as Ms. Seim to determine not only that to which she is agreeing, but what actions she must take to reject those changes. *See Dixon* at *19-20. This applies to both the contract and the delegation language: "The delegation provision may very well have clearly and unmistakably evinced *a party's* intent to arbitrate, but it does not necessarily follow that it speaks for both parties." *Id.* HomeAway cannot meet its burden on these threshold issues, and HomeAway's attempt to patch together a contract that is both not subject to unilateral change – and therefore illusory - but also adds a provision over Ms. Seim's objection, must fail as a matter of law.

## CONCLUSION

In sum, either Seim rejected the February 2016 Terms and her properties are governed by the September 2015 Terms without an arbitration clause, or they are governed by the April 2016 Terms because of the last-in-time principle. As the April 2016 Terms are illusory under both Kentucky and Texas law, there is no formed contract for arbitration. Thus, Appellant respectfully requests this Court reverse the district court, and remand this case to the Western District of Texas.

Respectfully submitted,

/s/ Jasper D. Ward IV
Jasper D. Ward
Alex C. Davis
Ashton Rose Smith
JONES WARD PLC
1205 E. Washington St., Suite 111
Louisville, Kentucky 40206

Michael Singley
Edwards Law
1101 E. 11th St.
Austin, Texas 78702

Ketan U. Kharod
Kharod Law Firm, P.C.
P.O. Box 151677
Austin, Texas 78715


Robert Ahdoot
Theodore W. Maya
Bradley K. King
Ahdoot & Wolfson, PC
1016 Palm Ave.
West Hollywood, California 90069

*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of June, 2017 an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, and that service will be accomplished by the appellate CM/ECF system.

                                                       /s/ Jasper D. Ward IV

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 13 pages and 2850 words, as determined by the word-count function of Microsoft Word 2013, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.

                                                       /s/ Jasper D. Ward IV